# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **PERSONAL AUDIO, LLC,** | |
| **Plaintiff and Counter-Defendant,** | **CIVIL ACTION NO. 2:13-CV-00015-JRG-RSP** |
| **v.** | **[CONSOLIDATED FOR PRETRIAL AS: NO. 2:13-CV-00013-JRG-RSP]** |
| **HOWSTUFFWORKS.COM,** | |
| **Defendant and Counter-Plaintiff.** | |

### DEFENDANT HOWSTUFFWORKS'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION .............................................................................................. 1

II. NATURE AND STAGE OF PROCEEDINGS .......................................... 2

III. FACTUAL BACKGROUND ...................................................................... 3

    **A.**    **Summary of the Asserted Claims and Infringement** ..................... 3

    **B.**    **Personal Audio's Attenuated Ties to the Eastern District of Texas** ............... 3

    **C.**    **HowStuffWorks's Ties to Atlanta and New York Related to This Case** ........ 4

IV. LEGAL STANDARD ................................................................................... 6

V. ARGUMENT ................................................................................................... 7

    **A.**    **This Case Should Be Transferred to the Northern District of Georgia** .......... 7

        **1.**    **The Northern District of Georgia Is a Proper Venue for This Case** .......................................................................................... 7

        **2.**    **Transferring to Georgia Would Serve Justice and Be More Convenient** ...................................................................................... 7

            a.    **Private Interest Factors Overwhelmingly Favor Transfer to Georgia** ..................................................... 8

                (1)    **Evidence for This Case Is In Georgia, Not In Texas** ........................................................................ 8

                (2)    **Compulsory Process Is Available for Witnesses in Georgia** ............................................. 8

                (3)    **Georgia Is More Convenient for the Witnesses and Parties** ............................................... 8

                (4)    **Other Practical Factors Favor Transfer** ..................... 10

            b.    **Public Interest Factors Also Favor Transfer** .......................... 12

                (1)    **The Northern District of Georgia Is Not More Congested** ...................................................... 12

                (2)    **Georgia Has a Greater Local Interest in This Litigation** ...................................................... 13

**TABLE OF CONTENTS**
(continued)

**Page**

          (3)     **Other Federal Courts Are Equally Situated to Hear This Case** ............................................................. 13

**B.**     **Alternately, This Case Should Be Transferred to the Southern District of New York Where HowStuffWorks Also Conducts Activities Related to the Allegations** .................................................................................. 14

**TABLE OF AUTHORITIES**

**Page(s)**

## Cases

*Abstrax, Inc. v. Sun Microsys., Inc.*,
No. 2:07-CV-333, 2009 WL 2824581 (E.D. Tex. Aug. 28, 2009)................................... 11, 15

*ATEN Int'l Co., Ltd. v. Emine Tech. Co., Ltd.*,
261 F.R.D. 112 (E.D. Tex. 2009) ........................................................................................ 6

*Fujitsu Ltd. v. Tellabs, Inc.*,
639 F. Supp. 2d 765 (E.D. Tex. 2009)................................................................................ 13

*In re Acer Am. Corp.*,
626 F.3d 1252 (Fed. Cir. 2010) ........................................................................................... 9

*In re Apple Inc. et al.*,
374 Fed. Appx. 997 (Fed. Cir. 2010)........................................................................ 2, 3, 13

*In re EMC Corp.*,
501 Fed. Appx. 973 (Fed. Cir. 2013) ................................................................................ 11

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009) ................................................................................ 6, 8, 10

*In re Morgan Stanley et al.*,
417 Fed. Appx. 947 (Fed. Cir. 2011)........................................................................... 11, 12

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009) ............................................................................. 6, 13, 14

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008) ......................................................................... 6, 8, 9, 13

*In re Verizon Bus. Network Servs. Inc.*,
635 F.3d 559 (Fed. Cir. 2011) .......................................................................................... 11

*In re Vistaprint Ltd.*,
628 F.3d 1342 (Fed. Cir. 2010) .......................................................................................... 7

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ........................................................................... 6, 8, 9, 12

*In re Volkswagen of Am., Inc.*,
566 F.3d 1349 (Fed. Cir. 2009) ........................................................................................ 10

*In re Zimmer Holdings, Inc.*,
609 F.3d 1378 (Fed. Cir. 2010) ........................................................................................ 11

*Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*,
No. 2:09–cv–200–TJW, 2011 WL 2937365 (E.D. Tex. July 19, 2011)............................ 10

