**EXHIBIT 1**

**LETTER BRIEF**

Case 2:13-cv-00013-JRG-RSP   Document 124-1   Filed 05/05/14   Page 1 of 9 PageID #: 3774



**CLYDE M. SIEBMAN**
 Board Certified Civil Trial Law -
 Texas Board of Legal Specialization
**BRYAN H. BURG**
**LAWRENCE A. (LARRY) PHILLIPS**
**MICHAEL C. SMITH**
**STEPHANIE R. BARNES**

**MARSHALL OFFICE**
113 East Austin Street
P.O. Box 1556
Marshall, Texas 75671-1556
(903) 938-8900 Telephone
(972) 767-4620 Facsimile

michaelsmith@siebman.com

May 5, 2014

VIA ECF

The Honorable Roy Payne
United States Magistrate Judge
Sam B. Hall, Jr. Federal Building and United States Courthouse
100 East Houston Street
Marshall, Texas 75670

Re: *Personal Audio, LLC v. Togi Entertainment, Inc. et al,* No. 2:13-cv-00013-JRG-RSP (E.D. Tex.): Defendants' Request for Permission to File a Motion for Summary Judgment of Non-Infringement of All Asserted Claims of U.S. Patent No. 8,112,504

Dear Judge Payne:

Pursuant to this Court's Docket Control Order, Defendants[1] respectfully submit this letter brief seeking leave to file for partial summary judgment of non-infringement of all asserted claims of U.S. Patent No. 8,112,504 (the "'504 Patent") because none of the Defendants "makes, uses, offers to sell, or sells" the vast majority of the accused apparatuses as required under 35 U.S.C. section 271(a).

## I.  Background

Personal Audio alleges that each Defendant directly infringes one or more of claims 31–34 of the '504 Patent. Claim 31—the only asserted independent claim[2]—purports to claim a physical "[a]pparatus for disseminating a series of [media] episodes represented by media files via the Internet." '504 Patent, cl. 31. Generally speaking, this apparatus requires 1) "one or more data storage servers" that store, inter alia, "media files" and "compilation files" (accused to include HTML code used to generate webpages); 2) "one or more communication interfaces connected to the Internet" for receiving and responding to requests from client devices for these files; and 3) one or more processors coupled to the data storage servers and communication interfaces for processing the interactions between the storage servers, communication interfaces, and client devices as needed for serving the files. *Id.*

---

[1]  This letter brief is being filed on behalf of all parties identified in the signature block at the end of the accompanying Notice.

[2]  Claims 32–34 are dependent claims of claim 31.

{4738/6025-000/00020411.1}

The Honorable Roy Payne
May 5, 2014
Page 2

In particular, Personal Audio alleges that the infringing apparatus is one that 1) "receives a request" from a client device for an updated "[HTML] compilation file," 2) "download[s]" this compilation file to the client device, and 3) then "receive[s] and respond[s] to" requests from the client device for "one or more" of the media files. *See, e.g.*, Plaintiff's Disclosure of Asserted Claims and Infringement Contentions directed at HowStuffWorks.com at 4-8.

In sum, according to Personal Audio and the '504 patent, the accused apparatus here would be an Internet server of particular design requirements (as further detailed in claim 31 and dependent claims 32–24) tasked with receiving and responding in particular ways to requests from client devices for HTML and media files (the "accused functionality"). But none of Defendants make, own, operate, use, sell, or offer to sell any such devices.

## II. Defendants Do Not Directly Infringe the '504 Patent Under Section 271(a)

### A. Legal Standard

"[F]or a party to be liable for direct infringement under 35 U.S.C. § 271(a), that party must commit all the acts necessary to infringe the patent, either personally or vicariously." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1307 (Fed. Cir. 2012) (*en banc*).[3] 35 U.S.C. § 271(a) states that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States" directly infringes that patent. To establish direct infringement under the "use" prong, the patentee must show that the accused infringer "put[s] the invention into service, i.e., control[s] the system as a whole and obtain[s] benefit from it." *Centillion Data Sys., LLC v. Qwest Commc'n Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011). To establish that the accused infringer is vicariously liable when another entity makes or uses the patented system, the patentee must show that the other party who makes or uses the infringing system 1) has an agency relationship or an agency-like contractual relationship with the accused infringer; <u>and</u> 2) acted at the accused infringer's direction or control. *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1363 (Fed. Cir. 2013) ("One party's direction or control over another in a principal-agent relationship or like contractual relationship operates as an exception to this general rule, but absent that agency relationship or joint enterprise, we have declined to find one party vicariously liable for another's actions.").