*Software Rights Archive, LLC v. Google, Inc.*,
No. 2:07-CV-511-CE, 2010 WL 2950351 (E.D. Tex. July 22, 2010) .................................. 10

*Van Dusen v. Barrack*,
376 U.S. 612 (1964) ............................................................................................................ 7

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Vigilos, LLC v. Sling Media*,
   No. 2:11-CV-112-DF (E.D. Tex. July 25, 2011)....................................................... 12

*Wireless Recognition Techs., LLC v. A9.com, Inc.*,
   No 2:10-cv-364-JRG, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012)................................... 6, 15

**Statutes**

28 U.S.C. § 1391(c) .................................................................................................... 7

28 U.S.C. § 1400(b) .................................................................................................... 7

**Rules**

Fed. R. Civ. P. 45(c)(3)(ii)............................................................................................ 8

Defendant ("HowStuffWorks[1]") moves pursuant to 28 U.S.C. § 1404(a) to transfer this case and related counterclaims to the Northern District of Georgia, or in the alternative, to the Southern District of New York.  In support of this motion, HowStuffWorks respectfully submits declarations from Conal Byrne and Raymond LaMagna (with exhibits), and the following Memorandum:

## I. INTRODUCTION

No witnesses in this matter are in this District.  Nor is any evidence related to this case to be found in this District.  Nor did any particular events occur here that gave rise to this case.  HowStuffWorks is an Atlanta-based company with nearly all its operations, witnesses, and documents centered in either Atlanta or New York City.  HowStuffWorks thus moves pursuant to 28 U.S.C. § 1404(a) for an order transferring Plaintiff Personal Audio, LLC's claim to the Northern District of Georgia in Atlanta, or in the alternative, to the Southern District of New York.

Transfer to Georgia is proper because HowStuffWorks's principal place of business is in Atlanta, as are the majority of its employees and likely relevant records.  Although HowStuffWorks has not infringed the asserted patent, most activities accused by Personal Audio occurred (if at all) in that district or in New York.[2]  In contrast, neither the Plaintiff, nor its claim, has any significant ties to the Eastern District of Texas.  None of the inventors of the asserted Patent No. 8,112,504 (the "'504 patent") reside in Texas.  Indeed, Personal Audio, a non-practicing entity, appears to have only *one* permanent employee, and even that employee is located in the *Southern* District of Texas. The Federal Circuit itself has held that Personal Audio's "status as a Texas corporation is not

---

[1]   "HowStuffWorks.com," the purported named defendant, is not a known corporate entity. HowStuffWorks, LLC publishes a website at the Internet URL of www.HowStuffWorks.com and the undersigned files this motion here on that basis.

[2]   For this reason, although Georgia would be the most convenient forum, HowStuffWorks consents in the alternative to transferring to New York, consistent with motions and consents filed by defendants in co-pending and now consolidated related litigation concerning the same patent.  *See* Defendants' Joint Motion to Transfer Under 28 U.S.C. § 1404(a) to the Southern District of New York, Case Nos. 2:13-cv-0270, -0271 (JRG) at D.I. 11, 22-2, and 22-4.

entitled to significant weight, inasmuch as the company's presence in Texas appears to be both recent and ephemeral." *In re Apple Inc. et al.*, 374 Fed. Appx. 997, 999 (Fed. Cir. 2010).  Thus, transfer would not *shift* inconvenience to Personal Audio; it would just *eliminate* inconvenience.

In the alternative, should the Court determine that the judicial economy of retaining the cases in one district outweighs the convenience of Atlanta to HowStuffWorks, then HowStuffWorks consents to and respectfully requests to be transferred to New York with the other consolidated defendants, as it is a much more convenient location for HowStuffWorks.

Because this case is in its infancy, a transfer will not cause any significant delay.  The private and public interests examined in a transfer analysis overwhelmingly show that transfer is appropriate.  Thus, HowStuffWorks respectfully requests this Court grant its Motion to Transfer.

## II. NATURE AND STAGE OF PROCEEDINGS

On January 7, 2013, Personal Audio filed suit against HowStuffWorks.com and alleged in a cursory Complaint that HowStuffWorks.com literally infringes the '504 patent.  (2:13-cv-015, D.I. 1.)  HowStuffWorks answered the Complaint, asserted affirmative defenses, and brought declaratory relief Counterclaims against Personal Audio on March 15, 2013.  (*Id.*, D.I. 10.)  Personal Audio moved to dismiss these affirmative defenses and Counterclaims on April 10, 2013.  (*Id.*, D.I. 12.)  HowStuffWorks opposed Personal Audio's motion and brought its own counter-motions.  (*Id.*, D.I. 15–16.)  These motions are currently pending.  Personal Audio has not yet answered the pending Counterclaims, and the pleadings are not yet closed.