### B. None of the Defendants Make, Use, Sell, or Offer for Sale any Apparatuses Used to Perform the Accused Functionalities

This case differs substantially from other 271(a) issues previously before Judge Gilstrap because the asserted claims of this case are <u>apparatus claims</u> drawn toward a device that distributes content to a user upon request. When an Internet user requests media content (or related webpages) from the vast majority of the Defendants' accused websites, the user's "client device"

---

[3] *Akamai v. Limelight* is currently sub judice with the United States Supreme Court. Defendants will update this Court when a decision issues in that matter.

The Honorable Roy Payne
May 5, 2014
Page 3

*never* interacts with any apparatus made, used, sold, or offered for sale by any of the Defendants. This is because, with respect to the vast majority of the accused websites, Defendants themselves do not own or operate Internet servers that communicate with the public or host their media content directly on the Internet. Instead, all of the Defendants hire outside companies to host and distribute this media content. These third parties (typically called Content Distribution Networks or "CDNs") own and operate the Internet servers that actually host this content. For the vast majority of the accused apparatuses, it is the CDN's servers that communicate with client requests from the public—these CDN servers "receive and respond to" requests from the client devices, including for HTML pages and media content. Defendants' computer equipment do not.

The CDNs use their own apparatuses, including hardware and software, based on their own proprietary design. These CDN apparatuses are not designed, made, owned, controlled, or operated by any of the Defendants. Indeed, the Defendants do not know, and have no way of knowing, what apparatuses the CDNs use to serve Defendants' media content. Nor do Defendants have any contractual right to direct or control the CDNs' choice, use, or design of equipment, software, or any architecture for any such server apparatus. The design and operation of the CDNs' servers are solely within their discretion, and not disclosed by them.

In addition, Defendant Lotzi Digital Inc. ("Lotzi") has yet another level of dissociation with the accused apparatuses. Lotzi's business primarily consists of the creation of creative content. Simply put, Lotzi records audio programs. Rather than hire CDN's directly, Lotzi engages service providers to facilitate the distribution of the audio programs over the Internet ("Hosting Service Provders"). Those Hosting Service Providers, in turn, hire CDNs. Over the relevant time period, Lotzi has engaged two such service providers: Webmayhem, Inc. ("Libsyn")[4] and The Nox Group, LLC ("Nox") to make its content available. Each provider has a unique propriety interface for its customers. For example, between February 7, 2012 (when the '504 Patent issued) and September 2013, Libsyn provided Lotzi access to its propriety Internet-based interface for uploading Lotzi's audio content, and certain other information, onto the Libsyn system. Every week, Lotzi uploaded its programming to the Libsyn website and fills in the appropriate information requested by the Libsyn website. The process is akin to filling out any Internet-based form. After Lotzi uploads the audio content and information, its role is complete. The Nox process is similar, but uses a different proprietary interface. The methods, systems, and apparatuses used for making the content available is at the discretion of the Hosting Service Providers, and in turn, the CDNs hired by the service providers.

In short, the vast majority of the accused apparatuses that could directly infringe the asserted claims are those owned and operated by nonparties to this case. The client devices recited in claim 31 *never* communicate with the vast majority of the apparatuses directed or controlled by, or made, used, owned, sold, or offered for sale by, Defendants. Accordingly, Defendants cannot

---

[4] Webmayhem, Inc. operates under the trade name "Libsyn" for the purposes of offering its hosting and distribution services and will be referred to as "Libsyn" throughout this brief.

The Honorable Roy Payne
May 5, 2014
Page 4

be liable for direct infringement for making, using, selling, or offering for sale the vast majority of the apparatuses that perform the accused functionalities.[5]

### C. End-Users, Not the Defendants, Use the Apparatuses Used to Perform the Accused Functionalities

To be liable for direct infringement under the "use" prong of section 271(a), the accused infringer must "put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it." *Centillion*, 631 F.3d at 1284. Here, to the extent any entities "use" the vast majority of the accused apparatuses, it is the CDNs and the end-users, not Defendants. Personal Audio's infringement contentions confirm this. For example, in its infringement contentions directed to HowStuffWorks.com, Personal Audio states that the end user "typing into a browser . . . [a URL for a HowStuffWorks.com website to] causes a data file identified by that URL to be downloaded to the user's device" allegedly satisfies the "download said updated version" element. *See* Plaintiff's Disclosure of Asserted Claims and Infringement Contentions directed at HowStuffWorks.com at 8; '504 Patent, cl. 31. Similarly, Personal Audio states that the servers that store the episodes available at HowStuffWorks.com satisfies the "one or more data storage servers" element of claim 31. *See* Plaintiff's Disclosure of Asserted Claims and Infringement Contentions directed at HowStuffWorks.com at 8; '504 Patent, cl. 31. As discussed above, these files are stored and hosted by CDNs, not Defendants.