On August 2, 2013, the Court consolidated the action against HowStuffWorks for pretrial purposes with other co-pending actions brought by Personal Audio asserting the same patent.  An initial scheduling conference was held last week on August 8, 2013.  At present, no discovery has occurred in any of the consolidated actions, and not all defendants have answered.  Every defendant who has answered, however, has either moved for or consented to transfer.  (*See* note 2, *supra*.)

## III. FACTUAL BACKGROUND

### A.      Summary of the Asserted Claims and Infringement

Personal Audio asserts claims reciting a device "for disseminating a series of episodes represented by media files via the Internet." (D.I. 1, Ex. A at 50:35–37.)  Personal Audio alleges infringement by virtue of HTML files available at HowStuffWorks.com when used in conjunction with the site's creative content, metadata, structure, and download or player functionality. (LaMagna Decl. Ex. A at 2–8.)  As described below, records and personnel related to the design, operation, and functionality of HowStuffWorks's accused site are in either Atlanta or New York.

### B.      Personal Audio's Attenuated Ties to the Eastern District of Texas

Personal Audio is a non-practicing patent assignee with no apparent ties to this District.

Personal Audio's Complaint alleges its "principal place of business" is an office at 555 Fannin Street, Suite 500 in Beaumont, Texas, (the address of its prior litigation counsel[3]).  (*See* 2:13-cv-015, D.I. 1 at ¶ 2.)  But related court filings claim that its "principal place of business" is located at a different address in Beaumont, at 3827 Phelan Boulevard, a PostNet mail center renting mailboxes by the month.  (*See, e.g.*, 2:13-cv-0271, D.I. 1 [NBC Complaint] at ¶ 2; 13-cv-0270, D.I. 1 [CBS Complaint] at ¶ 2; LaMagna Decl. ¶ 3 & Ex. B.)  It appears that neither Beaumont address serves as Personal Audio's principal place of business.  Sworn evidence submitted in the joined litigation now establishes that no Personal Audio employees work at either Beaumont location. Instead, Personal Audio now states under oath that it has only one permanent employee, an attorney who purports to work in Houston.  (*See, e.g.*, 2:13-cv-0271, D.I. 12-2 [Decl. of Brad Little] at ¶ 3.)

Previously, Personal Audio also submitted sworn statements to the Court that the "vast majority of Personal Audio, LLC's documents are located in Beaumont, Texas." (*E.g., id.* at ¶ 4.)

---

[3]      Personal Audio also identified this address in prior litigation in this District (9:11-cv-0120 at D.I. 1 ¶ 8; 9:09-cv-0111 at D.I. 106 ¶ 14) where it was found to be the address of their "Texas litigation counsel," *In re Apple Inc. et al.*, 374 Fed. Appx. 997, 999 (Fed. Cir. 2010).

But this also is in question—Personal Audio now confirms it "does not have possession, custody or control of any responsive documents" related to its patent; instead, documents are in the possession of its outside counsel in New York City. (LaMagna Decl. Ex. A at 9–10.) Moreover, none of the inventors of '504 patent reside anywhere near Texas. Rather, the inventors live in Massachusetts, New Hampshire, Chicago and/or Florida. (*See* D.I. 1, Ex. A at 1; LaMagna Decl. Exs. C, D.) In all, Personal Audio has no employees, no witnesses, and no documents in the Eastern District of Texas.

## C.     HowStuffWorks's Ties to Atlanta and New York Related to This Case

HowStuffWorks operates the education and entertainment website HowStuffWorks.com. It is headquartered in Atlanta, with principal business operations there. The website and its content are primarily developed and operated from Atlanta, with substantial related work performed in New York City. The majority of records and personnel related to these operations are located in the Atlanta and New York offices. (Bryne Decl. ¶¶ 2–3.) No HowStuffWorks operations, employees, or documents are located in Texas. Nor does HowStuffWorks have offices in Texas. (*Id*. ¶ 6.)