Without the end-user, the CDN apparatuses would have nothing to receive and respond to. The interactions recited in claim 31 occur between client device's end user and the apparatus owned and operated by the CDN. Thus, the end-users and CDNs, not Defendants, "control[] the system as a whole" by requesting and receiving episode lists and media from apparatuses capable of performing the Accused Functionalities.

### D. None of the Defendants Vicariously Infringe

To vicariously infringe, Defendants must direct or exert control on another entity to directly infringe through an agency or agency-like contractual relationship. *Aristocrat Techs. Austl.Pty*, 709 F.3d at 1363. "[M]ere 'arms-length cooperation' will not give rise to direct infringement." *Muniaction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008). Instead, vicarious infringement liability attaches only "to the 'mastermind' who controls or directs each step of the process." *Joao Control & Monitoring Sys. of Cal., LLC v. Sling Media, Inc.*, Case No. C-11-6277, 2012 WL 3249510, at *8 (N.D. Cal. Aug. 7, 2012). For example, in *Centillion*, the Federal Circuit held that the defendant did not vicariously infringe the plaintiff's system claims when the defendant's customers directly infringed (by using the claimed system) because the defendant "in no way directs its customers to perform nor do its customers act as its agents. While the [defendant] provides software and technical assistance, it is entirely the decision of the customer whether to install and operate this software on its personal computer data processing means." *Centillion*, 631 F.3d at 1287. Similarly, in *Joao Control*, the court dismissed an allegation of vicarious infringement where the defendant's customers were not alleged to be

---

[5] Plaintiff has not asserted a claim for indirect infringement against any party.

The Honorable Roy Payne
May 5, 2014
Page 5

"contractually *obligated* to use the [accused] software" or otherwise under the control of the defendant. *Joao Control*, 2014 WL 3249510, at *7. By contrast, in *DDR Holdings, LLC v. Hotels.com*, 954 F. Supp. 2d 509, 521 (E.D. Tex. 2013), the court denied the defendant's request for JMOL of no vicarious infringement via a contract between the defendant and a third-party. The claims at issue in *DDR Holdings* required storing "look and feel" information for websites. *Id.* The defendant argued that it did not directly infringe because a third-party stored this information. The court, however, found that "substantial evidence" existed to hold the defendant vicariously liable because defendant contracted with the third-party to store the look and feel information—the exact act required by the asserted claims. *Id.*

Here, Defendants are in neither an agency relationship nor an agency-like contractual relationship with the CDNs—Defendants and CDNs are arms-length parties contracting for data services. *See Muniaction*, 532 F.3d at 1329. Like the defendants in *Centillion* and *Joao Control*, the CDNs are not contractually obligated to use infringing systems to perform the work Defendants hired them to do. Nor do Defendants direct CDNs to use infringing systems. Indeed, whether the CDNs elect to utilize infringing or non-infringing equipment is unknown to Defendants and at the CDNs' sole discretion. Thus, unlike the defendant in *DDR Holdings*, Defendants here do not have contracts with CDNs obligating the CDNs to use apparatuses that satisfy any of Personal Audio's claims. Defendants do not vicariously infringe vis-à-vis any supposed infringement by the CDNs because Defendants cannot direct or exert control over the nature or design of the apparatuses the CDNs use.

Defendants also cannot be vicariously liable for direct infringement vis-à-vis end-users because Defendants do not have an agency or agency-like contractual relationship with them. End-users are not obligated to watch Defendants' shows and do not act on Defendants' behalf when they do. *See Centillion*, 631 F.3d at 1287; *Joao Control*, 2014 WL 3249510, at *7.

To be clear, this is not a case involving a method or system claim, where Defendants have simply hired a nonparty to perform a step in the method or provide an element of the system. This is a claim to a physical apparatus of specific design and utilization requirements. While it is true that Defendants contract with CDNs for data services, Defendants do not direct or control how the CDNs perform those services. Defendants do not direct or control what equipment the CDNs use, or how that equipment should operate and be configured.