As part of its operations, HowStuffWorks creates and distributes a series of podcasts and other media content over the Internet. As described below, this Internet content is primarily created and distributed from the Atlanta office. (*Id*. ¶ 5.) HowStuffWorks's Audio/Video ("AV") Team is based in Atlanta. This team of about a half dozen people produces and distributes podcasts and media, creates indexing metadata and keywords for search engines, and publishes podcasts to RSS feeds. The AV Team's documents and records are located in Atlanta, and all but one of the team's members work from that office and live in the Atlanta area. (*Id*. ¶ 7.)[4]

---

[4]    The former head of the AV Team during the launch of HowStuffWorks.com no longer works at HowStuffWorks, but would likely be familiar with facts related to site operations. The former team head is believed to still live in the Atlanta area. (Bryne Decl. ¶ 8.)

HowStuffWorks's Talent and Editorial Team records podcasts and media, as well as writes blog posts that publish the podcasts and publicize the media for HowStuffWorks.  This team of approximately ten individuals also is located in Atlanta, as are its documents and records.  (*Id*. ¶ 9.)[5]

HowStuffWorks's Technology Team creates and codes the content management system ("CMS"), which is the foundation on which HowStuffWorks's HTML webpages and distribution system are built.  The CMS also serves as a foundation for HowStuffWorks's audio and video functions, including its audio and video players.  The Technology Team is located primarily at the Atlanta headquarters, with one team member in the New York offices.  The documents and records of this team are located primarily in Atlanta, with the remainder located in New York.  (*Id*. ¶ 11.)

HowStuffWorks's Product Team builds, designs, launches, and updates its website (look, feel, design, media functionality, and HTML code) based on the foundational programming created by the Technology team.  The Product Team is located in New York City, as are its documents and records.  (*Id*. ¶ 12.)  HowStuffWorks's Sales and Advertising Team and related records are also based in New York.  This team monetizes website content by selling advertising or sponsorship.  In addition, HowStuffWorks's personnel who track pricing and inventory metrics for advertising, site usage, visitation, and download statistics (related to HowStuffWorks.com and related podcasts or media display), along with any related documents, also are in New York City.  (*Id*. ¶ 13.)

Because of HowStuffWorks's predominance in Atlanta and New York, it is generally easier for the company's employees to access HowStuffWorks's computers, servers, source code, and other documents from there.  To the extent personnel from New York have to travel to Atlanta for this litigation, or vice versa, they would be able to work from and have available the respective local office resources during their stays.  (*Id*. ¶ 15.)  This makes either of these forums convenient.

---

[5]   Two former employees on the Talent and Editorial Team were substantial contributors to HowStuffWorks during the website's launch phase and would likely be familiar with facts related to editorial and publishing operations.  They are both believed to be still located in the Atlanta area.  (Bryne Decl. ¶ 10.)

## IV. LEGAL STANDARD

Under § 1404(a), "[f]or the convenience of parties and witnesses . . . a district court may

transfer any civil action to any other district of division where it might have been brought."  The

Fifth Circuit directs that a court should transfer a case if the moving party can show (a) that the suit

could have originally been filed in the transferee district; and (b) that the transferee venue is

"'clearly more convenient'" for the parties and witnesses than the venue chosen by the plaintiff.

*Wireless Recognition Techs., LLC v. A9.com, Inc.*, No 2:10-cv-364-JRG, 2012 WL 506669, at *1

(E.D. Tex. Feb. 15, 2012) (citing *In re Nintendo Co.*, 589 F.3d 1194, 1197–98 (Fed. Cir. 2009); *In*

*re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315,

1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312, 315 (5th Cir. 2008) (en

banc) (hereinafter, *Volkswagen I*).

In determining convenience, the Fifth Circuit uses a "private and public interest factors test"

to identify if transfer is proper.  *See ATEN Int'l Co., Ltd. v. Emine Tech. Co.*, 261 F.R.D. 112, 123

(E.D. Tex. 2009).  The private interest considerations are:  "(1) the relative ease of access to sources

of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the

cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case

easy, expeditious and inexpensive." *Volkswagen I*, 545 F.3d at 315 (cites and quotes omitted).

In the same vein, it considers public interest factors:  "(1) the administrative difficulties

flowing from court congestion; (2) the local interest in having localized interests decided at home;

(3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of

unnecessary problems of conflict of laws." *Id.* (cites and quotes omitted).

"Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct

factor in the § 1404(a) analysis." *TS Tech*, 551 F.3d at 1320 (citation omitted).  While a court has

discretion, it may not "accord weight [to factors] simply as it pleases," and "deny transfer based

solely on 'negligible' judicial efficiencies." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010). Doing so "may be such a clear abuse of discretion as to warrant extraordinary relief." *Id*. In this case, substantially all of public and private factors counsel in favor of a transfer.