As such, Defendants cannot be liable for vicarious infringement of the asserted claims.

## V.   *Conclusion*

For the foregoing reasons, Defendants respectfully request leave to file for partial summary judgment of non-infringement as to all asserted claims of the '504 Patent. If granted, such motions would result in dismissal of the vast majority of Personal Audio's case.

SHERMAN        LUFKIN        MARSHALL        PLANO        TYLER

The Honorable Roy Payne
May 5, 2014
Page 6

        Respectfully submitted,

        SIEBMAN, BURG, PHILLIPS & SMITH, LLP

        _/s/ Michael Smith_
        Michael C. Smith
        113 East Austin Street
        Marshall, TX  75670
        Telephone:  (903) 938-8900
        Facsimile:   (972) 767-4620

        GIBSON, DUNN, & CRUTCHER, LLP

        /s/*Josh Krevitt (with permission by Michael C. Smith)*
        Josh Krevitt
        200 Park Avenue
        New York, NY  10166-0193
        Telephone: (212) 351-4000
        Facsimile: (212) 351-4035

        Jason Lo
        Raymond LaMagna
        333 South Grand Avenue
        Los Angeles, CA 90071-3197
        Telephone: (213) 229-7000
        Facsimile:   (213) 229-7520

        *Attorneys for Defendant Howstuffworks, LLC*

        WILSON ROBERTSON & CORNELIUS PC

        /s/*Jennifer Parker Ainsworth (with permission by Michael C. Smith)*
        Jennifer Parker Ainsworth
        909 ESE Loop 323
        Suite 400
        P.O. Box 7339
        Tyler, TX 75711-7339
        903-509-5000
        Fax: 903-509-5092
        Email: jainsworth@wilsonlawfirm.com

The Honorable Roy Payne
May 5, 2014
Page 7

        ROTHWELL, FIGG, ERNST & MANBECK, P.C.

        Steven Lieberman
        slieberman@rfem.com
        Brian S. Rosenbloom
        brosenbloom@rfem.com
        Sharon L. Davis
        sdavis@rfem.com
        Jennifer Maisel
        jmaisel@rfem.com
        607 14th Street, N.W.
        Suite 800
        Washington, DC 20005
        Telephone: (202) 783-6040
        Facsimile: (202) 783-6031

*Attorneys for Defendants CBS Corporation, NBCUniversal Media, LLC, Fox Broadcasting Company, Fox Networks Group, Inc.*


        JACKSON WALKER L.L.P.

        /s/*David Folsom (with permission by Michael C. Smith)*
        David Folsom
        Texas State Bar No. 07210800
        dfolsom@jw.com
        John M. Jackson
        Texas State Bar No. 24002340
        jjackson@jw.com
        Matthew C. Acosta
        Texas State Bar No. 24062577
        macosta@jw.com
        901 Main Street, Suite 6000
        Dallas, Texas 75202
        Telephone: (214) 953-6000
        Facsimile: (214) 953-5822

*Attorneys for Defendant Lotzi Digital, Inc.*

The Honorable Roy Payne
May 5, 2014
Page 8

WHITE & CASE, LLP

/s/*Bijal V. Vakil (with permission by Michael C. Smith)*
Bijal V. Vakil
CA State Bar No.: 192878
(Admitted to practice in the Eastern District of Texas)
3000 El Camino Real
Five Palo Alto Square 9th Floor
Palo Alto, CA 94306
Telephone: (650) 213-0300
Facsimile: (650) 213-8158
Email: bvakil@whitecase.com

DOLL AMIR & ELEY LLP

Gregory L. Doll
CA State Bar No.: 193205
(Admitted Pro Hac Vice)
1888 Century Park East, Suite 1850
Los Angeles, CA 90067
Telephone: (310) 557-9100
Facsimile: (310) 557-9101
Email: gdoll@dollamir.com

*Attorneys for Defendant A PARTNERSHIP CONSISTING OF ADAM CAROLLA, DONNY MISRAJE AND SANDY GANZ*

FRIZZELL LAW FIRM

/s/*Bill Frizzell (with permission by Michael C. Smith)*
Bill Frizzell
6653 Oak Hill Blvd
Tyler, TX 75703
903/595-1921
Fax: 9035954383
bfrizzell@tyler.net

*Attorney for Defendant Togi Entertainment, Inc.*