## V. ARGUMENT

### A.    This Case Should Be Transferred to the Northern District of Georgia

#### 1.    The Northern District of Georgia Is a Proper Venue for This Case

The Northern District of Georgia is a proper venue for Personal Audio's claim. Under 28 U.S.C. § 1400(b), "any civil action for patent infringement may be brought in the judicial district where the defendant resides, or whether the defendant has committed acts of infringement and has a regular established place of business." For venue, HowStuffWorks "resides" in Atlanta, where its principal place of business is, where it website is operated from, and where it is subject to personal jurisdiction. *See* 28 U.S.C. § 1391(c). Venue is therefore proper in Georgia for this case.

#### 2.    Transferring to Georgia Would Serve Justice and Be More Convenient

The private and public factors considered here counsel strongly in favor of transfer. Because of the location of documents, operations, and party and non-party witnesses, it is significantly more convenient to litigate this matter in the Northern District of Georgia than here.

Nor could transfer be argued to inconvenience Personal Audio. As shown above, Personal Audio is a non-practicing entity with lead counsel in New York and no employees or witnesses in this District. Indeed, aside from one employee outside of this District in Houston, it appears that Personal Audio may not have any relevant evidence or witnesses in the entire state. All inventors and the prosecuting attorney are outside of this District on the East Coast. Thus, it is appropriate to transfer this case to Georgia. *See, e.g.*, *Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964) (transfer is appropriate when the transferee forum is more convenient).

a.       **Private Interest Factors Overwhelmingly Favor Transfer to Georgia**

(1)       **Evidence for This Case Is In Georgia, Not In Texas**

Both parties will have more direct and less costly access to evidence in Georgia.  In patent

cases, the Federal Circuit recognizes that "the bulk of relevant evidence usually comes from the

accused infringer.  Consequently, the place where the defendant's documents are kept weighs in

favor of transfer to that location."  *In re Genentech*, 566 F.3d at 1345 (cites and quotes omitted).  As

discussed above, there does not appear to be any evidence related to this case in the Eastern District

of Texas.  HowStuffWorks's principal operations, key witnesses, and likely core documents are

located in Atlanta.  (*See generally* Byrne Decl.)  This weighs heavily in favor of transfer.[6]

(2)       **Compulsory Process Is Available for Witnesses in Georgia**

No nonparty witnesses are known to or alleged to exist in this District or in Texas, or within

100 miles of this Court.  In contrast, the Northern District of Georgia has subpoena power over

former employees who may be knowledgeable about the design or functionality of

HowStuffWorks.com.  *Compare* Fed. R. Civ. P. 45(c)(3)(ii); *Volkswagen I*, 545 F.3d at 316, *with,*

*e.g.,* Bryne Decl. ¶¶ 8, 10.  Furthermore, none of the '504 patent's inventors are located in or

anywhere near Texas, making Texas no more effective than Georgia for compulsory process.  Thus,

given the potential for compulsory process in Georgia, this factor favors of transfer.

(3)       **Georgia Is More Convenient for the Witnesses and Parties**

While no single factor is dispositive for transfer, "[t]he convenience of the witnesses is

probably the single most important factor in a transfer analysis."  *Genentech,* 566 F.3d at 1343

(cites and quotes omitted).  Here, the majority of HowStuffWorks's likely witnesses live and work

---

[6]   Moreover, whether documents are stored electronically "does not render this factor
superfluous."  *Volkswagen I*, 545 F.3d at 316.  "When comparing relative ease of access to
sources of proof afforded by two potential forums, the location of physical and documentary
evidence is the predominant consideration, even when some evidence may be electronically
stored…."  *TS Tech*, 551 F.3d at 1320–21.

in Georgia, and no witnesses are in this District.  Transferring to Georgia would significantly limit the cost of witnesses attending trial (and thus necessarily save costs for the parties).  (*E.g.*, Byrne Decl. ¶¶ 2–11.)  Litigation in Georgia would therefore be much more convenient.  (*E.g.*, *id.* ¶ 16.)

HowStuffWorks.com features vibrant and constantly revised content, such that many of its employees are needed for daily oversight and task management.  (*Id.*)  The website and media content require day-to-day updating—taking core team members away from the company could hurt productivity and/or disrupt the company's products and media content.  (*Id.*)  If the litigation requires the participation of employees, it would be a hardship for the company and employees to require travel or extended leaves for key individuals.  (*Id.*)  Although HowStuffWorks is well known, it is a small company.  The loss of even a few people from its small operations teams will have a substantial and negative impact on the teams, their members, and on the company.  (*Id.*)

In the Fifth Circuit, when the distance between potential venues is more than 100 miles, "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Volkswagen I*, 545 F.3d at 317 (cites and quotes omitted).  Atlanta is over 600 miles from Marshall, evidencing the scope of the inconvenience.  This is particularly unreasonable given the number of potential witnesses *actually in* Atlanta as compared to Texas.  *TS Tech*, 551 F.3d at 1320–21 (finding the court erred by not considering the 100-mile rule).

In this Circuit, courts readily recognize that it is more convenient and cost efficient for witnesses to "testify at home."  "Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment."  *Volkswagen I*, 545 F.3d at 317.  Trial closer to the likely witnesses protects against "personal costs associated with being away from work, family, and community."  *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) (cites and quotes omitted).

On balance, given that no witnesses are in this District, transferring this matter will be more convenient and cost-effective for "a substantial number of material witnesses" who live in the Atlanta area. *Cf. Genentech*, 566 F.3d at 1345.  This key private interest factor thus weighs heavily in favor of transferring this action to the Northern District of Georgia. *See id.*

(4)      **Other Practical Factors Favor Transfer**

Courts also consider other practical considerations when deciding to transfer a case.  Here, for example, there is no risk of prejudicial delay to Personal Audio if this case were transferred. This case is at an early stage, and discovery has not even yet begun.  As noted above, the pleadings have not closed, and Personal Audio has not answered the pending counterclaims.

Courts in this District also evaluate judicial economy under this factor.[7] *Software Rights Archive, LLC v. Google, Inc.*, No. 2:07-CV-511-CE, 2010 WL 2950351, at *3–4 (E.D. Tex. July 22, 2010).  For example, courts consider whether there are related, co-pending cases in the same district, or whether the court has prior familiarity with the issues.  *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (hereinafter "*Volkswagen II*").  Here, although Personal Audio previously litigated patents in this District (including in a trial against Apple), those patent claims were entirely different, covering audio *player* devices (like iPods).  The current patent claims purport to cover server-side devices that *distribute* media files (allegedly like web servers).  The issues, questions of prior art and validity, and claim construction are all very different.  Thus, prior litigation here by Personal Audio does not weigh in favor of venue here.[8]

Nor does the fact that Personal Audio sued multiple defendants weigh in favor of keeping this case in Texas.  Although there may be some efficiency in keeping related cases together, that

---

[7]  Some courts evaluate such considerations as "public" factors, but the analysis is the same.

[8]  Simply, there is "no judge in the Marshall Division with familiarity" of this case, this patent, or these claims.  *Cf. Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, No. 2:09–cv–200–TJW, 2011 WL 2937365, at *2 (E.D. Tex. July 19, 2011) (granting transfer because the judge with prior experience on *the same* patent would retire before trial).

does not indicate that *these* cases should be litigated in *this* District.  As stated below, should this Court place a heavy emphasis on judicial economy, HowStuffWorks and the other consolidated defendants have all consented to transferring to the Southern District of New York, where evidence and witnesses related to HowStuffWorks are also located, as well as like evidence and witnesses for other defendants.  If the Court prefers that the currently consolidated cases should be heard in one forum, that forum would be in New York—there is no reason to keep these cases together here in Texas.  Judicial economy does not weigh in favor of maintaining these cases in this District.

Moreover, Personal Audio's lawsuits against other defendants do not "override a compelling showing [for] transfer."  *In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011). As the Federal Circuit repeatedly cautions, to do so "would be inconsistent with the policies underlying § 1404(a)."  *Id.*  The Federal Circuit states that it does "not suggest that the judicial economy of having the same judge handle multiple suits involving the same patents should dominate the transfer inquiry.  After all, . . . [p]rocedures exist to effectuate this sort of efficiency." *In re EMC Corp.*, 501 Fed. Appx. 973, 976 (Fed. Cir. 2013); *see also*, *In re Morgan Stanley et al.*, 417 Fed. Appx. 947, 949 (Fed. Cir. 2011) (noting its repeated rejection of "arguments that the preservation of judicial economy should preclude transfer to a far more convenient venue").

Regardless, the currently consolidated actions may involve the same patent, but they involve different websites, with different functionality and different operations.  Thus, "significantly different discovery, evidence, proceedings, and trial" will likely result.  *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010) (ordering transfer despite another action on the same patent in the same forum because judicial economy did not "negate[] the significance of having trial close to where most … witnesses reside and where the other convenience factors clearly favor").

Moreover, this District recognizes that, when motions to transfer are brought by multiple defendants in the earliest stages of a case, judicial economy concerns may be addressed.  *Abstrax,*

*Inc. v. Sun Microsys., Inc.*, No. 2:07-CV-333, 2009 WL 2824581, at *2 (E.D. Tex. Aug. 28, 2009). The cases against all the currently consolidated defendants are in their very initial stages.  A transfer at this point will not result in transferring defendants away from a court that has significant knowledge or familiarity with the specific patent and issues in these actions.

Transferring to the Northern District of Georgia (or, as discussed below, to the Southern District of New York) would thus serve to "make trial of [this] case easy, expeditious and inexpensive," *Volkswagen I*, 545 F.3d at 315.  "[D]enial of transfer would require almost every witness to expend significant time and cost in order to attend trial," which contravenes "the very purpose of § 1404(a)."  *Morgan Stanley*, 417 Fed. Appx. at 948–49 (ordering transfer because convenience outweighed judicial economy).  Judicial economy does not outweigh that "important consideration" of convenience, and can be equally served by transfer.  *Cf. id*.  Thus, the private interest factors clearly weigh in favor of transfer.

      b.      **Public Interest Factors Also Favor Transfer**

      (1)      **The Northern District of Georgia Is Not More Congested**

Transferring Personal Audio's claim to Georgia will not delay the resolution of the dispute or create any additional administrative difficulties.  There is no basis to suggest that the Northern District of Georgia (or, for that matter, the Southern District of New York) is any differently situated than this District.  As this Court has previously noted, court congestion is the "most speculative factor" in the transfer analysis.  *Vigilos, LLC v. Sling Media*, No. 2:11-CV-112-DF, at *10 (E.D. Tex. July 25, 2011) (provided at LaMagna Decl. Ex. E).  Here, given the volume of patent and other matters in this District, at best, a transfer will likely have no impact on scheduling (especially in light of the early status of the case).  Transfer will certainly not create any greater impact on the courts overall or result in a less efficient proceeding than if the case continued here.

(2)      **Georgia Has a Greater Local Interest in This Litigation**

The Northern District of Georgia has a far greater interest in hearing this case than does the

Eastern District of Texas.  HowStuffWorks is based in Atlanta, has its principal place of businesss

there, and maintains extensive contacts there.  In contrast, Personal Audio—like its claim—has no

connection to this District save a postbox.  Personal Audio's "presence in Texas appears to be both

recent and ephemeral."  *Apple*, 374 Fed. Appx. at 999.  In opposition to transfer motions brought by

other defendants, Personal Audio has confirmed it has *only one* employee in Texas (and not in this

District), with at best nominal operations here.  (*E.g.*, 2:13-cv-0271 D.I. 12-2 [Little Decl.] at ¶ 3.)

HowStuffWorks's connection to this District is solely limited to the fact that its website is

available on the Internet, which can be accessed in this District, like most anywhere else in the

world.  No specific facts or events related to this case occurred in Texas, much less in this District.

The rule in this District is that "local interests that could apply virtually to any judicial district or

division in the United States are disregarded in favor of particularized local interests."  *Fujitsu Ltd.*

*v. Tellabs, Inc.*, 639 F. Supp. 2d 765, 769 (E.D. Tex. 2009).  This again supports transfer.[9]

(3)      **Other Federal Courts Are Equally Situated to Hear This Case**

"Patent claims are governed by federal law, and as such [all federal courts are] capable of

applying patent law to infringement claims."  *TS Tech*, 551 F.3d at 1320 (cites and quotes omitted).

Thus, this Court and the Northern District of Georgia (or the Southern District of New York) are

equally situated to adjudicate this case.  As stated above, this case is in its infancy, and no resources

would be squandered by transferring Personal Audio's suit at this juncture.

In sum, both private and public factors overwhelmingly support transfer.  Where "a case

featur[es] most witnesses and evidence closer to the transferee venue with few or no convenience

---

[9]     Transfer is supported when "the citizens of the venue chosen by the plaintiff 'have no more or
less of a meaningful connection to the case than any other venue.'"  *In re Nintendo Co.*, 589
F.3d 1194, 1198 (Fed. Cir. 2009) (quoting *TS Tech*, 551 F.3d at 1321).

factors favoring the venue chosen by plaintiff, the trial court should grant a motion to transfer."

*Nintendo*, 589 F.3d at 1198.

**B.    Alternately, This Case Should Be Transferred to the Southern District of New York Where HowStuffWorks Also Conducts Activities Related to the Allegations**

As detailed above, besides Atlanta, the majority of HowStuffWorks's operations related to the allegations in this case are run out of New York City.  (*See* Byrne Decl. ¶¶ 3, 11–15.)  All personnel responsible for advertising sales, website analytics, and traffic data work there.  (*Id*.)  All employees responsible for designing and updating site functionality are also based in New York, as is part of the team responsible for the CMS on which the accused webpages and distribution system run.  (*Id*.)  Likewise, related documents and computer records are located in New York.  (*Id*.)

To the extent personnel from Atlanta are required to travel to New York for this case, they would be able to work from and have available to them HowStuffWorks's local office resources during their stays.  (*Id*.)  As such, if the litigation went forward in New York, employees could participate in the case while still being close to their homes and work, or at least within comfortable reach of company offices.  In contrast, as shown above, no benefit is obtained by proceeding in this District, where no relevant facts, evidence, or witnesses can be found.

Like the Eastern District of Texas, the Southern District of New York is part of the Patent Pilot Program, and is certainly experienced in administering patent cases.  *See, e.g*., http://www.nysd.uscourts.gov/file/news/patent_pilot_program_press_release.  Given the early stages of Personal Audio's litigations involving the '504 patent, no undue delay or prejudice would result if this case were transferred to New York.  At present, other defendants in the currently consolidated litigations filed by Personal Audio have either moved for transfer to New York (because they too have substantial relevant operations there) or have consented to such transfer. New York is clearly a more appropriate and convenient forum than the Eastern District of Texas. As such, HowStuffWorks also consents to transfer there in the alternative.

Should the Court give more weight to overall judicial economy than to the litigatin's specific nexus to Atlanta, HowStuffWorks respectfully asks the Court to transfer its case along with that of the other consolidated matters to the Southern District of New York.  This renders moot any concern that transfer impacts judicial economy.  *See, e.g.*, *Wireless*, 2012 WL 506669, at *5 ("[J]udicial economy or other practical concerns … will be unchanged from the present because [the cases] will all be heard in [N.D. Cal.] as opposed to [E.D. Tex.]" as a result of transfer.).

This Court routinely transfers multiple-defendant cases involving the same patent when judicial economy concerns are "negated by the posture of the motion to change venue." *Abstrax*, 2009 WL 2824581, at *2; *see also*, *Wireless*, 2012 WL 506669, at *4–6.  Therefore, if the Court is inclined not to grant HowStuffWorks's motion to transfer to the Northern District of Georgia in order to keep these cases together, HowStuffWorks respectfully requests joint transfer instead to the Southern District of New York as an alternate appropriate venue.

Dated: August 28, 2013

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By: _____ /s/ *Raymond LaMagna* _____
Josh Krevitt, NY SBN 2568228
jkrevitt@gibsondunn.com
200 Park Avenue
New York, NY  10166-0193
Telephone: (212) 351-4000
Facsimile:   (212) 351-4035

Jason Lo, CA SBN 219030
jlo@gibsondunn.com
Raymond LaMagna, CA SBN 244821
rlamagna@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile:   (213) 229-7520

ATTORNEYS FOR HOWSTUFFWORKS, LLC

## CERTIFICATE OF SERVICE

I, the undersigned, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 333 South Grand Avenue, Los Angeles, California 90071.

On August 28, 2013, I caused the following documents to be electronically filed with the Clerk of the Court using the CM/ECF system in compliance with Local Rule CV-5(a), which will send notification of such filings to all known counsel of record who have consented to electronic service per Local Rule CV-5:

## DEFENDANT HOWSTUFFWORKS'S MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)

I declare under penalty of perjury under the laws of the United States of America and the State of California that the above is true and correct.

Executed on August 28, 2013, at Los Angeles, California.

                    /s/ Raymond LaMagna
                    Raymond LaMagna

## CERTIFICATE OF CONFERENCE

On August 13, 2013, Raymond LaMagna, Counsel for Defendant, discussed the requested relief by telephone with Papool Chaudhari, Counsel for Plaintiff. After due consideration, Plaintiff is opposed to the relief requested herein. No agreement could be reached and discussions as to the requested transfer have ended in an impasse leaving an open issue for the Court to resolve.

                    /s/ Raymond LaMagna
                    Raymond LaMagna