1

```
 1              UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF TEXAS
 2                   MARSHALL DIVISION

 3
    PERSONAL AUDIO, LLC        |  DOCKET NO. 2:13CV13
 4                            |
                              |  APRIL 24, 2014
 5  VS.                        |
                              |
 6                            |  9:04 A.M.
    TOGI ENTERTAINMENT,        |
 7  ET AL                      |  MARSHALL, TEXAS

 8  ------------------------------------------------------

 9         VOLUME 1 OF 1, PAGES 1 THROUGH 125

10    REPORTER'S TRANSCRIPT OF CLAIM CONSTRUCTION HEARING

11          BEFORE THE HONORABLE ROY PAYNE
             UNITED STATES MAGISTRATE JUDGE
12
    ------------------------------------------------------
13

14  APPEARANCES:

15  FOR PERSONAL AUDIO:    T. JOHN WARD
                           WARD & SMITH LAW FIRM
16                         1127 JUDSON ROAD
                           SUITE 220
17                         LONGVIEW, TEXAS 75606

18                         JEREMY S. PITCOCK
                           THE PITCOCK LAW GROUP
19                         1501 BROADWAY, 12TH FLOOR
                           NEW YORK, NEW YORK 10036
20
                           PAPOOL S. CHAUDHARI
21                         REYES BARTOLOMEI BROWNE
                           5950 BERKSHIRE LANE
22                         SUITE 410
                           DALLAS, TEXAS 75225
23
                           MERTON THOMPSON
24                         BURNS & LEVINSON
                           125 SUMMER STREET
25                         BOSTON, MASSACHUSETTS 02110
```

```
 1   FOR HOWSTUFFWORKS:      MICHAEL SMITH
                             LARRY PHILLIPS
 2                           SIEBMAN BURG PHILLIPS & SMITH
                             113 EAST AUSTIN STREET
 3                           MARSHALL, TEXAS 75671

 4                           JASON LO
                             GIBSON DUNN CRUTCHER, LLP
 5                           333 SOUTH GRAND AVENUE
                             47TH FLOOR
 6                           LOS ANGELES, CALIFORNIA 90071

 7   FOR CBS CORPORATION, NBCUNIVERSAL MEDIA, AND FOX:

 8                           STEVEN LIEBERMANN
                             SHARON L. DAVIS
 9                           BRIAN ROSENBLOOM
                             ROTHWELL FIGG ERNST & MANBECK
10                           607 14TH STREET NW
                             SUITE 800
11                           WASHINGTON, DC 20005

12                           JENNIFER PARKER AINSWORTH
                             WILSON ROBERTSON & CORNELIUS
13                           909 ESE LOOP 323
                             SUITE 400
14                           TYLER, TEXAS 75711

15   FOR LOTZI DIGITAL:      MATTHEW C. ACOSTA
                             JACKSON WALKER
16                           901 MAIN STREET
                             SUITE 6000
17                           DALLAS, TEXAS 75202

18   FOR THE PARTNERSHIP:    M. DRU MONTGOMERY
                             THE HEARTFIELD LAW FIRM
19                           2195 DOWLEN ROAD
                             BEAUMONT, TEXAS 77706
20
     ALSO IN ATTENDANCE:     BRAD LIDDLE, PERSONAL AUDIO
21                           DAN WAN, CBS CORPORATION

22   COURT REPORTER:         TONYA B. JACKSON, RPR-CRR
                             FEDERAL OFFICIAL REPORTER
23                           300 WILLOW, SUITE 239
                             BEAUMONT, TEXAS  77701
24
        PROCEEDINGS REPORTED USING COMPUTERIZED STENOTYPE;
25     TRANSCRIPT PRODUCED VIA COMPUTER-AIDED TRANSCRIPTION.
```

1                              INDEX

2                                                    PAGE

3

4    "MEDIA FILE"                                   8

5    "EPISODES"                                      8

6    "DOWNLOADING" PHRASES                          19

7    "URL"                                          42

8    "STORAGE LOCATION"                             53

9    "COMPILATION FILE" AND "ONE OR MORE            65
     PROCESSORS...FOR...FROM TIME TO TIME"
10
     "EMPLOYING ONE OF SAID ONE OR MORE            77
11   COMMUNICATION INTERFACES TO" AND "(C)
     THEREAFTER RECEIVE AND RESPOND TO A REQUEST
12   FROM SAID..."

13
     MOTION TO COMPEL                               97
14

15

16

17

18

19

20

21

22

23

24

25

4

1      (OPEN COURT, ALL PARTIES PRESENT.)

2          THE COURT:  For the record, we're here for the

3  claim construction hearing in *Personal Audio versus Togi*

4  *Entertainment* which is Case No. 2:13-13 on our docket.

5          Would counsel state their appearances for the

6  record.

7          MR. WARD:  Good morning, your Honor.  John

8  Ward for the plaintiff.  At our table is Mr. Brad Liddle,

9  our CEO and general counsel; Mr. Papool Chaudhari;

10 Mr. Merton Thompson; and Jeremy Pitcock who will be doing

11 our presentation, your Honor.  We are ready to proceed.

12          THE COURT:  All right.  Thank you, Mr. Ward.

13          MS. AINSWORTH:  Good morning, your Honor.

14 Jennifer Ainsworth on behalf of the Defendants CBS

15 Corporation, NBCUniversal Media, FOX Broadcasting

16 Company, and FOX Networks Group; and with me are lead

17 counsel Steve Lieberman --

18          MR. LIEBERMAN:  Good morning, your Honor.

19          MS. AINSWORTH:  -- Sharon Davis --

20          MS. DAVIS:  Good morning, your Honor.

21          MS. AINSWORTH:  -- Brian Rosenbloom --

22          MR. ROSENBLOOM:  Good morning.

23          MS. DAVIS:  -- and from CBS, Mr. Dan Wan.

24          MR. WAN:  Good morning, your Honor.

25          THE COURT:  Good morning.  Thank you,

1 Ms. Ainsworth.

2          MR. SMITH:  And, your Honor, for Defendant

3 Howstuffworks.com, Michael Smith, Larry Phillips, and our

4 lead counsel Mr. Jason Lo who will be presenting today.

5 We are ready to proceed, your Honor.

6          THE COURT:  All right.  Good morning.  Thank

7 you, Mr. Smith.

8          MR. ACOSTA:  Good morning, your Honor, Matt

9 Acosta for Defendant Lotzi Digital, Inc.; and we are

10 ready to proceed.

11          THE COURT:  Thank you, Mr. Acosta.

12          MR. MONTGOMERY:  Good morning, your Honor.

13 Dru Montgomery, for a partnership consisting of Adam

14 Carolla, Donny Misraje, and Sandy Ganz.  We are ready to

15 proceed, your Honor.

16          THE COURT:  Thank you, Mr. Montgomery.

17          All right.  I want to note for the record that

18 earlier this morning we provided to counsel a set of

19 preliminary constructions and I want to make sure

20 everyone understands that the purpose of those

21 constructions is not to predetermine the outcome of this

22 but rather to focus the argument and the presentation on

23 the issues that the parties have with where the court is

24 now.  These preliminary constructions represent our

25 initial conclusions based on a review of the briefs and

1  the record, and we put them out there with the belief

2  that we're willing to be talked out of any of these if

3  the parties have contrary positions.  So, I'm not trying

4  to cut off any argument but rather simply to focus it and

5  hope that it will help the court understand your

6  positions better.

7              So, with that, I'll say that any party that

8  wants to make a general presentation briefly about the

9  overall matters involving the technology, you're welcome

10  to do so.  Otherwise, I'd appreciate it if we could

11  present the arguments on a term-by-term basis.  And I'll

12  turn it over to the plaintiff first with that in mind.

13              MR. PITCOCK:  Your Honor, we don't think

14  there's any need for a technology tutorial; so, we're

15  happy to defer to discussion of the claim terms.

16              THE COURT:  Okay.  Does anyone else want to

17  take up something before we get to the terms?

18              MR. LIEBERMAN:  Your Honor, the defendants are

19  prepared to jump right into the claim terms.

20              THE COURT:  Okay.  Thank you.  In that case,

21  we'll go ahead and start.

22              Mr. Pitcock, if you want to address the first

23  term.

24              MR. PITCOCK:  So, I don't know if you want us

25  to go back and forth on each term in the order presented

1 in the sheet, your Honor.  Is that your preference?

2       THE COURT:  I do want to go back and forth on

3 each term; but if you have an order that you think would

4 be the most productive to present the terms, you're

5 welcome to take them on in any order.

6       MR. PITCOCK:  Okay.  I'm happy to go in this

7 order, your Honor.

8       THE COURT:  Okay.

9       MR. PITCOCK:  I think it would probably be

10 just as simple to go through it, and that would allow the

11 defense to go back and forth.

12       We have no problem with your construction of

13 either "episodes" or "media file."  And, so, I will turn

14 it over to the other side if they want to address those

15 terms.

16       THE COURT:  Let me ask you one general

17 question, Mr. Pitcock.

18       MR. PITCOCK:  Sure.

19       THE COURT:  I saw in the briefs the note that

20 all of these terms come from claim 31.  Are there other

21 claims that are asserted besides claim 31?

22       MR. PITCOCK:  There are, your Honor.  There

23 are three dependent claims from claim 31, but claim 31 is

24 the only independent claim.

25       THE COURT:  32 through 34, then?

1          MR. PITCOCK:  Yes, correct.

2          THE COURT:  Okay.  All right.  Thank you.

3          MR. LO:  Good morning, your Honor.  Jason Lo

4    on behalf of the defendants.  Let me begin by saying that

5    with respect to "media file," the defendants take no

6    position -- or have no problems with the proposal

7    suggested by your Honor; and, so, we have no dispute on

8    "media file."

9          With respect to the claim term "episodes," we

10   don't think that the court's construction is incorrect

11   insofar as what is there.  In other words, we don't

12   disagree that an episode is at least a program that is

13   part of a series.  I think the only dispute between the

14   parties at this point is whether the word "audio" needs

15   to be added in front of the court's proposed

16   construction.  Personal Audio takes the view that it does

17   not need to be.  We take the view that it does need to

18   be.  That's the only modification I think we are arguing

19   about is whether to add the word "audio" in front of it.

20         THE COURT:  And why would that term -- if

21   "audio" needs to be in it, why would it be in "episodes"

22   as -- you know, we addressed that in the "media file"

23   term, but I'm wondering what it is about "episodes" that

24   you think requires that the court address whether it's

25   audio or not.

1              MR. LO:  Sure.  So, let me take it back one

2      step.  One of the disputes that have been at issue in

3      terms of "episodes" was whether the phrase "episodes"

4      must be coterminous with the term "media file."  And I

5      take it from the court's construction that the court is

6      not taking the view that simply because those two terms

7      are in the same phrase, one representing the other, they

8      must necessarily mean the same thing.

9              The Federal Circuit has on multiple occasions

10     said that claim terms in the claim limitations in the

11     same claim are presumed to have different meanings.  In

12     even just everyday speaking, you know, we may say the

13     phrase "legislator representing a district."  That

14     doesn't mean that the word "legislator" and the word

15     "district" are coterminous with each other.  They can

16     represent one thing and have a different scope or a

17     different typology.  A legislator is a person; a district

18     is an area defined by geographic boundaries.  So, to

19     begin with, I -- I don't think there's any dispute now

20     between the parties and/or with the court that those two

21     terms need not mean the same thing.

22              So, then the court's question is, well, if

23     we're going to look at this from the perspective of

24     whether it is audio only, why does that come into the

25     word "episodes"?  And I think that also goes with our

1  agreement with the court's construction.  "Episodes" is

2  where in the claims the patentee defines what type of

3  program is at issue; and that's built into the court's

4  construction that episode is talking about the

5  programming that is at issue in the invention.  It

6  doesn't really appear in any -- that concept doesn't

7  really appear in any other claim term other than that

8  it's programming.  And when we look at the type of

9  programming that the patent is describing and that the

10 inventor says "Here is the programming that I am claiming

11 to be part of my invention," it is clear that he made

12 clear that the programming at issue was audio

13 programming.

14        We cited it throughout our brief, and it's

15 really undisputed that these were the statements that

16 were made.  It comes up in the Field of the Invention.

17 They say that it "relates to electronic information

18 distribution systems and more particularly to a system

19 for dynamically and interactively selecting and playing

20 particular programs from a program library."  So, that's

21 what they're talking about.  It's what kind of programs

22 are at issue.

23        And when they go on to the Summary of the

24 Invention, they say "The present invention takes the form

25 of an audio program player."  So, it goes back to the

1  word "program."  It's used synonymously with the word

2  "episode."

3         And when we get to what they describe as the

4  preferred embodiment -- and that occurs in column 4 in

5  the detailed description portion, starting at line 39,

6  talking about what the patentee calls "the illustrative

7  embodiment" -- the patentee says it "utilizes the

8  Internet to provide communications between a host

9  computer indicated generally at 101 and an audio player

10 device illustrated at 103.

11        So, throughout the patent when they're

12 defining what type of programming, they are trying to

13 define what type of programming the players are intended

14 to play, they are saying that it is audio programming;

15 and that's why we think that the "audio" limitation goes

16 in with the word "episodes."

17        We've provided to the court a copy of slides

18 that we prepared for today's hearing, and I will refer

19 the court first to page 6 of those slides.

20        THE COURT:  All right.

21        MR. LO:  In our briefing we cite to, among

22 other cases, the *AstraZeneca* case and the *Retractable*

23 *Technologies* case.  And what we've done in Slide 6 is

24 simply put side by side what the specification in

25 *AstraZeneca* says and what the specification says in the

1  '504 patent.  In *AstraZeneca* the inventors made a

2  statement that "The present invention refers to," and

3  they list six different types of salts.  Importantly and

4  relevant here, the claim language doesn't say anything

5  about what kind of salt.  It just says a "pure solid

6  state alkaline salt."  The Federal Circuit in that case

7  said, you know, "We don't disagree that in ordinary usage

8  'alkaline salt' is not limited to the six types of things

9  that they listed in the specification."  But, yet, the

10 Federal Circuit concluded that when you say that the

11 present invention refers to these six types of salts,

12 that limits your claim even if your claim language is

13 broader.

14       And here in the '504 patent, you have very

15 similar language, "The present invention takes the form

16 of an audio program player which automatically plays a

17 predetermined schedule of audio program segments"; and

18 you have similarly broad claim language.  We don't

19 dispute that if you were looking at this in a vacuum,

20 without looking at the specification, the word "episodes"

21 could have a broader meaning.

22       THE COURT:  Now, you are -- what you're really

23 after is a negative limitation, isn't it?  That it's only

24 audio.

25       MR. LO:  That is correct, your Honor.

1                THE COURT:  That it can't be more than that.

2                MR. LO:  That's correct.  And that's -- and

3    the -- what your Honor is coining as the negative

4    limitation is exactly what was at issue in *AstraZeneca*,

5    and it's exactly what was at issue in the *Retractable*

6    *Technologies* case.  The question is:  When you have claim

7    language or claim terms that in and of themselves in a

8    vacuum are broad, does the specification enlighten what

9    those broad claim terms mean and in some cases does what

10   you say in the specification limit what you can now call

11   your invention as part of your claims?  That's precisely

12   the issue that's presented in both *AstraZeneca* and in

13   *Retractable Technologies*.

14                On the next slide what we have done, your

15   Honor, is again just compared the specification language

16   that was at issue in *Retractable Technologies*.  That one

17   had to do with a syringe, and the question was does the

18   syringe have a one-piece body or a multiple-piece body.

19   And again the claim language is absolutely broad -- it

20   just says you've got to have a body -- but the court

21   looked at the summary of the invention which says "Here

22   is what the invention is, it's a tamperproof syringe and

23   the syringe features a one-piece hollow body and on the

24   basis of those statements alone, the Federal Circuit

25   found that your body -- claim limitations in the claims

1    are limited by what you said in the specification is your

2    invention.

3         Personal Audio's brief never addresses the

4    Summary of the Invention and what they call the

5    "illustrative embodiment."  I started the conversation by

6    talking about the fact that "media file" and "episodes"

7    do not have the same meaning.  That was the primary --

8    and, frankly, the only -- argument advanced by Personal

9    Audio by saying that -- in saying that the phrase

10   "episodes" should not be limited to "audio."  They never

11   addressed why the Summary of the Invention is here and

12   the import of having that language in the patent.  There

13   are no cases to the contrary that they cite talking about

14   what you do with the Summary of the Invention and the

15   invention is X type of language in the patent.

16        Just two more things briefly about the cases

17   *AstraZeneca* and about *Retractable Technologies*.  First,

18   as I mentioned earlier, your Honor, those cases clearly

19   state that if you have something in the specification

20   that defines what the invention is, that overrides the

21   broad claim language.  So, we don't start from the

22   presumption that just because the claim language does not

23   have any particular limitations built in, that somehow

24   the burden is on us to show that there should be a

25   limitation.  In both of those cases the claim language

1  was equally vague and equally broad; and the Federal

2  Circuit said, you know, if you've defined your invention

3  in the beginning of your patent as X, that's what we're

4  going to limit you to.

5          The other thing that *AstraZeneca* and

6  *Retractable Technologies* both teach is that the

7  specification overrides any argument of claim

8  differentiation.  So, in the *AstraZeneca* case, for

9  example, I think there was a broader claim that just

10 says -- the independent claim just says "salt"; and they

11 actually had a dependent claim that says "salt meaning

12 these six types of salt," which is, you know, precisely

13 what the Summary of the Invention said the invention was

14 limited to.  So, even though you have both a broad claim

15 and a narrow claim and you normally would have a claim

16 differentiation argument, the Federal Circuit in both the

17 *Retractable Technologies*, I believe in the *Verizon* case,

18 and certainly in the *AstraZeneca* case says that doesn't

19 override it.  You start from the specification.  That's

20 what *Phillips* teaches us.  If the specification says "My

21 invention is X," that's what you're limited to even if

22 you have a broader claim and a narrower claim that

23 defines a smaller subset of the broad claim language.

24          I'll address one other issue quickly which is

25 it -- the argument that Personal Audio makes in parts of

1  its brief is that in the specification, not in the

2  Summary of the Invention, not in the part where they

3  define the invention, talks about other types of files.

4  They talk about text files, they talk about advertising,

5  and things like that.  We don't dispute that.  That's

6  absolutely there.  But what we are saying is that the

7  specification is clear that when it is talking about the

8  programming, it's talking about audio programming.  And

9  when it's talking about things like text files and things

10  like images and things like advertising, those are all

11  things that perhaps in a dependent claim or something

12  like that may accompany the audio programming but they

13  are not a substitute for the audio programming nor are

14  they what the invention defines to be the programming.

15          That appears most clearly on Figure 1, which

16  is what we have up on the slide now.  We'll zoom in a

17  little bit so that the court can see that.

18          In Figure 1, which again is described as being

19  the "illustrative embodiment," you can clearly see, your

20  Honor, that what they do is they separate the audio

21  programs, being 131, and other types of data and other

22  types of files that may be stored in other databases, 132

23  being announcements and 133 being text.  So, all of those

24  things are in addition to audio programming that you may

25  choose to send over to the user.  But when the patent and

1   the claims are talking about the programming, they are

2   talking precisely and narrowly about audio programs.  And

3   that appears throughout the claim -- I'm sorry --

4   throughout the specification as well.

5            In column 6, lines 9 to 11, they say

6   "database 131," which is what we just saw was the audio

7   programming, (reading) may be accompanied by text

8   transcripts in text database 133.  So, the specification

9   distinguishes between the audio programming database and

10  the text database and says that one may accompany the

11  other but it makes a -- it draws a very clear distinction

12  between those two things and it says that they are very

13  different.

14           So, that -- those portions of the

15  specification do not override what they say as part of

16  the Summary of the Invention.  In fact, it confirms our

17  view that because they knew that there were other types

18  of programming that were possible -- in other words, you

19  could have text, you could have -- you could have images,

20  and things like that -- and they described that in other

21  aspects of the specification.  Yet, when they're talking

22  about what our invention is, they were very precise and

23  very narrow at not covering the other types of data

24  files.  That's why the word "episodes" and the word --

25  and the concept of programming in this patent should be

1    limited to audio programming.

2            And I'll stop there unless the court has any

3    other questions.

4            THE COURT:  No.  I appreciate that.

5            MR. LO:  Thank you.

6            THE COURT:  Do any of the other defendants

7    want to be heard on that term?

8            MR. LIEBERMAN:  No, your Honor.

9            THE COURT:  All right.  In that case,

10   Mr. Pitcock, you may respond.

11           MR. PITCOCK:  I guess just briefly, your

12   Honor.  Looking at the same slide that's up here, program

13   segments may likewise consist of audio, text and/or image

14   segments.  I mean, there it's clearly drawn, in the part

15   of the spec that they're citing as well as all the parts

16   that we cite, that a program can consist of all different

17   types of data.  And, in fact, the episodes are

18   represented by the media files which they don't dispute

19   can contain things other than audio.  We're not arguing

20   that you don't have to have audio.

21           And the difference between these -- our case

22   and *AstraZeneca* and some of the other things is nowhere

23   in the specification does it go on to say, "Oh, and in

24   addition to those six that we concentrated on, you could

25   also do this, that, and the other.  You could also use

1  this alkaline salt."  Instead, there was nothing in the

2  specification that would indicate that you could do

3  anything else.  Here the specification is replete with

4  references to adding things to the audio data.  And

5  that's the main difference between those cases and this

6  one.

7            THE COURT:  All right.  Thank you,

8  Mr. Pitcock.

9            MR. PITCOCK:  So, on the third one, which is

10  the "downloading" phrases, your Honor --

11            THE COURT:  Yes.

12            MR. PITCOCK:  -- we essentially don't have

13  anything to address this other than just one sort of

14  nitpicky point because we construed these together and we

15  were trying to narrow the dispute which appeared to be

16  whether the transferred data had to be stored at the

17  local device or not.  I just don't want there to be any

18  confusion in the record.

19            I mean, technically the first phrase talks

20  about "downloading a data file."  So, it doesn't have to

21  have any antecedent basis like a "the" would normally

22  imply.

23            And then the second phrase talks about

24  "downloading said concentration files"; so, "the" would

25  be appropriate.

1        We just wanted to, you know, for the record

2   note that technically in the first phrase it should be

3   "a" file and then the second phrase should be "the" file.

4        THE COURT:  All right.  Thank you,

5   Mr. Pitcock.

6        MR. LIEBERMAN:  Good morning, your Honor.

7   Steve Lieberman.

8        Unlike the "episodes" term that Mr. Lo

9   addressed, the term "downloading" has and had at the time

10  the patent application was filed a specific meaning, a

11  specific and narrow meaning.  "Downloading" at that time

12  was known to be different from "streaming."

13        If I could ask you to go to Slide 19, Brian,

14  in the book we provided to the court.

15        It was well known at the time the patent

16  application was filed that there were two very distinct

17  ways of transferring data, and I'd like to use some

18  commonly known technology at least if you have a -- or

19  have had a teenager in the house, that's a commonly known

20  technology to illustrate the point.  And on the one hand

21  you've got an iPod where people can download songs to the

22  iPod and the songs are there permanently, at least until

23  your iPod breaks and then you go in crying to the Apple

24  store trying to get your songs back.  The songs are there

25  permanently.

1            So, if, for example, you were on an airplane

2    that was not equipped with Internet service and you had

3    an iPod, you could listen to your songs.  They have been

4    downloaded and they're stored permanently, as opposed to

5    media that is streamed.  And the example there that is

6    probably best known is Netflix.  When people get a movie

7    from Netflix, the movie is streamed to them.  It's live.

8    They can watch it.  But when they're finished watching

9    it, it's gone.  Poof, it's not in their memory; it's not

10   in their device.  So, if again you were on this airplane

11   that does not have Internet service and you were trying

12   to watch a streamed movie, you could not do that because

13   the movie -- even if you had watched the movie let's say

14   the day before, if the movie were streamed to your

15   device, it is no longer on the device.  So, when you're

16   on the airplane and you say "I'd like to watch this movie

17   again," there's no movie to watch.

18            We provided, with our claim construction

19   brief, a 1997 article from Jonas which makes clear that

20   the distinction between downloaded media and streamed

21   media was well known; and the definition of those two

22   terms from the Jonas article is on Slide 19.

23            There's also a discussion in the *Real Networks*

24   *versus Streambox* case, which was not a patent case, that

25   talked about the difference between streaming and

Claim Construction Hearing

22

1  downloading.  And the court there explained in contrast

2  the two, "When an audio or video clip is 'streamed' to a

3  consumer, no trace of the clip is left on the consumer's

4  computer.  Streaming is to be contrasted with

5  'downloading,' a process by which a complete copy of an

6  audio or video clip is delivered to and stored on a

7  consumer's computer."

8          And I would note that if you're looking for

9  further confirmation as to what this term means or meant

10 at the time, Personal Audio had produced to us in this

11 case -- and we attached as Exhibit 8 to our submission --

12 Exhibit H to our submission -- a dictionary definition of

13 "download."  This was a dictionary definition that they

14 produced which reads, quote, to copy or transfer data or

15 programming into the memory of one's computer from

16 another computer, end quote.

17         So, the question is should the construction --

18 the court's construction of "download" make it clear that

19 it does not include streaming.  And that is the reason

20 that we proposed the additional language which is not

21 included in the court's tentative claim construction, the

22 language reading, quote, to the requesting client device

23 for nontemporary storage and later use.

24         The "nontemporary storage" is intended to

25 distinguish downloading from streaming.  And the reason

1  we didn't say in our construction "downloading," open

2  paren, "which doesn't include streaming" is because you

3  can't define claim terms in that way.  As your Honor

4  knows, you can't do it in that explicit negative way.

5  So, we added in language about "nontemporary storage" to

6  make clear that downloading does not include streaming.

7          THE COURT:  And "nontemporary" is not

8  negative?

9          MR. LIEBERMAN:  What I -- you're absolutely

10  right, your Honor.  We could say "permanent storage."  I

11  mean, we would be fine with that, which would eliminate

12  the negative.

13          So, let's look again as to what the word

14  "downloading" meant to the patentee; and again I want to

15  stay with the claim language.  If we go to Slide 21,

16  during the prosecution history -- and I'm going to be

17  talking about the prosecution history, with the court's

18  indulgence, in a few moments -- the patentee repeatedly

19  distinguished during the prosecution of this patent

20  "downloading" from "streaming."  And that's because there

21  were several references, including the Clanton reference

22  and the Gabbe reference, that the examiner said were

23  problematic prior art for them; and they attempted to

24  distinguish and successfully distinguished over the prior

25  art by saying "But those references involved streaming.

1  They did not involve downloading.  They did not involve

2  storing."  That was the difference.

3          Now, Personal Audio makes an argument that if

4  you adopted our proposed construction, that would render

5  superfluous the "storage" language in the nonasserted

6  independent claims, claims 1, 8, and 23.  It's sort of a

7  claim differentiation argument, but they didn't

8  characterize it that way.  But I want to address it both

9  the way they phrased it and in the context of claim

10  differentiation.  If your Honor were to look at claim 1

11  or claim 8 or claim 23, the three nonasserted independent

12  claims, in each case when the word "storing" is used in

13  those claims, it is used specifically to say where the

14  information is stored; that is, it is stored "in said

15  digital memory."  So, Slide 22 has the language from

16  claim 1.  Each time the word "storing" is used, the

17  phrase "in said digital memory" follows that.

18          On Slide 23, it's the same thing for claim 13.

19  After the word "storing" is used, the phrase "in said

20  digital memory" occurs.

21          And then on slide -- and then the same thing

22  is true with respect to claim 23, your Honor.

23          That is what the -- what claims 1, 8, and 23

24  are telling you when it uses the word "storage" is it's

25  telling you where this information is stored.  That's

1  important because there are a number of locations that

2  the patent specification identifies where data can be

3  stored.  So, for example, on Slide 24 we give two

4  examples from the patent specification where information

5  can be stored.  One is in "a removable media cartridge,"

6  and the other is in "an optical disc cartridge."  But

7  claims 1, 8, and 23 were limited to the storage "in the

8  said digital memory."

9          So, the argument that saying that downloading

10  requires as part of it storage in nontemporary or, if you

11  wish to eliminate the negative, permanent memory does

12  nothing to render superfluous the "storage" language in

13  the other claims which are not being asserted.

14          I'd now like to direct -- I don't know if the

15  court has questions about the claim language.  I wanted

16  to move into the specification, if that's --

17          THE COURT:  That's fine.

18          MR. LIEBERMAN:  -- convenient for the court.

19          So, turning to Slide 25, the specification in

20  this case makes very clear that the invention was

21  "providing a subscriber with the ability to load audio

22  programs into an audio player and then play those audio

23  programs upon request at a later time."  There is

24  repeated reference to local -- "the local mass storage

25  unit to enable the user to easily move from program

1  segment to program segment," et cetera.  And we have

2  something to play for the court that we learned about

3  yesterday.

4          On Tuesday of this week, your Honor, on

5  April 22nd, a Canadian broadcasting company broadcast an

6  interview with the first named inventor Mr. Logan.

7  Mr. Logan is not only the first named inventor; he has

8  been involved with Personal Audio throughout this entire

9  process.  He's a major -- at least his family trust is a

10 major co-owner.  And he described exactly what his

11 invention was.  He was asked the question in the

12 interview, "What was the original idea that you came up

13 with?"  And we have a 1-minute-and-26-second clip we'd

14 like to play from that interview.  Then I'm going to show

15 how what Mr. Logan is describing in 1 minute and 26

16 seconds is exactly what the specification shows that the

17 Personal Audio invention -- invention was.  If I might

18 play that, your Honor.

19          THE COURT:  Is that something that's been

20 disclosed?

21          MR. LIEBERMAN:  We just got it yesterday, your

22 Honor.  We don't have a transcript.  We can provide the

23 URL to the plaintiff.  I had my secretary last night type

24 up a transcript of this minute and 26 seconds.  I haven't

25 proofed it yet.  I can submit it to both parties -- I can

1  submit it to the court and the plaintiff tomorrow.

2          THE COURT:  Mr. Pitcock?

3          MR. PITCOCK:  I would object to it both as

4  being very late, not clearly relevant.  I don't know --

5  he's got several patents.  I don't know if he's referring

6  to this one or not.  I haven't seen the transcript yet.

7  And I would also say this is extrinsic evidence of sort

8  of the highest order, you know, to take a hearsay

9  statement and a radio interview, a nontechnical thing,

10 and try to introduce it as evidence of claim

11 construction.

12         THE COURT:  Well, Mr. Lieberman, I'm going to

13 sustain the objection of the plaintiff to playing it at

14 this time.  You can meet and confer with them about it

15 and if you don't get an agreement, you can file a motion

16 to supplement the record and I'll take up the issues on

17 it.  But I agree that with them not having any way of

18 knowing the origin of this and the authenticity of it

19 and -- anyway, I don't think it's proper to play it at

20 this time.  I understand completely that you just got it

21 and I don't hold it against you that it's being offered

22 at this time, but I will sustain the objection.

23         MR. LIEBERMAN:  Okay.  I do note, your Honor,

24 this did appear only on Tuesday.  It was only published

25 on Tuesday.  We will comply with your Honor's

Claim Construction Hearing

28

1   instructions.

2         Should the court grant the motion for the

3   supplementation of the record, we would ask the court to

4   look at how Mr. Logan described his own invention and

5   compare it to what we have said the specification says

6   about the invention.  They are literally identical.

7         THE COURT:  I am pretty sure that you would

8   not want a general practice to be that we hear from the

9   inventor as to what he intended the scope of his

10  invention to be at *Markman* hearings generally, but I will

11  consider your --

12        MR. LIEBERMAN:  I understand the point, your

13  Honor; and I understand that inventor testimony is less

14  important in determining what the patent claims mean than

15  the specification.  So, let me move directly to the

16  specification.

17        THE COURT:  Okay.

18        MR. LIEBERMAN:  If we look at Figure 2 in the

19  specification, Slide 27, Figure 2 makes clear exactly

20  what --

21        Let's go back one page, Brian -- sorry -- to

22  Slide 26.

23        The second bullet point on Slide 26 uses

24  the -- quotes the specification using the words "the

25  invention," (reading) in accordance with the invention,

1   it is desirable to download the equivalent of a full

2   session's programming in addition to the current

3   schedules session programs so that, in the event of a

4   temporary communication link or host failure, programming

5   will nonetheless be available.

6          There are a multitude of examples on the pages

7   in here -- all these specification cites were in our

8   brief -- making clear that the purported invention was to

9   allow a user to download onto his device materials so

10  that the user when in his car or some other place could

11  then play back the programs that he or she wished to

12  hear.  That required downloading as that term was known

13  at the time, which meant inclusion in nontemporary or

14  permanent storage.  It did not mean streaming because if

15  the material was steamed, it would be immediately gone

16  after the streaming.  It had to be stored.  Otherwise, it

17  could not be used in accordance with the invention.  So,

18  if you look at Figure 2, Figure 2 sets out the process.

19         The second box on Figure 2 is downloading

20  programming and catalog updates.  The next box down is

21  editing the download; that is, the specification talks

22  about being able to -- let's say the audio programs or

23  the songs that somebody wished to listen to in the order

24  that person wished to listen to them.  And then the next

25  box down is playback sessions.  You can only play back

1  something that's been downloaded.  You can't play back

2  something that's been streamed because after it's been

3  streamed, it's gone.  It's not there.

4          The specification also teaches that an

5  important part of the invention was that the request from

6  the user could come at any time.  Specific examples given

7  in the patent specification were, for example, the one I

8  just gave about when you were in an automobile.  So, if

9  you look at column 7, line 58, it talks about (reading)

10 to facilitate the use of the system in an automobile, the

11 files are downloaded from the host.  They may be stored

12 on a replaceable media and then played.  They had to be

13 stored, or it wasn't consistent with the described

14 purposes of the invention.

15         Now, there are 97 different places in the

16 specification in which the word "download" is used.  That

17 is before we get to the claims.  The plaintiff has

18 referred to only two parts of that specification -- and I

19 want to address both of them -- to argue that something

20 in the specification says that what the invention is

21 meant to encompass is something other than downloading

22 when you have nontemporary or permanent storage.

23         The first -- and this is on Slide 30 -- is at

24 column 5, lines 45 to 53 of the patent.  And the language

25 that Personal Audio cites is this language "The player

Claim Construction Hearing

1    103 further includes a conventional high speed data modum

2    for receiving (downloading) the program information from

3    the remote server and for transmitting (uploading)."

4    They argue from that that the specification has defined

5    "downloading" to mean "receiving."

6             If you look closely at the language that

7    immediately follows that sentence in the specification, I

8    believe it's clear that the word "receiving" and on the

9    next line the word "transmitting" simply talks about the

10   direction that data is going; that is, the player

11   receives data from a server in response to the

12   transmission -- I'm sorry -- in response -- and the

13   uploading is the transmission of the program selections.

14   It's talking about the direction.  It's not a definition.

15            Now, we know this is true because the

16   receiving is done by -- "for receiving (downloading) the

17   program information from the remote server 101."  Just a

18   few lines down the specification talks about (reading)

19   the host server 101 storing and maintaining a plurality

20   of data files including a program data library.  So, this

21   portion of the specification again just talks about the

22   definition of the direction the download, the

23   information, is going from the server to the user.

24            The other portion of the specification, your

25   Honor, that Personal Audio cited to, and the only other

1  portion of the specification, was on the bottom of

2  column 14 and the top of column 15; and it has to do with

3  the reference to what happens when a user wishes to

4  download and play at the same time.  So, this is

5  column 14, line 63; and it goes over to the next page.

6         And as the specification says, if we start at

7  the beginning of that paragraph, at line 63, (reading)

8  when a communications pathway such as the Internet is

9  available to connect the player.  So, a person is in a

10  hotel lobby and Internet is available.  And then No. 2,

11  but he needs to download a needed but locally unavailable

12  segment; that is, he wishes to get something and he's got

13  Internet service.  What happens?  The downloading and the

14  playing may proceed concurrently; that is, he can

15  download and while the information is being downloaded,

16  he can also play.

17         Now, this is again something that I understand

18  teenagers are very familiar with.  When you buy a movie

19  from iTunes, for example, you download the movie, you pay

20  your $15 for the movie, but particularly if it's a high

21  definition movie, it takes awhile to download.  There is

22  an option that is then made available to people "would

23  you like to watch this while it is being downloaded"; and

24  if you click "yes," you can watch it.  And that's the

25  purpose of the memory buffer.  It's to allow you to watch

1    it while it's being downloaded.

2           But the point is these two words are separate,

3    "downloading" and "playing."  The downloading and playing

4    both occur at the same time.  The buffer helps with the

5    playing; but the downloading, it goes into the permanent

6    storage or the nontemporary storage.  So, that's the only

7    other place that Personal Audio cites in the

8    specification in support of their proposed construction.

9           And by the way, I will mention that they

10   didn't make this argument or cite the relevant portion of

11   the specification in the relevant brief.  It was only

12   made in the reply brief.  And I know that's something

13   that's disfavored in the Federal Circuit.  But their

14   argument is substantively incorrect because the phrase is

15   "downloading and playing."

16          So, what sort of expert testimony, if any, is

17   there in this case about what the word "downloading"

18   means?  In the prosecution history, your Honor, there was

19   distinguishment of certain of this -- the streaming prior

20   art.  We put in a declaration from Dr. Adam Porter, and

21   the plaintiff deposed Dr. Porter.  In the Porter

22   declaration, Dr. Porter explained that when the reference

23   was made -- he explained what "streaming" meant in the

24   context of the prosecution history and that when you

25   streamed something, it did not go into permanent memory;

1 that is, it would be transmitted and then it would be

2 gone after it was watched.

3          Now, when plaintiff deposed Dr. Porter, they

4 asked him a question.  They asked him a question about

5 the meaning of "streaming" versus "downloading."

6 Dr. Porter's answer is at page 35 of the slides.

7          MR. PITCOCK:  Objection, your Honor.  Object.

8 This testimony that Mr. Lieberman is trying to read into

9 the record now was not contained in Mr. Porter's report;

10 and if you look at his deposition, I specifically asked

11 him on page 88, line 22, "Are you planning on offering

12 any opinions on the meaning of the term 'downloading' at

13 the claim construction hearing?"

14          "ANSWER:  I haven't been asked to do anything

15 like that.

16          "QUESTION:  Have you been asked to give an

17 opinion on the meaning of any of the terms of the

18 patent-in-suit?

19          "ANSWER:  I have not.

20          "QUESTION:  And you haven't reviewed the

21 specification of the patent-in-suit in order to try to

22 determine what you think the meanings of those terms are;

23 is that fair?

24          "ANSWER:  I have not done that.  I have not

25 been asked to do that."

35

1            So, the testimony that Mr. Lieberman is

2    seeking to elicit was solely drawn because this witness

3    put in what appeared to be a disclaimer argument that the

4    ordinary meaning of "downloading" which wouldn't require,

5    you know, storing in memory was somehow disclaimed during

6    the prosecution history.  He never gave a report and he's

7    never given an opinion nor has he looked at any of the

8    relevant materials in order to offer his opinion on the

9    construction of this term and I object to it being

10   offered.

11            THE COURT:  Mr. Pitcock, explain to me how

12   this excerpt is different from the previous slide in

13   terms of what Dr. Porter is saying.  I --

14            MR. PITCOCK:  Because what he is trying to

15   introduce, your Honor, is Dr. Porter's throwaway

16   testimony at his deposition on the ordinary meaning of

17   "downloading" because they didn't elicit that in his

18   report.  In his report all he says is "I believe there

19   was a disclaimer of the meaning of 'downloading' that

20   occurred in the prosecution history because it was

21   distinguished from 'streaming.'"  Now, obviously we don't

22   agree with that argument.  You know, what was being

23   distinguished from "streaming" was storing the data on a

24   digital memory.  But he never offers an opinion in his

25   report, never gives the basis for an opinion in his

1  report on what one of ordinary skill in the art would

2  have thought was the ordinary meaning of "downloading" at

3  the time this patent was filed.

4          THE COURT:  All right.  I'm going to overrule

5  the objection; but I will state that I am not going to

6  consider this testimony as expanding on the opinions

7  expressed in his report, that I'm going to limit the

8  effect of his testimony to the opinions he expressed in

9  his report.  And if this is simply an explanation of

10  those opinions, then it will be considered as such.

11          MR. LIEBERMAN:  We believe it is, your Honor.

12          THE COURT:  All right.  Go ahead.

13          MR. LIEBERMAN:  We will note that there was --

14  although plaintiff had Dr. Porter's declaration for many

15  weeks before their claim construction brief was due, they

16  did not provide any expert testimony on this issue.  So,

17  Dr. Porter's testimony is unrebutted by any expert.  It's

18  also completely consistent with the file history, the

19  specification, the Jonas article, and the opinion that we

20  cited to your Honor discussing the difference between

21  "streaming" and "downloading."

22          Turning to the prosecution history on

23  Slide 36.  And we're not making a disclaimer argument.

24  The argument that we're making is that the prosecution

25  history buttresses the plain meaning -- the explanation

1  as to what the plain meaning of the word "downloading"

2  is. That is, we're not saying that plaintiff is giving

3  up some portion of what the ordinary meaning of the word

4  "downloading" is through the prosecution history

5  although, you know, if the court were to say that

6  "downloading" really did have such a broad meaning as the

7  plain and ordinary meaning -- and I don't believe there's

8  any evidence to support that; but if the court were to

9  believe that to be the case, I think this would be a

10  disclaimer. But our view is that all of the evidence is

11  that downloading is different from streaming and it has

12  that component of storage in nontemporary memory. And

13  this is confirmed by seven different instances in the

14  prosecution history where the patentee specifically

15  distinguished its invention, the downloading, from the

16  prior art references on the basis that they involved

17  streaming.

18         Now, Personal Audio -- not only did Personal

19  Audio do this seven times in three different submissions

20  to the patent office, three times -- and this is on

21  Slide 38 -- they told the examiner that claim 31 was

22  allowable over the prior art showing streaming, quote,

23  for the same reasons advanced with respect to claims 1

24  and 8. They said the exact same reasons apply with

25  respect to those other claims as apply with respect to

1  claim 31.  They said it three times, and the three

2  statements are on Slide 38 that we provided to your

3  Honor.

4          The response from Personal Audio was this

5  (reading) is boilerplate language designed to move the

6  prosecution case forward and it should be disregarded.  I

7  think your Honor is certainly more familiar than I with

8  the consequences of making statements during patent

9  prosecution; and we would ask the court to hold Personal

10  Audio to what it said about the meaning of "downloading"

11  which is, we believe, exactly what they were doing.

12          If your Honor has questions, I'd be happy to

13  answer them.

14          THE COURT:  No.  I appreciate that.  I'd like

15  to hear the response from the plaintiff.

16          MR. LIEBERMAN:  Thank you, your Honor.

17          THE COURT:  Thank you, Mr. Lieberman.

18          MR. PITCOCK:  So, just in response, it should

19  be noted that we introduced the testimony of a

20  third-party prior art witness that was actually

21  subpoenaed by the defendants, who testified that

22  streaming was downloading, that that was the meaning to

23  one of skill in the art at the time and now.  It's a term

24  that if you look at this portion of the specification

25  which Mr. Lieberman glosses over and tries to argue that

1  for some reason we're not allowed to cite different parts

2  of the patent specification in rebuttal to his argument

3  that the specification always teaches, you know,

4  permanent storing of data, this is a place where it talks

5  about a memory buffer, which is temporary storage, and it

6  refers to it as "downloaded information."  So, it's

7  specifically using the term "downloaded" to mean

8  "transferred" as the patentee does in other places in the

9  specification which Mr. Lieberman cites.

10          And I guess just one other point.  I mean, he

11  tries to draw a distinction between -- and he does it for

12  the first time here today.  I don't think it was in any

13  of his briefing but he tries to distinguish, you know,

14  optical cartridges and other things from digital memory

15  and all of those would be digital memory.  I mean, that's

16  not -- that's not a distinction.  That doesn't get you

17  around the claims differentiation problem.

18          Again, this is where the patentee explicitly

19  defines "downloading" as "receiving data."  It says

20  nothing about storing it.

21          And the prosecution history actually doesn't

22  support their argument.  Their argument is that we use

23  downloading -- we argue that the term "downloading" meant

24  "storing."  But we actually didn't.  All seven of those

25  times that are in the prosecution history we are

1   distinguishing "storage" from "streaming."  We are not

2   distinguishing "downloading" from "streaming."  And, in

3   fact, there would be no reason to make these arguments

4   about storage which only appears in claim 1 -- there

5   would be no reason to make those arguments about storage

6   if "downloading" meant you had to store it at the local

7   device anyway.  There would be no -- this argument would

8   make no sense if "downloading" meant you had to store it

9   anyway.  And nowhere is "downloading" distinguished --

10   so, every single time it is not "downloading" that is

11   being distinguished from -- that's not the term that's

12   being distinguished.  It's "stored."

13        You know, Clanton and these prior art

14   references don't teach storing in the memory; they don't

15   teach storing.  Gabbe does not store.

16        (Reading) Clanton's set box streams media from

17   the server and does not store.

18        (Reading) Gabbe's table of contents is

19   streamed to the workstation but not stored.

20        That storage argument is just not present with

21   respect to claim 31.  And if you look at the prosecution

22   history, which their -- their expert did not, you'll

23   realize that that's just not a limitation in claim 31.

24   We know where it requires storage of the downloaded

25   information, at a client device, which makes perfect

1  sense since this is a server side apparatus claim.  You

2  know, trying to dictate what would happen at the local

3  device would make no sense.

4          THE COURT:  All right.  Thank you,

5  Mr. Pitcock.

6          MR. LIEBERMAN:  Just very briefly, your Honor.

7  The argument regarding the other places referred to in

8  the specification where data can be stored is in our

9  claim construction brief at pages 15 and 16; and we would

10  simply refer your Honor, with respect to the prosecution

11  history, to those three amendments.  We think the

12  amendments are very -- the three patent office responses

13  are very clear on their face.  The responses are

14  distinguishing the streaming prior art from the claimed

15  invention which involves downloading and downloading

16  requires storage.

17          And again with respect to the buffer argument,

18  column 14, the language of the specification is

19  "downloading and playing."  The buffer is used for the

20  playing.  That's what buffers are used for.  It's not --

21  it has nothing to do with the downloading itself.  The

22  downloading requires storage in nontemporary or permanent

23  memory.

24          THE COURT:  All right.  Thank you.

25          MR. LIEBERMAN:  Thank you, your Honor.

42

1              THE COURT:  I understand the arguments.

2              MR. PITCOCK:  Subject to any argument by the

3    defendants, we agree with the construction of "URL" and

4    believe that "storage location" has a plain and ordinary

5    meaning and don't have anything to add other than that

6    would appear to be the ordinary meaning of those terms to

7    one of skill in the art as we set forth in the brief and

8    as admitted by the defendants' expert at his deposition.

9              THE COURT:  All right.  Thank you,

10   Mr. Pitcock.

11             MR. LO:  Your Honor, Jason Lo on behalf of

12   defendants.

13             We start this discussion with something that I

14   think we agree on both sides of the podium which is that

15   the term "URL" is short for "universal resource locator."

16   Just three words.  And in those three words alone I think

17   a layperson would understand that there's something

18   standardized or universal about this locator, that it's

19   supposed to help you locate something, and that

20   "something" is some kind of a resource.  So, everybody

21   agrees what "URL" stands for and that it's got some vague

22   meaning even to laypersons not familiar with the

23   intricacies of the Internet; and, yet, both sides cited

24   construction of this term.

25             We've not really heard Personal Audio

1    articulate what it is that they sought to clarify from

2    the term "universal resource locator."  From the

3    defendants' perspective, we have a pretty modest

4    proposal.  We think that if we're going to construe this

5    term "URL," we ought to try to at least answer two basic

6    questions.  No. 1, what is the resource that you are

7    attempting to locate; and, No. 2, what is the address or

8    what is it that is supposed to help you locate that

9    particular resource?  Any construction, if we're going to

10   try to expand and explain what the term "URL" means,

11   should try to answer one or both of those questions.

12          With respect to the first question, in other

13   words, what is the resource that is being sought to

14   locate it, we don't have a problem with the court's

15   construction from the abstract.  Obviously "URL" stands

16   for "universal resource locator," and it's supposed to

17   help you locate some kind of resource.  But I think we

18   can help define that a little bit more clearly, and I

19   don't think this part is in dispute.

20          In the claim language in which "URL" is being

21   used, it's not just any resource.  I don't dispute that

22   in other context that URL can be used to locate other

23   types of resources; but when we're talking about this

24   patent and these claims, the only types of resource that

25   are being sought to be located are files.  They're data

Claim Construction Hearing

44

1  files, they're media files, they're compilation files --

2  media files, compilation files and media files.

3          We've listed in Slide 45 -- this is just all

4  taken from claim 31 -- the only instances in which "URL"

5  is used in claim 31, and I think it's consistent with the

6  only usage of the term "URL" in the specification.  So,

7  one modification we have proposed for the court's

8  proposed construction is to replace the word "resource"

9  with "file."

10          THE COURT:  Mr. Lo, since the claim language

11  itself in every place where the term "URL" is used

12  specifies what the resource is and it's different each

13  place it's used, why should we attempt to include that in

14  the definition of "URL"?

15          MR. LO:  Because that is precisely the dispute

16  between the parties is -- as I understood Personal

17  Audio's position in the papers -- I know it's not

18  explicit -- I don't think they necessarily agree that a

19  URL only has to refer to a file.  That is the

20  disagreement.  We believe that the claims make clear that

21  anytime when you're using URL it's used to identify a

22  file.  We don't purport to inject into our construction

23  the particular type of file.  So, all we're saying is

24  it's got to be a generic file and then we'll leave it to

25  the claim limitations to say whether it's a data file, a

1   media file, or a compilation file, but it should be a

2   file and --

3              THE COURT:  Well, tell me what your fear is

4   that they will argue a URL applies to if not the language

5   set out in the claim itself.

6              MR. LO:  Sure.  And that comes from their very

7   proposed construction itself.  Their proposed

8   construction.

9              Would you go back to just 44, Brian?

10             Their proposed construction says "resource"

11  and in parentheses "as a document or website."  So, one

12  thing that I think they're trying to put in is "website"

13  or "document" and I don't know if that's the same thing

14  as a file or whether that's what they intended, but

15  they're clearly deviating away from the claim language in

16  their proposed construction.  And I don't know the reason

17  for it, but I can only suspect that there is a

18  infringement or invalidity rationale for deviating from

19  the claim language.

20             THE COURT:  All right.  Well, I'll address

21  that with them in a moment.

22             MR. LO:  Okay.  So, that's the first question

23  which is "what kind of resource are you trying to

24  locate"; and we think that the claim language is very

25  clear.  It says "file."  And we have different types of

46

1  files, which I don't dispute what your Honor is saying;

2  and we don't purport to try to define what particular

3  type of file it is.

4          Then the second question that we think ought

5  to be answered if we're going to try to improve upon

6  "URL" is how are we going to locate that particular

7  resource, what does the address look like?  And again we

8  are not trying to be exclusive in our definition, but we

9  are saying -- and I don't think there's any disagreement

10  in the patent specification or in the extrinsic evidence

11  shown by Personal Audio -- that all files have some kind

12  of a file name and a path associated with it.  If you're

13  going to store it, whether it's on the court's computer

14  system, it's on my computer, it's on the Amazon or the

15  IBM website, every file in the world that is stored has

16  some of kind of a file name and a path associated with

17  it; and the address should include at least those two

18  basic things that are required to locate a file.  It may

19  have other things.  You could have, for example, in

20  addition to that, the size of the file, the date of the

21  file, and things like that but we're not trying to be

22  exclusive about how you can locate it, but we're just

23  saying that as a baseline indicator, if we're going to

24  tell the jury and explain to the jury what a URL is, we

25  ought to just tell them here's the type of resource that

1   are at issue and here are the basic types -- minimal

2   types of information that one needs in order to locate a

3   particular specific file.

4           THE COURT:  Okay.  Tell me again what your

5   concern is that the jury might conclude if we don't tell

6   them how URLs work.

7           MR. LO:  Sure.  And that comes up also in

8   their construction.  So, for example, one thing that they

9   said was you could have a web page as a URL and if we

10  looked at, for example, the court's website, we'll see

11  that, you know, there are numerous pages and within them

12  you may have files that are accessible -- a standing

13  order of some kind, the court's calendar or another --

14  and if you are simply saying that a website to -- a

15  website location -- for example, just to the

16  ed.texas.uscourts.com website -- that doesn't really tell

17  me where a particular file is.  What you need to do is to

18  be more specific.

19          So, what we are trying to do is drill down so

20  that we prevent an instance where what they are claiming

21  is something that is very top level, very vague and

22  saying that, well, somewhere if you then navigate through

23  those pages, you'll be able to find a particular file.

24  That's not what the claims are saying.  That's not what

25  URL is meant to be.  A URL is supposed to be a specific

1 address for a specific, in this instance, file; and, so,

2 you have to tell us where we can find that specific file.

3          THE COURT:  All right.  I understand your

4 argument.

5          MR. LO:  Thank you.

6          MR. PITCOCK:  So, just to address this, I

7 mean, as specifically as I can, a URL can be an address

8 for a file without specifying within the language of the

9 URL the file name or the path name.  This was known to

10 their expert.  He admitted it at his deposition.  It's in

11 their -- this is an excerpt from one of the prior art

12 books that they have provided to us; and it specifically

13 says, as is well known, that "Sometimes the URL won't

14 have a filename at the end" and "That's not necessarily a

15 mistake" because if you're going to a document on a

16 website, you can use a URL without specifying the file

17 name.  There's still a file.  It's still an html -- for

18 example, the court's website, it's some markup language

19 text document that's being copied and transferred to the

20 local server -- or the local computer from a server but

21 it is still copying a file and that URL specifies the

22 file that's going to be sent without using a file or path

23 name.

24          THE COURT:  Okay.  And what about the issue of

25 whether it is, under these claim terms, limited to items

49

1   other than files?

2            MR. PITCOCK:  Well, I think it's pretty clear

3   from the -- I mean, "URL" doesn't mean "file" or you

4   wouldn't have to specify in the claim that it was to a

5   file.  I don't understand why there would be any

6   confusion about the URL or what it has to point to just

7   because it refers to a file.

8            THE COURT:  Well --

9            MR. PITCOCK:  I mean, what they seem to be

10  incorporating is this notion that if you've got a URL for

11  a file, it has to have a file name or path name; but it

12  doesn't.  You can have a URL that doesn't specify a file

13  name or a path name.

14            THE COURT:  In this claim, claim 31, are there

15  places where you believe "URL" is used not referring to a

16  file but to something else?

17            MR. PITCOCK:  Well, I don't think the term in

18  general refers to a file; but every time that the

19  claim -- I would admit that every time claim 31 talks

20  about a URL, I believe it's in reference to some kind of

21  file.

22            THE COURT:  Okay.  So, it's -- you don't have

23  any intention of arguing that as used in claim 31 it

24  is -- that the resource that's at issue is something

25  other than a file.

1            MR. PITCOCK:  I would agree with that, your

2   Honor.

3            THE COURT:  Okay.  All right.  Let me just

4   hear back from Mr. Lo on this question of where in the

5   record we have something that would require a path name

6   for a specific file with each URL.

7            MR. LO:  Sure, your Honor.  And preliminarily

8   I think I can answer your Honor's question with reference

9   to this slide that is up on the page right now.  And this

10  is precisely the issue I was concerned about in terms of

11  not saying that you have to have a file or path name in

12  order to identify the location of a specific document.

13  In this statement it says (reading) some URLs, when

14  you're not trying to locate a particular file or

15  document, may not have a file name at the end.  And in

16  this case it just says http://ziff.com.  And the next

17  sentence makes that very clear.  "This specifies the

18  host, but no directory or document."  In other words,

19  it's not telling you where a directory or document is

20  located.  It's simply telling you that that is the place

21  where it is hosted.  And, so, that is exactly why we

22  think it's important to make clear, if we're going to

23  improve upon the ordinary meaning of "URL," to say what

24  kind of file it is and to give some kind of indicia in

25  terms of where it can be located.

1          Now, in terms of your Honor's question about

2   where in the record we can have some indication that

3   there has to be a path or file name, I think the only

4   place that "URL" comes up in the specification is

5   column 18, line 55; and I think Mr. Acosta will talk a

6   little bit more about this a little bit later as well.

7          But basically what they are defining in the

8   specification is that the URL field "specifies the

9   location of the file containing the program segment in

10  the file storage facility indicated at 304" and then it

11  goes on in parentheses to say (reading) for example, it's

12  located on an FTP server 125 in Figure 1 but other

13  storage areas that may be accessible location on the

14  Internet.  So, with the example of the FTP server and

15  with the specific reference of specifying the location of

16  the file, we don't think that there's any dispute that

17  every file location can be described by at least the file

18  name and the path location.

19          Again, as I said earlier, your Honor, it is

20  not our intention to say that if you go beyond that and

21  have additional description, that that somehow takes you

22  outside the realm of URL.  All we are trying to do is

23  define the minimum requirements necessary to locate the

24  file.

25          THE COURT:  Doesn't claim 31 itself tell you

1    what the URL has to identify?

2            MR. LO:  It does, and it doesn't.  It says

3    that you need to identify a specific file for download,

4    but I think what is in dispute here is what is an address

5    and what constitutes an address in the -- or locator, to

6    use the URL terminology.  And that's what the parties are

7    trying to improve upon in terms of the vague language of

8    just saying "universal resource locator."  In other

9    words, what does one need to locate a particular file on

10   the Internet for, as claim 31 says, downloading a

11   particular file.

12           THE COURT:  All right.

13           MR. LO:  Thank you, your Honor.

14           THE COURT:  Thank you, Mr. Lo.

15           MR. PITCOCK:  You may have heard enough on --

16   I'm sorry, your Honor.

17           THE COURT:  Go ahead.

18           MR. PITCOCK:  You may have heard enough on

19   "URL," but I just wanted to point out one thing about

20   this part of the specification.  Here, although it gives

21   an example of a preferred embodiment using a field to

22   specify the location, it goes on to say that you can

23   store it on web server -- so, that would be a file on a

24   web server, presumably including a website -- or at any

25   other accessible location on the Internet.  And

53

1 they've -- there's nothing that indicates that you have

2 to have a file name or a path name for a URL for a file

3 at any accessible location on the Internet.  It's just

4 not true.  In fact, documents -- you know, text

5 documents -- when you go to a website in your browser, a

6 text document, a file, you're specifying what file is

7 being sent to your browser to be rendered on your

8 computer.  And all of this to some degree is a little

9 irrelevant anyway because the only question we're here to

10 answer is what does "URL" mean to one of ordinary skill

11 in the art, you know, in the context of this patent; and

12 there's nothing that indicates that it would have to have

13 a file or a path name.

14          THE COURT:  All right.  Thank you,

15 Mr. Pitcock.

16          Do you want to address "storage location"?

17          MR. PITCOCK:  Yes, your Honor.

18          Well -- I apologize.  I'll just leave this up

19 and briefly note that, you know, again this is nothing

20 more than an attempt to read a preferred embodiment into

21 broader claim language.  There's a preferred embodiment

22 that talks about having program segments in a storage

23 facility but then this same part of the specification,

24 which was the only part that I believe they cite to, goes

25 on to say you can store it anywhere, presumably not at a

54

1 storage facility, and that the ordinary meaning of the

2 term would mean any place where, you know, you could

3 locate data.

4             THE COURT:  All right.

5             MR. ACOSTA:  Good morning, your Honor, Matt

6 Acosta for defendants.

7             First of all, I'd like to spend a little bit,

8 if you will, defining the dispute here.  I think it's

9 important and I think while this dispute is related to

10 this dispute you just heard concerning "URL," I think

11 there's a specific distinction but at the same time I

12 think because "URL" and "storage location" appear

13 together in the same claim limitations in claim 31, I

14 think looking at the disputes together and also what

15 might be argued later to a jury will actually give the

16 court some indication of why these claims need to be

17 construed, and specifically "storage location," other

18 than just the plain and ordinary meaning.

19             So, I -- first of all, I'd like to point out

20 this -- plaintiff's slide is up here -- we take dispute

21 with the interpretation just generally of this portion of

22 the specification and really I'll explain in a second

23 that it's the only part of the specification that really

24 gives any color to both "URL" and the idea of a "storage

25 location" and I really don't think that there's a dispute

1  of that -- that this is the portion of the specification

2  we're looking at between the plaintiff and defendants.

3  Both of our briefing point to this particular portion.

4          But if you'll notice, it says, "The

5  Program_Segment record's URL field specifies the location

6  of the file containing the program segment in the file

7  storage facility indicated at 304 in Figure 4."  And I

8  will show that to the court in a second.  But then in

9  parentheses it doesn't say "other than the storage

10  facility" -- there could be other things other than a

11  storage facility where the URL points to.  It doesn't say

12  that at all.  It says, (reading) for example -- so, we're

13  talking about a storage facility -- (reading) for

14  example, that storage facility could include an FTP

15  server, it could include a web server, or -- and I'd like

16  to direct the court -- any other accessible location on

17  the Internet.  It must be accessible.  And I think those

18  words were skipped over and also I think the idea that

19  these are alternatives to a storage facility rather than

20  examples of a storage facility and we take issue with

21  that interpretation of that language.  So, with that,

22  we'll move to our slides; and I'd like to make it clear

23  for the court.

24          I think we're on 51.

25          MR. LO:  That was ours.

Claim Construction Hearing

56

 1            MR. ACOSTA:  That was ours.  Okay.

 2            We'd first like to make clear that the

 3    disputes here -- and defendants are not arguing and have

 4    never argued that "storage location" needs to be a

 5    physical location, it needs to be a particular storage

 6    facility, such as it must be an FTP server, it must be a

 7    file server.  We're not arguing that.  We think that the

 8    language that you just saw in the claim is clear that it

 9    could be an FTP server, it could be a file server, it

10    could be any other accessible location on the Internet.

11    So, that's not what we're arguing.

12            What we're primarily arguing is that because

13    of its location in the claims and because of the way that

14    the specification reads -- and that language that you saw

15    in the specification reads, you have to define for the

16    jury that what we're talking about is a location in --

17    and "in" is important -- a storage facility, not just the

18    storage facility itself.  Because, for instance, "storage

19    location" taken alone -- if we were to bring more and

20    more boxes into this courtroom, you could interpret this

21    courtroom as being a storage facility and obviously

22    that's an extreme example, but you take that to the way

23    the modern Internet works and what we'll be arguing in

24    this case later on -- and I have an example later on to

25    show why that is relevant and what the possibilities

1   would be.

2            Let's go on to the next slide here.

3            So, the term "storage facility" only occurs in

4   three places in claim 31 in the entire patent.

5            THE COURT:  The term "storage location"?

6            MR. ACOSTA:  Excuse me.  "Storage location"

7   only occurs in three locations in the entire patent, and

8   these are the three locations.  The first one being

9   "stored at a storage location specified by a unique

10  episode URL," the second being "storage servers at a

11  storage location identified by a predetermined URL," and

12  the third being "URLs specifying the storage locations."

13  So, as the court can see, URLs and storage locations are

14  interrelated in the patent.  But I'd also like to point

15  out that a storage location has to do a couple of things

16  based on just this claim language.  It must store media

17  files and compilation files, and it also must be

18  identifiable by URL.

19           Moving on, we see that language provides a

20  little color and is the only place in the specification

21  that really talks about URLs pointing to the place where

22  files are stored and we see that instead of the word --

23  instead of the phrase "storage location," the patentee

24  used the word "file storage facility" and specifically

25  that the URL points to a location "in the file storage

1   facility indicated at 304."

2           So, looking at Figure 4 at 304, you see an

3   arrow pointing to a box; and in that box is examples.

4   Once again, our interpretation of that sentence, examples

5   are FTP servers, web server, or accessible locations on

6   the Internet.  You see in the box in Figure 4 it says

7   "FTP," et cetera, and then you go to Figure 1 and it has

8   more boxes indicating "FTP server" and web server as the

9   identifiable examples elsewhere in the patent that could

10  constitute a storage facility.

11          Now, this might seem academic; but it's

12  actually fairly important because if we continue with

13  plain and ordinary meaning as the definition of "storage

14  location," that provides license to essentially take the

15  limitation out of the claims entirely.  Now, this

16  really -- for the first and third examples where "storage

17  location" appears in claim 31, this might not seem like

18  it's a huge deal specifically because you say (reading)

19  each one of said media files specified by a unique

20  episode URL and in the third example it would read URLs

21  specifying one or more corresponding media files.  So,

22  you still have URLs pointing to something.

23          So, why do we need to provide color for

24  "storage locations"?  This isn't about -- this dispute

25  isn't about preferred embodiments; it's not about

1  specific physical facilities or facilities on the

2  Internet. We're talking about URLs that need to point to

3  a location in something. And what the specification

4  defines that "in something" to be is in a storage

5  facility.

6          So, let's move to the example. Here's why we

7  need a definition of "storage location." You go to

8  www.uspto.gov. That is a URL that points to a set of

9  servers that hosts all of the facilities necessary to

10 serve up a web page for the domain. So, you go --

11 physically you have a bunch of servers, they receive a

12 request, they build a web page, and they send it to you

13 over the Internet.

14         Now, if we pretend that also on that domain is

15 a folder called "compilationfiles" and then a specific

16 document called "updatedversion.htm" and the reason --

17 and this is entirely fabricated, but the reason I came up

18 with that is -- with that particular URL is because what

19 we're talking about in the second example in claim 31 is

20 storing an updated version of a compilation file in one

21 or more data storage servers at a storage location

22 identified by a predetermined URL.

23         So, if we take defendants' construction to

24 uspto.gov/compilationfiles/updatedversion, you'll see it

25 points to an html file called "updated version" within a

1  folder called "compilation files" on servers hosting

2  www.uspto.gov.  This is a location in a storage facility

3  and the meaning of this particular part of claim 31 is

4  bolstered by defendants' construction and it is

5  consistent with what the specification is talking about.

6           Now, if we continue with plain and ordinary

7  meaning, then "storage location" can be defined as any

8  particular level of the Internet.  It doesn't have to be

9  in a storage facility.  It can be the storage -- for

10 instance, the storage facility itself.  And this might be

11 abstract; but the example here is pretend that the URL

12 uspto.gov/compilationfiles/updatedversion.htm simply

13 doesn't exist.  You cannot access that on the Internet.

14 However, updatedversion.htm is stored somewhere on those

15 servers.  There's no way to get to it.  It's just stored

16 somewhere.  You can't access it.  If you're a person

17 looking on the Internet, there's no link to it, there's

18 no URL to it.

19           However, if you knew that fact, if you knew

20 that it was stored on those servers, even though you

21 couldn't get to it, you could argue, based on plain and

22 ordinary meaning, that you're storing an updated version

23 of a compilation file, because it's stored on the

24 servers, on one or more data storage servers, because

25 once again it's stored on the servers, and it's

1  identified by a predetermined URL.  Well, you ask the

2  question:  There is no URL.  You can't get to it.  What

3  is the storage location?  Well, under plain and ordinary

4  meaning you could argue that it's just generally

5  uspto.gov even though there's no way to get to that file.

6          Now, this is just one of several examples --

7  and this is probably the most basic example -- why this

8  particular definition matters.  There are other ways that

9  the 2014 Internet works that would call to question this

10  particular term.  And the reason we want it defined is so

11  that it stays in line with both the reading in the

12  specification, what the invention claims, and also what

13  the claim language seems to indicate.

14          And I'll stop there if the court has any

15  questions.

16          THE COURT:  Basically as I'm following your

17  argument, you're saying that because there is a place in

18  the specification where it refers to this storage

19  location as being in a storage facility, that that is the

20  definition that we have to give to "storage location."

21          MR. ACOSTA:  Yes and no, your Honor.  I'm not

22  saying that "storage location" means "storage facility"

23  and that the terms are interchangeable.  I believe that

24  "storage location" specifies that it needs to be a

25  location in a storage facility.

 1          THE COURT:  And there's -- the only place in

 2  the specification where that's mentioned is the place

 3  where you -- that you put up on the screen before.

 4          MR. ACOSTA:  Yes, your Honor.  That's the only

 5  place that talks about URLs pointing to a location with

 6  files in them, which is what I pointed the court earlier,

 7  the essentially work that "storage location" needs to do

 8  in the claims and that's why it's there.  So -- and I

 9  don't think there's any dispute between plaintiffs and

10  defendants that that is the relevant part of the

11  specification.  It's in both of our briefs and both of --

12  and both plaintiff and defendants argue that portion of

13  the specification to make their respective points.

14          THE COURT:  All right.  I guess I am really

15  having trouble following how it's going to help the jury

16  understand "storage location" to specify that it's a

17  location in a storage facility.  I'm also having trouble

18  seeing how the -- this -- use of this term in the

19  preferred embodiment should require the construction that

20  you're putting forth, but I --

21          MR. ACOSTA:  And if I may clarify just a

22  little bit more, the reason it should is because there is

23  a level of abstraction to the words "storage location"

24  because they are so generic.  And in our brief we gave an

25  extreme example I believe, and I mentioned it earlier.

1    But a storage location could be essentially anything and

2    because a storage location could be essentially anything,

3    it is not translatable directly in its plain and ordinary

4    meaning to what these claims are talking about and it can

5    be abstracted to any level of abstraction regardless of

6    whether it is in the specification, is part of the

7    invention, or it's what's contemplated in the claims.

8              THE COURT:  But the claim language itself says

9    where this storage location is to be, doesn't it?  I

10   mean, it -- every time "storage location" is mentioned,

11   it goes on to describe the storage location that's at

12   issue, specified by a URL or identified in some other

13   way, doesn't it?

14             MR. ACOSTA:  And that's exactly why I had this

15   particular example, because in here -- in this example,

16   in this claim language up at the top of this slide, it

17   says what this claim requires is an updated version of a

18   compilation file and in storage servers, in storage

19   servers -- identified by a predetermined URL.  So, if you

20   get rid of that claim language, then the storage servers

21   can be identified by any URL.  As long as they identify

22   the servers generally -- once again a level of

23   abstraction.  So, the file is in those servers over there

24   somewhere.  We don't know exactly where it is.

25             THE COURT:  How does adding "in a storage

1   facility" change that?

2          MR. ACOSTA:  Because then you have "one or

3   more data storage servers in a storage facility

4   identified by a predetermined URL."  So, the storage

5   facility that the compilation file is in must be

6   determined by a predetermined -- must be specified by a

7   predetermined URL.  And once again, the URL is modifying

8   "storage location"; and we are simply clarifying that the

9   URL -- that the modification means you need to point

10  somewhere in a storage facility, not just generally at

11  the storage facility.  Your Honor, it's like saying

12  "Where are those particular cups in the warehouse" and

13  your answer is "They're in the warehouse" instead of "Oh,

14  they're on this particular shelf."

15         THE COURT:  Okay.

16         MR. ACOSTA:  And that's what we're afraid is

17  going to happen.

18         THE COURT:  I just don't understand how adding

19  "in a storage facility" gets you to the shelf.

20         MR. ACOSTA:  Because in -- with that

21  construction, it makes particularly clear when you plug

22  it into the claim language that the URL is pointing in --

23  it must point in a storage facility and not, at the

24  greatest level of abstraction, any storage location.

25         THE COURT:  Okay.

Claim Construction Hearing

65

1           MR. ACOSTA:  Thank you.

2           THE COURT:  Thank you, Mr. Acosta.

3           Mr. Pitcock, if you want to respond.  We're

4  going to take a short recess at the end of this term

5  before we move on with the rest.

6           MR. PITCOCK:  I guess my only comment to all

7  this is that almost none of this -- even the argument --

8  is contained in their briefing; so, I'm kind of

9  responding to it for the first time now.  But there's --

10 he doesn't even define what a "facility" is.  I don't

11 know how adding that to the construction of the term

12 "storage location," which would seem to have an ordinary

13 meaning to one of skill in the art, you know, even helps

14 them given the statements that he's made about the

15 breadth of the term "facility."  So, I guess that's my

16 only comment.

17          THE COURT:  Okay.  All right.  We'll take a

18 ten-minute recess at this time.  Thank you.

19          (Recess, 10:38 a.m. to 10:55 a.m.)

20          THE COURT:  Let's see.  I believe,

21 Mr. Pitcock, the next term is "compilation file."

22          MR. PITCOCK:  Yes, your Honor; and I neglected

23 to do something earlier which I apologize for.  We

24 prepared a binder I'm sure pretty similar to the

25 defendants' binder which has copies of the briefing, the

Claim Construction Hearing

66

1    deposition of Dr. Porter, et cetera; and I'd like to

2    offer it at this time so that the court has copies of it.

3              THE COURT:  All right.  As long as you make it

4    available to the defendants as well.

5              MS. DAVIS:  We have a copy, your Honor.

6              THE COURT:  Okay.

7              MR. PITCOCK:  Do you mind if Mr. Chaudhari

8    approaches?

9              THE COURT:  All right.

10              MR. PITCOCK:  I'd just note earlier I read

11    from the Porter deposition transcript; and that is

12    contained at Tab 9 of the second binder I handed up, your

13    Honor, just for reference.

14              THE COURT:  All right.  Thank you.

15              MR. PITCOCK:  So, I think it makes sense to

16    address actually the next two terms, "compilation file"

17    as well as the phrase in which that term is used in the

18    claim.  And that's part of our argument is that the claim

19    requires -- it's an apparatus claim, and part of the

20    apparatus is a processor which performs certain

21    functions.  And there's a listing here; and one of the

22    things it does is "from time to time, as new episodes

23    represented in said series of episodes become available,

24    storing an updated version of a compilation file" -- and

25    you've said this has a plain and ordinary meaning, and

Claim Construction Hearing

67

1  from that I infer that you do not believe that the

2  compilation file needs to be assembled -- or the updated

3  version of "compilation file" needs to be assembled by

4  the processor.  And, you know, our argument is relatively

5  straightforward.

6            "Compilation file" is not a term that has an

7  ordinary meaning.  It's not a term like "URL" or "storage

8  location" that one of skill in the art would know what it

9  meant without looking to the patent to see how it was

10  described.  And the Federal Circuit has held, in cases we

11  cited in our brief, that when it comes to claim terms

12  that don't have an ordinary meaning, it is proper to look

13  to the specification to try to determine what it is that

14  these terms mean.  And if you look at the specification,

15  it is very clear that the server which would contain the

16  processor is compiling the files for downloading.  So,

17  the compilation file is a file that is compiled or

18  assembled by a processor.

19            And if you look at the joint claim

20  construction statement, which is also at Tab 3, there is

21  a definition of "compilation" as "the action or process

22  of producing something, especially a list, book, or

23  report, by assembling information collected from other

24  sources."  And we would say that, you know, again in the

25  specification it talks about the compilation being

1 written to the download directory by a processing

2 mechanism and that with reference to the specification as

3 well as the normal meaning of "compilation," the claim is

4 specifying that it is the processor that is performing

5 the assembly of this file, that it's a compilation file

6 because it is being assembled by the processor.

7          And the final point is -- you know, this was

8 obviously critical to the allowance of the invention.

9 The examiner specifically doesn't, you know, cite to

10 where the data is stored at the local device or anything

11 of that nature in his reasons for allowance but, rather,

12 that it doesn't suggest updating and downloading a

13 current version of a compilation file and it contains all

14 the information that's in the claim, but the very nature

15 of a compilation file is it is a file that is being

16 assembled by the processor, as described in the patent

17 specification.

18          THE COURT:  Now, Mr. Pitcock, we -- I try and

19 take a consistent approach to claim construction, and I

20 take seriously the Federal Circuit's command to start

21 first and focus on the claim language.  I try to do that

22 whether it's the plaintiff seeking to add limitations to

23 it or the defendant, and I -- it seems to me here that

24 what you're proposing is for us to add something that the

25 language didn't but could have added to the claim.  And

1  I'm -- I am I guess looking for some way to distinguish

2  this from every other request to read into the claim

3  language whatever might appear elsewhere in the

4  specification.

5        MR. PITCOCK:  Well, I think the way in which

6  it's done -- so, for example, all of the parties agree

7  that media files have to include audio data because of

8  the way the specification describes the invention.  And,

9  you know, that would be even overcoming the ordinary

10 meaning of that term which might be broader.

11       If you take that position -- so, there's a

12 presumption, sometimes called a "heavy presumption," that

13 terms that have an ordinary meaning, like "URL" or

14 "storage location" -- because a patent is a technical

15 document written for a technical audience, you would

16 expect there to be a presumption that the ordinary

17 meaning of the term would apply in the claims.  But when

18 you come to a term like "compilation file" which has no

19 ordinary meaning -- I mean, it -- you know, when I asked

20 Dr. Porter --

21       THE COURT:  How does "compilation" have less

22 of an ordinary meaning than "storage location"?

23       MR. PITCOCK:  Well, if I say to one of skill

24 in the art, "I am going to store this at a storage

25 location," one of ordinary skill in the art knows what

1  that means.  They know what it means to some degree

2  before you look at the specification.  And they wouldn't

3  necessarily think it had to be in whatever you're calling

4  a "facility," which is some undefined term that they're

5  introducing from the specification.  One of ordinary

6  skill in the art wouldn't have -- and they've introduced

7  no evidence that one of ordinary skill in the art would

8  think, oh, well, a compilation file would -- you know,

9  it'd be known in advance what that means to a person just

10 reading the patent who looked at the claims and didn't

11 read the specification.

12          THE COURT:  I would agree that I think that

13 "compilation" is generic, and we've I think added in

14 the -- what we think is the patent specific meaning of

15 it, but what you're asking us to add in is the way in

16 which it's compiled.

17          MR. PITCOCK:  I mean, I would disagree.  I

18 would argue that it is a compilation file because it is

19 compiled, because it is assembled by the processor which

20 is what's called for in the claim.

21          THE COURT:  Okay.  Well, I do -- I understand

22 what you're asking.  So, I appreciate that.

23          MS. DAVIS:  Sharon Davis for the defendants,

24 your Honor.

25          THE COURT:  All right.

1        MS. DAVIS:  Let me start, your Honor, by

2   addressing one of the comments that Mr. Pitcock just made

3   with respect to plaintiff's Slide 16 where he cited to

4   what he said was a definition of "compilation file" as a

5   "file that is compiled (or assembled) by a processor."

6   That's the third bullet point on his slide.  And he cited

7   to the joint claim construction statement, and he said

8   there was a definition in the joint claim construction

9   statement that supported this position of what a

10   compilation file is.

11        Your Honor, this was not something that was

12   cited in any of the briefing; but if you look at the tab

13   in plaintiff's binder where he has the joint claim

14   construction statement and you turn page 6, the

15   definition of "compilation," there's two things I want to

16   point out to you about that, your Honor.  The first one

17   is that this is not something that was agreed to.

18   Actually it's plaintiff's citation of their proposed

19   construction in support for their claim construction.

20   So, when he says it's in the joint claim construction

21   statement, he's just pointing to what plaintiff included

22   in their joint claim construction statement although he

23   didn't cite to this in any of the briefing that they did

24   on claim construction so far.

25        But more importantly, if you look at the

1   definition that they're citing to, they're citing to the

2   Oxford dictionary's definition of the word "compilation."

3   And all that that definition says, your Honor -- I'm not

4   going to read the whole thing -- but it says that

5   "compilation" is (reading) an action or process of

6   producing something like a list by assembling information

7   collected from other sources, which I think is what we

8   all understand as the ordinary meaning of compiling

9   something.  There's nothing in that definition that

10  they're citing to from the joint claim construction

11  statement that says anything about a processor or being

12  compiled by a processor or being assembled by a

13  processor.

14           But turning back to the substance of the main

15  argument, your Honor, if we could look at Slide 65 and

16  just look at the claim language for a moment.  And I know

17  your Honor has focused on this point in the discussion.

18  But the claim language here specifically assigns two

19  tasks to the processor in claim 31.  The "one or more

20  processor" are "for"; and there are two relevant tasks

21  that are assigned here, "storing one or more media files"

22  and then there's some information relating to the storage

23  of those media files and then "from time to time, as new

24  episodes become available, storing an updated version of

25  a compilation file."

1          The claim language is quite clear that what

2  the processor is to do is to store an updated version of

3  a compilation file.  It doesn't say anything and is

4  completely agnostic as to how that updated version of a

5  compilation file is created.

6          As your Honor pointed out in addressing it

7  with Mr. Pitcock, the claim could have put in language

8  about how that compilation file was created; but they did

9  not do so.  They put in a broader claim here that covers

10 a processor for storing an updated compilation file

11 regardless of how that compilation file is created, and

12 it would be reading in an additional limitation to the

13 claim to adopt plaintiff's construction.

14          If we turn to the specification, the next

15 slide.

16          We can go forward one more -- well, let me

17 actually point out this point.

18          You know, plaintiffs are really kind of trying

19 to have it both ways here in terms of reading things into

20 the claim; and they even make the point in their reply

21 brief that the claim itself "specifically sets out the

22 required elements of the compilation file."  And we agree

23 it does.  It has a pretty lengthy description of what

24 needs to be in the compilation file, and it is plaintiffs

25 who are trying to add yet another element to what it

1  takes to be a compilation file by adding the concept that

2  it has to be a file that is assembled by a processor,

3  which is simply completely missing from the claim

4  language.

5          If we turn to Slide 68 with respect to the

6  specification -- and we addressed this, your Honor, in

7  our opposition brief -- even when plaintiffs turn to the

8  specification, they have a really hard time even finding

9  language that supports the idea that the compilation file

10  has to be assembled by a processor because what they

11  quote to your Honor in their opening brief is a very

12  small segment of what's included in these passages

13  because what the passages -- and they only found two

14  passages in the 52 columns of the specification that they

15  contend would support reading in this limitation and what

16  they did was to kind of clip out the part of the sentence

17  that talks about compiling a file, but what they left out

18  was the fact that these are clearly in the context of

19  these specific embodiments where actually the embodiment

20  was requiring different elements that are not encompassed

21  by claim 31 at all.  For example, the inclusion of

22  additional types of programs and in particular the

23  requirement that the user supply information in order to

24  create the compilation file, which is not something

25  that's encompassed by claim 31 at all.

1            Now, in their briefing -- although Mr. Pitcock

2  didn't mention it, in their briefing -- in their

3  briefing, Personal Audio points to the claim 3 and

4  suggests that the fact that there is reference to the

5  processor being involved in the creation of the

6  compilation file in claim 3 supports reading in the

7  limitation they propose.  It's actually quite the

8  opposite, your Honor.  What claim 3 and claim 1 show is

9  that there were circumstances where the patentee chose to

10 claim a system that had the processor doing some of the

11 steps of updating, and they very clearly claimed that in

12 claim 1 and claim 3.  It was specifically not included in

13 claim 31 which again only requires that the processor

14 store the updated compilation file and doesn't include

15 any steps that relate to the assembly or compilation of

16 the computer file.

17           Finally, I just want to address one of the

18 things that Mr. Pitcock argued because he made reference

19 again to the reasons for allowance and suggested that

20 that somehow supported reading in this limitation; and I

21 just wanted to point out that if you actually read the

22 entire segment of the reasons for allowance -- the first

23 paragraph is what Mr. Pitcock quoted from; but if you

24 look at the second paragraph where the examiner was

25 explaining a little bit about the reasons for allowance,

1  the examiner says that the closest prior art discloses a

2  method for updating, for distributing updates, and then

3  says Reisman does not disclose the objects being a

4  compilation file representing episodes with corresponding

5  URLs of media files of said episodes.  So, what that's

6  saying, to the extent the examiner was expressing any

7  opinion here on what was novel over the prior art, the

8  examiner was suggesting that it was the specifics of

9  having compilation files representing episodes with

10 corresponding URLs of those episodes that was the

11 novelty.  It doesn't say anything about it being novel to

12 update using the processor.

13          If your Honor has any questions, I'd be happy

14 to address them.  Otherwise, I'll rest on that.  And

15 that's for both of those two claim terms.

16          THE COURT:  All right.  Thank you, Ms. Davis.

17          MR. PITCOCK:  Your Honor, if I might briefly

18 just address one thing.

19          THE COURT:  All right.

20          MR. PITCOCK:  If you look at their Slide 65 --

21 it really doesn't matter; it's just a snippet of this

22 language.  You know, there's really no reason to call it

23 a "compilation file" if you're not trying to point back

24 to the part of the specification which describes, you

25 know, the compiling.  There's no reason -- you could just

 1  call it a "file."  And yes, we do cite to just the

 2  portions of the spec that talk about a compilation file

 3  because that's obviously the part of the specification

 4  that this claim is referring back to.  "Compilation file"

 5  wouldn't be a term you would use because it had some

 6  ordinary meaning to one of skill in the art.  You would

 7  be using it because you want to refer to the compilation

 8  file in the specification.

 9          THE COURT:  All right.  Thank you.

10          MS. DAVIS:  Your Honor, I just want to address

11  real quickly what Mr. Pitcock just said, which is the

12  compilation part of this file is not how it's compiled in

13  the sense of a computer compiling things.  It's a

14  compilation file because, as it indicates here, it's a

15  list of the currently available episodes.  It's compiling

16  what content is available and putting that in a file

17  which you then have to select from among the available

18  files.  So, it's using compilation in the ordinary

19  meaning -- not in the computer context but in the

20  ordinary meaning of what it means to compile a list of

21  episodes.

22          THE COURT:  Okay.  Mr. Pitcock, the next term,

23  do you wish to address it?

24          MR. PITCOCK:  Your Honor, I'll actually -- I

25  think it makes sense to address the last two phrases

1  together.  They're both part of the end of claim 31.  And

2  looking at the observation underneath the plain and

3  ordinary meaning, you observe "that the language of the

4  claim suggests the same interface must perform a, b, and

5  c, but other interfaces may also perform one or more of

6  those functions as well."  And I would just -- you know,

7  I agree obviously with the second part of the phrase; but

8  the notion that the same interface has to perform all

9  three functions I think is actually put to the lie by the

10  fact that the same claim earlier specifically talks about

11  one or more interfaces for performing, you know, these

12  functions that are then being listed.

13        So, I would respectfully suggest that the

14  claim language which talks about employing one of them

15  wouldn't mean that you had to use the same one to perform

16  all of the same functions that are part of this phrase

17  which specifically talks about one or more interfaces for

18  performing those functions and that the claim language of

19  31 makes it clear that if you're going to read, you know,

20  "one" as a single limitation, that it makes much more

21  sense to say one of the interfaces has to perform a, one

22  interface has to perform b, and that another different

23  interface may perform c.

24        THE COURT:  And tell me why.  And the reason I

25  put the observation in this preliminary construction is

1 because I believe that the parties were differing on this

2 point and I wanted to make sure that it gets addressed

3 here.  So, tell me what your support is for your position

4 that it should be construed to mean simply any one of the

5 interfaces has to perform each of the functions but no

6 single interface has to perform all three.

7            MR. PITCOCK:  I think -- so, my primary

8 argument is the claim language itself.  Unfortunately,

9 the exact term "communication interface" does not appear

10 to be used in the specification.  So, looking at the

11 claim language itself, it says specifically "one or more

12 communication interfaces" for performing certain

13 functions.  And then it goes on, in the disputed

14 language, to say "employing one of them to"; and then it

15 breaks out these three different parts.  And I would

16 suggest it is actually suggesting that one interface

17 could perform a, one interface could perform b of the

18 potential for having more interfaces, which is directly

19 referenced in the earlier part of the claim, and yet

20 another interface could perform c.  They could all be the

21 same one, but they don't have to be.

22            And that's consistent, your Honor, with my

23 understanding of the *IGTv/Bally* case which is, you know,

24 a case where you have a limitation to one and the

25 defendants, just as they are here, are trying to say,

1  well, no, the fact that there's one interface claim here

2  means that all these things have to be done by one

3  interface all the time.  And here I think it's very clear

4  from the language of the claim, which specifically

5  contemplates having more than one communication interface

6  for performing these functions and then breaks them out

7  into three different things, that what it's really saying

8  is yes, one does this, one does b, one does c but it

9  doesn't have to be the same one.

10           THE COURT:  If you think that's clear, then

11  I --

12           MR. PITCOCK:  No, it -- I'm just saying it's

13  the only way to reconcile -- why would you claim

14  specifically one or more communication interfaces and

15  then at the end say you had to use one of them for

16  performing all of the same -- you know, for performing

17  the same functions that you had more than one for earlier

18  in the claim?  And I guess that's the logical point.

19           I admit this is not going to go into any

20  journals as an example of claims drafting that should be

21  emulated; but in terms of looking at the claim as a whole

22  and trying to interpret this phrase in the context of the

23  earlier part of the claim which specifically contemplates

24  having more than one communication interface for

25  performing these functions, it seems that the better read

1    is that one has to perform a, one has to perform b, one

2    has to perform c but they don't have to be the same one.

3            THE COURT:  And I guess what I'm after is

4    whether you have anything you can point to in the

5    specification or elsewhere that sheds light on this or

6    whether you're just trying to do the same thing I'm doing

7    of giving the most logical meaning to this language.

8            MR. PITCOCK:  So, the thing that I would note

9    is yes, although it's not direct.  As I said before,

10   "communication interface" isn't directly used in the

11   specification; but the claim also requires -- I'm sorry,

12   your Honor.

13           So, the claim specifically talks about having

14   media files and data storage servers; and the question

15   is, depending on your construction of "communication

16   interface" -- whether or not you believe, you know, it

17   specifically contemplates having those stored anywhere on

18   the Internet, it's at least conceivable that you would be

19   using a different communication interface to get those

20   files than you might be otherwise.  And, so, that's why

21   it claims more than one interface for performing the

22   functions and that's why that language at the end of the

23   claim is better read as saying one of the interfaces has

24   to perform the specific broken-out functions that are

25   listed there, but it doesn't have to be the same one that

1   performs all three.

2          THE COURT:  Well, why would it say -- bother

3   to say "one of said one or more communication interfaces"

4   at all?  Why wouldn't it just then say "employing said

5   communication interfaces to" -- what's the -- in your

6   mind, what's the purpose of saying "one of said one or

7   more"?

8          MR. PITCOCK:  I think it's that the -- I

9   believe the proper interpretation is that one interface

10  would perform each of the functions but it wouldn't have

11  to be the same interface.

12         THE COURT:  Well, then why call out -- why add

13  that term "one of said one or more"?  It's obvious that

14  some communication interface would be performing it.  So,

15  why specify that it has to be "one of said one or more"?

16         MR. PITCOCK:  Well, I think it's that -- I

17  honestly believe that it's probably because each of the

18  different functions could be -- would be performed by one

19  interface but wouldn't have to be performed by the same

20  one interface.

21         THE COURT:  Okay.  I appreciate that.

22         MR. LO:  Jason Lo on behalf of the defendants,

23  your Honor.

24         I think your Honor hit the nail on the head

25  when you asked about the phrase "one of said one or

1 more."  There's a specific reason that that phrase is in

2 there.  But I think there's something else that goes

3 toward making the first part of your Honor's proposed

4 construction correct, and that's the other part that I've

5 highlighted on Slide 74.  The a, b, c are connected by an

6 "and"; and that clearly states that the same

7 communication interface for a, b, and c must be the one

8 that is applicable.

9          Mr. Pitcock also made the argument that

10 because the communication interfaces here has an

11 antecedent basis, it's a set one or more; and up above in

12 the claim and specifically in about line 39 of column 50

13 they do describe other communication interfaces that

14 therefore if they are defining multiple communication

15 interfaces, it makes no sense to say in the last part of

16 the claim 31 that only one of those are used.  All I'll

17 say to that is what is described in line 39 of column 50

18 is a broad -- is a broad description of things that

19 communication interfaces can do.  Then when you get down

20 to the part in column 51, there are specific tasks

21 relating to a compilation file in subpart A, relating to

22 the updated version of the compilation file in subpart B,

23 and relating to issues relating to episode URLs included

24 in the attribute data contained in the updated version of

25 said compilation files.  Sorry.  That's a mouthful.

1           But the point is in a, b, and c on column 51

2    there are much more specific things that a communication

3    interface described in column 51 and the end of column 50

4    must do.  And that's why just because you have the

5    antecedent basis up above doesn't mean that you have to

6    use every type of that antecedent basis in order to

7    conduct the functionalities that are at issue in

8    column 51, the a, b, and c functionalities.

9           So, with respect to the first part of your

10   Honor's construction that the claim suggests the same

11   interface must perform a, b, and c, we agree that that is

12   the correct construction of the term.

13           THE COURT:  And do you also agree that if a

14   single interface is performing a, b, and c, that the

15   claim would allow other interfaces to also perform those

16   functions?

17           MR. LO:  I disagree with that.

18           THE COURT:  Okay.

19           MR. LO:  And for this reason.

20           THE COURT:  Tell me.

21           MR. LO:  Your Honor's proposed construction

22   would be correct if the claim said "employing the same

23   communication interface to conduct a, b, and c."  So, let

24   me just take it out of the vague language of a

25   "communication interface."  I'm going in the next few

1  weeks to Dallas, Tyler, and New York.  If I said I'm

2  bringing the same jacket on all three trips, that leaves

3  open the possibility that I may bring another jacket with

4  me on one or more of those trips but it has to be the

5  same.  At least -- there has to be one jacket that goes

6  on all three of those trips.  That's not what the claim

7  language here says.

8          The claim language, as Mr. Pitcock points out,

9  starts with the antecedent basis in column 50 at line 39

10 defining that there can be multiple communication

11 interfaces; and it defines, as a starting point, that I

12 have a closet with multiple jackets.  And then when you

13 get down to the end of column 50 and the beginning of

14 column 51, it says out of the multiple jackets that you

15 have, you're bringing one on those trips.  That doesn't

16 leave open the possibility that you bring more than one.

17 It specifically says that you will be only bringing one

18 and using one for those functionalities.

19          And, so, when you define in the antecedent

20 basis up above the possibility that there are multiple

21 and then you come down later into the claim and you say

22 that there is -- you're going to bring one jacket out of

23 the many jackets on your trip, that means you're not

24 bringing any other jackets; and it doesn't leave open the

25 possibility that another communication interface will

1  perform a, b, or c.

2           That, I think, your Honor, is supported not

3  only just by the claim -- reading of the claim language;

4  but if we go to Slide 75, this issue has been squarely

5  addressed by the Federal Circuit on multiple occasions.

6  In *WMS Gaming versus International Game Technology*, the

7  products at issue were slot machines and one of the

8  issues for slot machines is you need to have a good

9  random number generator so that not everybody who goes up

10  wins a jackpot and, you know, at the same time, some

11  small percentage of people I guess will eventually win

12  the jackpot.  It's never been me.

13           And one of the claim limitations was

14  "selecting one of said numbers."  So, the claims in the

15  specification first describes the machine is going to

16  generate a small subset of numbers and then you're going

17  to select one of them.  And I think what was at issue

18  there was the accused device selected more than one but

19  the claim said "selecting one."  And the Federal Circuit

20  agreed with the district court, "The plain meaning of

21  'selecting one of said numbers' is selecting a single

22  number, not a combination of numbers."  So, that's

23  squarely on point on this issue.

24           The other case -- and it's the case that

25  Mr. Pitcock referenced in his argument -- is *IGT versus*

1 *Bally Gaming*.  The claim language there said "issuing a

2 command over the network to one of said preselected

3 gaming devices responsive to a predetermined event."  And

4 again in this case it's a gaming device, and there were

5 really two questions at issue here.

6          The first question was:  Does the claim

7 language allow you to issue more than one command?  And

8 then the second question is:  Can the command be issued

9 to more than one gaming device?

10          Now, the first one is actually, in my mind,

11 pretty easy because the command comes before the "one of

12 said preselected gaming devices."  In other words, the

13 "one" modifies "gaming devices," not "command."  So, when

14 it comes to the "command" language, Fed Circuit said,

15 "No, the claim does not limit the number of commands that

16 could be issued to discrete gaming devices."  You could

17 issue multiple commands.

18          However, with respect to the gaming device --

19 and that's the phrase that is modified by the "one of

20 said preselected" -- the Federal Circuit said, "Certainly

21 the use of 'one' in this claim is limiting in that a

22 command will go to one of the preselected devices.  The

23 command will cause one device to pay.  Hence 'one'

24 modifies devices that will receive a particular command,

25 not the number of commands that might be issued."

1          So, both *IGT* and *WMS* are clearly on the side

2     that when the patentee says "one" and particularly when

3     the patentee says "one of said multiple ones," "one" has

4     to have meaning.  It doesn't leave options open for more

5     than one; it doesn't leave options for different ones.

6     It's got to be a single one and only one that performs a,

7     b, and c.

8               THE COURT:  And that's really what you want is

9     for us to read it as though it says "only one."

10               MR. LO:  That is correct.  And so -- and your

11    Honor is correct, and we appreciate your Honor making the

12    observation.  The dispute here is both aspects of your

13    Honor's observation.  We agree with the first aspect that

14    the same one has to do a, b, and c.  We respectfully

15    disagree with the second aspect of it that leaves open

16    the possibility that another communication interface will

17    perform a, b, or c in addition to the one that does all

18    three.  I think that's -- those are really the two

19    disputes; and that is what we are seeking a ruling on, on

20    those two issues.

21               THE COURT:  All right.  I understand your

22    position.

23               MR. PITCOCK:  Oh, actually I just -- I wanted

24    to briefly address *IGT* and --

25               Did you have something more to add?

1            THE COURT:  All right.  I'll give the

2   defendants a chance to respond after, but go ahead.

3            MR. PITCOCK:  Okay.  Yes, your Honor.

4            So, if you look at our reply brief, we talk

5   about the *IGT* case.  And again, they're right.  They --

6   but there was another dispute which is that the question

7   is certainly the use of "one" talks about using, you

8   know, a command or more than one command to one device at

9   a time, but the court specifically held "a single command

10  must be issued to a single gaming device."  "The claim,

11  however" -- and I'm reading from the top of page 10 --

12  "does not limit the number of commands that could be

13  issued to discrete gaming devices."  Nothing in this

14  limitation requires issuing only one command to only one

15  machine.  *Bally* would have us rewrite the claim to say

16  "issuing only one command to only one of said preselected

17  gaming devices."

18           So, there they were arguing the same thing

19  here, that use of the word "one" meant that, you know,

20  you had to, you know, all the time just use one

21  interface.  And here, unlike *IGT/Bally*, you know, there

22  wasn't a previous part of the claim that specifically

23  said that you had, you know, the possibility of having

24  more than one communication interface.  And just as it

25  did here -- they're really misciting this.  The court

1  specifically held that you just didn't -- you didn't have

2  to send it to only one of the preselected gaming devices.

3  You could have other -- you could have other winners in

4  the *IGT/Bally* case and still infringe the claim.  Just

5  like you could take other jackets on the plane even if

6  you said, you know, only one jacket on a plane.  And here

7  where the claim language specifically calls out different

8  functions and it says (reading) employing one of these

9  communication interfaces to perform this function, that

10  function, and the other function, it doesn't mean that

11  "and" just means you have to have one interface that

12  performs each function.  It does not mean that you

13  necessarily have to have the same interface perform all

14  three.

15           THE COURT:  All right.  I understand your

16  argument.

17           MR. ACOSTA:  Your Honor, Matt Acosta for

18  defendants again.  I'm addressing the last term, and the

19  critical language there is "receiving and responding."

20           I'm using the document camera.

21           We've seen that the court has a preference

22  saying that it doesn't want to import the "downloading"

23  language.  We have two responses to that.

24           First of all, the dispute is not trying to

25  import the previously argued downloading issue into this

1  claim construction language.  This is an independent

2  dispute from the "downloading" dispute.  Regardless of

3  what the court decides "downloading" actually means in

4  this context, this dispute is absolutely separate.

5         The second thing I would like to point out is

6  that, respectfully, the court, if they adopted

7  defendants' construction, would not be importing

8  "downloading" at all into the claim because "downloading"

9  is already in the claim language.

10         THE COURT:  So, we don't need to put it in

11  again?

12         MR. ACOSTA:  Well, and that's exactly what the

13  dispute is, because plaintiffs have not clarified to us

14  and there seems to be an indication that they think the

15  phrase "receiving and responding" means something other

16  than responding to the request for a media file by

17  downloading; and they -- and we haven't heard either in

18  the briefing or informally from plaintiffs what that

19  might mean.  But pointing to the claim language again,

20  right at the top when it talks about "one or more

21  communication interfaces" which later -- as we've just

22  heard, later down in the claim it says "employing one of

23  said one or more communication interfaces to do" a, b,

24  and c, the c being receiving and responding, going back

25  at the top of the claim when it talks about "one or more

1  communication interfaces connected to the Internet for

2  receiving requests" and then later it says "and for

3  responding to each given one of said requests by

4  downloading a data file identified by a URL."  That's

5  what this claim says a communication interface does.

6           THE COURT:  And does this language that we're

7  addressing here use "said request" like the language

8  you're quoting from?

9           MR. ACOSTA:  Does the language -- excuse me,

10 your Honor.  Does the language at the top of the claim

11 use "said request"?

12          THE COURT:  No.  The language at the top of

13 the claim does; but that you're comparing it to says

14 "said request," right?

15          MR. ACOSTA:  Correct.

16          THE COURT:  And the language that we're

17 construing in that subparagraph C says "a request."

18          MR. ACOSTA:  It does say "a request," your

19 Honor; but the only request that's outstanding for it to

20 respond to is the request for a media file.

21          And if you go to the top of the claim

22 language, it says this is what communication interfaces

23 do and then later it specifies particularly what they're

24 doing and the very last c specifies that it's receiving

25 and responding to a request, the request being the

1    request for the media file.

2              THE COURT:  Well, the fact that in the second

3    limitation of claim 31 it talks about responding by

4    downloading, how does that mean that here in this last

5    limitation the only response would be by downloading?

6              MR. ACOSTA:  Well, there's a few reasons, your

7    Honor.  First, because the claim limitation is clear that

8    communication interfaces receive requests and respond by

9    downloading and then also because of the specification

10   which many, many times talks about responding to a

11   request for a media file by downloading.

12              If we could jump to Slide 82.

13              Sorry.  83.

14              Okay.  So, this is just one example; and all

15   of these are cited in our -- in defendants' response

16   brief from the specification that talks about downloading

17   in response -- downloading media files in response to

18   requests for media files.  This is from the player side,

19   column 7, lines 19 through 22, and also column 24, lines

20   19 through 21.

21              And then if you go to the next slide, you have

22   the specification talking about it from the server side,

23   "downloading of actual program segments" and again "an

24   immediate request may be sent to the server to download a

25   needed but locally unavailable segment."

1            The issue being if it's responding to a

2    request from a media file, what else does this

3    specification or this claim language allow the

4    communication interface to do besides downloading?  And

5    the answer is absolutely nothing.  There is no indication

6    that it does anything besides download the media file in

7    response to each request for a media file.

8            THE COURT:  All right.  Mr. Pitcock?

9            MR. PITCOCK:  I'll try to be very brief.  I

10   would just say that, you know, to some degree they're

11   trying to have it both ways with this claim.  They want

12   to read parts of the earlier, you know, plural interface

13   limitation into this but then read it out despite the

14   fact that the different functions are claimed in

15   different parts; and there would be no reason to do that

16   if you meant the same one had to do all of these things.

17           And I would also add that even if the response

18   also results in a download, it doesn't mean that's the

19   only thing that you can do in response; and there's

20   certainly nothing in the claim that indicates that that

21   download has to occur over the same interface as the

22   request.

23           THE COURT:  Is there any other response that

24   you can describe to me other than a download?

25           MR. PITCOCK:  Well, you might -- I mean, I can

1  contemplate lots of different things theoretically.  If

2  you have a request for a URL, you might get all sorts of

3  information in response in addition to the download of

4  the file.

5          THE COURT:  Okay.  And you have said that

6  under your construction the resulting download could be

7  through a different interface?  Is that --

8          MR. PITCOCK:  Yes.

9          THE COURT:  -- a concern you have?

10          MR. PITCOCK:  And I believe that would be

11  contemplated -- if you have a storage location for media

12  files, you know, anywhere accessible by the Internet,

13  it's at least conceivable that you would be using a

14  different communication interface to download those

15  files, particularly with respect to whatever you're using

16  to receive requests.

17          THE COURT:  Okay.  Mr. Acosta, would you

18  address whether your construction would require that the

19  download occur through this same interface and, if so,

20  why that's justified?

21          MR. ACOSTA:  Your Honor, I think this goes

22  back to the last limitation that we were arguing on.  If

23  you look again at the claim language -- if you look again

24  at the claim language for claim 31, in column 50, right

25  at the bottom, again it says "employing one of said one

1 or more communication interfaces to" and then you have a,

2 b, and c, a being receiving a request from a client

3 device and c being thereafter receive and respond to a

4 request from said requesting client device.  And, so --

5 first of all, as the court discussed earlier, the "one"

6 means one has to do a, b, and c; but then even more

7 poignant is that receive and respond to is all contained

8 in one limitation.  It's all contained in c.

9        And then also Mr. Pitcock gave an example

10 saying additional things can be done in response but what

11 he didn't say is that downloading couldn't be done in

12 response and that's the point.

13        THE COURT:  What he is suggesting and what I

14 guess is something that concerns me, he is saying the

15 response could include a download but that that download

16 doesn't have to be through this same interface.  Your

17 construction would require that the download be through

18 this same interface.  Is that what I'm understanding?

19        MR. ACOSTA:  Yes, your Honor.  It says "a

20 communication interface that must receive and respond to

21 a request," and then again earlier in the claim it says

22 "a communication interface to respond to a request by

23 downloading the media file."

24        And let me clarify my earlier statement that

25 this claim language said "media file," as your Honor

1  asked, but it says -- or excuse me -- "said request"; but

2  it's referring to a request from a client device,

3  received from a remotely located client device.  So,

4  "said request" is pointing back to "remotely located

5  client device."

6           And once again, if you go down to part C of

7  the very last limitation, it's receiving a request from a

8  remotely located client device and responding to that

9  request by downloading, which is overwhelmingly supported

10  by the claim language, the description of the invention,

11  and then also the figures.

12           THE COURT:  Okay.  Thank you.

13           All right.  In addition to the claim

14  construction issues, there's a motion to compel that is

15  pending that I'd like to address at this time.  Who on

16  behalf of the plaintiff wants to address that?

17           MR. PITCOCK:  Yes, your Honor.  The motion to

18  compel, is that what you're wanting us to address at this

19  point?

20           THE COURT:  Yes.

21           MR. PITCOCK:  So, on October 10th, 2013, the

22  defendants served -- or some of the defendants served

23  their first set of invalidity contentions.

24           THE COURT:  And let me interrupt a little bit.

25           MR. PITCOCK:  Sure.

Claims Construction Hearing

1          THE COURT:  I have read the record on this and

2   I guess what I want you to address is I -- I've read

3   Judge Cousins' ruling on the motion that was filed in the

4   Northern District of California; and, frankly, my initial

5   impression on reading your motion was similar to one part

6   of his ruling in that it appears to me that until there

7   is a final ruling in the administrative proceeding, that

8   this is premature.  Why do we need to get into this now?

9          MR. PITCOCK:  Sure.  So, first, in fact

10  discovery is going to end in this case in a month; and

11  the IPR is not going to be over or final for some time.

12          Two, that only goes to the preclusion issue.

13  If, for example, FOX which filed their complaint in

14  Massachusetts before the IPR was filed would be found to

15  be a real party in interest because of their

16  communications with the EFF, then the IPR would be over.

17  It would be finite right now.  And without this discovery

18  we can't determine whether or not FOX may have, you know,

19  voided the IPR by being involved as a real party in

20  interest and filing their litigation in Massachusetts.

21          THE COURT:  That would be an issue that I

22  would think would be appropriate to take up either in the

23  IPR or in the Massachusetts action, but how does that

24  relate to an issue before this court?

25          MR. PITCOCK:  Well, that's really the second

1  point which is if you just took away the IPR altogether,

2  if you had no IPR pending and the defendants had just

3  communicated with a third party without any privilege

4  regarding their prior art claims, there would be no

5  reason to protect it and it would be directly relevant

6  because they may very well -- it's the same prior art in

7  the IPR that they have in their invalidity contentions.

8  So, I don't know what their communications are because

9  they haven't answered the interrogatory but I don't

10  believe that they're privileged in any way and if they

11  have to do with the credibility of witnesses, any

12  evidence that might support that this prior art wasn't

13  available, any problems with their case, anything like

14  that, then I believe that those communications are

15  relevant.  They're not privileged, and there's no reason

16  why we shouldn't have access to them.

17        THE COURT:  If they don't include the mental

18  impressions of their counsel about credibility or the

19  effect of prior art or some other such issue, then of

20  what use are they to you?

21        MR. PITCOCK:  I'm sorry, sir?

22        THE COURT:  What use are those communications

23  to you except for the mental impressions of counsel?

24        MR. PITCOCK:  The facts.  I mean, they're --

25  they have declarations in the IPR by supposed, you know,

1  declarants who were involved in the prior art, the same

2  prior art in our case.  There could easily be facts that

3  were conveyed about each of these declarants that would

4  be useful in our case that would not be protected and

5  would have nothing to do with attorney work product.

6           THE COURT:  If they're communications from

7  counsel, they would definitely be work product, would

8  they not?

9           MR. PITCOCK:  They would be work product to

10  the extent that they contained, you know, mental

11  impressions or legal --

12           THE COURT:  Mental impressions are just a

13  particular type of work product.  They're not -- I mean,

14  work product is any document that's prepared in

15  anticipation or furtherance of litigation by the party,

16  the counsel, or a representative.

17           MR. PITCOCK:  My understanding -- and it may

18  be erroneous -- is that there is a distinction drawn

19  between, you know, legal advice, legal -- you know,

20  mental impressions having to do with the legal theory of

21  the case and just factual matter that you put down even

22  in notes, that just because they're created by an

23  attorney doesn't necessarily make them work product.

24           THE COURT:  I don't think that's correct.  I

25  think that the work product doctrine does not protect the

1  information.  It protects documents; and the information,

2  if it's otherwise discoverable, can be obtained through

3  other means.  The mental impressions of counsel are given

4  special protection, and they're not discoverable without

5  some very strong showing that frankly I don't know if

6  I've ever seen but --

7           MR. PITCOCK:  Well, unless they've been

8  waived, your Honor, by communication with a third party.

9  So, if the EFF isn't under a joint claim privilege and

10 they shared any of that information with the EFF, then

11 they have waived their work product privilege.

12          THE COURT:  They would waive their

13 attorney-client privilege by doing that.  I think the

14 work product is not as easily waived as attorney-client.

15 I think that all it takes is some showing that the

16 exchange was the sort of exchange that you would expect

17 parties and lawyers to make in the ordinary pursuit of

18 litigation.  You can exchange documents with experts,

19 with insurance adjusters, with vendors, with lots of

20 people who would not be within the scope of the

21 attorney-client privilege but are taken not to waive work

22 product privilege -- we'll call it, even though I don't

23 know that it's technically a privilege -- but work

24 product protection under Rule 26.

25          But I -- anyway, if --

Claim Construction Hearing

1        MR. PITCOCK:  If -- I'm sorry, your Honor.

2        THE COURT:  Well, I guess I'm trying to

3   distinguish if what you're after here is a very specific

4   sort of document, I -- maybe what I need to find out is

5   from the plaintiff -- I mean from the defense whether

6   they're -- whether they are withholding any response

7   whatsoever or only withholding certain kinds of

8   documents.  Let me hear from them first.

9        MS. AINSWORTH:  Your Honor, Jennifer Ainsworth

10  on behalf of the defendants.  And I would point out just

11  procedurally that this motion was brought against

12  Defendants NBC and CBS, I believe, because there was a

13  discussion about FOX.

14        For the big picture, your Honor, the plaintiff

15  filed this motion to compel seeking discovery -- telling

16  the court that they're seeking discovery on whether the

17  defendants are the real parties in interest with this

18  organization the EFF for purposes of possible estoppel.

19  The problem is that they're moving to compel an answer to

20  an interrogatory, and that interrogatory doesn't even ask

21  that question.  Instead, what they're seeking is a

22  narrative description of communications regarding prior

23  art which -- and they admit in their motion that this is

24  work product communication with a party that we believe

25  we share a common legal interest.  So, therefore, we

1  believe that it's privileged communication.  So, there's

2  not a request for production involved here; but, instead,

3  they've asked us for a narrative description of counsel's

4  discussions with the EFF.  And if the court has a

5  particular question, I'll address that; or I can talk in

6  more general terms.

7          But there is one other procedural issue that

8  we wanted to update the court on because there was one

9  change in circumstance from the time that we filed our

10  response on Friday, which was that we learned late Friday

11  that the patent trial and appeal board of the PTO had

12  instituted or accepted the IPR.  In our response we had

13  informed the court that that request was still pending,

14  but then we learned later it had been accepted.  So, on

15  Monday we filed a notice with the court, which is Docket

16  No. 112, that showed that it was accepted.

17          And we will be preparing or we prepared a

18  motion to stay this proceeding on that basis.  We'll be

19  meeting and conferring with the plaintiffs on that later.

20  But just that procedural point, we wanted to update the

21  court on.

22          THE COURT:  All right.  Other than the other

23  defendants in this litigation and perhaps the EFF, are

24  there other persons or entities with whom there have been

25  communications that fall within the description in this

1  interrogatory?

2       MS. AINSWORTH:  Your Honor, there probably

3  have been communications with other third parties -- for

4  instance, potential prior art witnesses -- but those

5  aren't -- those were the subject of the interrogatory but

6  we met and conferred in person back in February on this

7  and several weeks -- six weeks or so later we got this

8  motion which appears to have moved away from those other

9  issues they were asking about and solely focused on the

10  discussion -- or any communications with the EFF with

11  regard to prior art.

12       THE COURT:  Okay.

13       MS. AINSWORTH:  So, I believe that's the scope

14  of the motion.

15       THE COURT:  All right.  Thank you.  Let me let

16  Mr. Pitcock speak to that.  Thank you, Ms. Ainsworth.

17       MR. PITCOCK:  So, your Honor, they've produced

18  all their communications directly with third-party

19  witnesses.  So, there's no reason to describe them in

20  response to our interrogatory or move to compel them.  As

21  far as we know, they're not trying to withhold any of

22  their direct communications with third-party witnesses on

23  work product.  It's only apparently their communications

24  with the EFF which, you know, it's obviously directly

25  relevant since they're seeking now to stay this case, you

Claim Construction Hearing

1  know, in light of the IPR grant, you know, and if in fact

2  these communications aren't privileged and they should be

3  responding to the interrogatories to let us show that one

4  of the defendants might have been a real party in

5  interest, it could stop the IPR altogether and certainly

6  render their motion for stay moot.

7          THE COURT:  Well, I am going to deny the

8  motion to compel at this point.  I think the only

9  relevance it has at this stage to this case is premature.

10 I will, however, state for the record that I would direct

11 NBC and CBS to preserve the documents that are identified

12 in the interrogatory.  In the event that the IPR results

13 in an outcome that puts the collateral estoppel effect at

14 issue, you can re-urge your motion and we'll take it up

15 at that time.

16          So, what I want to do is avoid the possibility

17 that the discovery is allowed at a later date and the

18 defendants represent that the documents have not been

19 maintained in between.

20          MS. AINSWORTH:  We will certainly do that,

21 your Honor.

22          THE COURT:  All right.  Well, that disposes of

23 that motion; and we will issue a claim construction

24 ruling as soon as possible.  I appreciate your

25 attendance.  Thank you.

1        Ms. Ainsworth, is there anything else?

2        MS. AINSWORTH:  I'm sorry, your Honor.

3   Everybody already stood up.

4        There was one minor housekeeping matter that

5   I'd like to bring to the court's attention to just flag

6   an issue for your Honor.

7        THE COURT:  Go ahead.

8        MS. AINSWORTH:  And this is several months

9   out.  But we received an order or a notice from the court

10  the other day which moved the jury selection date to the

11  second week of September, I believe September 8th; and

12  because of that we just wanted to mention to the court

13  that when the court is looking at the trial date for this

14  case, there are dates later in September during which NBC

15  and CBS and FOX's lead counsel and other counsel have

16  religious holidays and would not be able to participate

17  in trial.  Those would begin around September 24th.  And

18  we know this is a long time off, but we didn't want to

19  surprise the court with that at the last minute.  So, we

20  just wanted to alert you to that at this point.

21       THE COURT:  And I appreciate that.  Certainly

22  that's something that could affect where we put this case

23  in the order of cases on that September 8 docket.  I'll

24  note at that time that you have brought it to our

25  attention now.

1              MS. AINSWORTH:  Thank you, your Honor.

2              THE COURT:  Thank you.

3              All right.  Thank you, and we're adjourned.

4              (Proceedings adjourned, 12:02 p.m.)

5

6    COURT REPORTER'S CERTIFICATION

7              I HEREBY CERTIFY THAT ON THIS DATE, MAY 8,

8    2014, THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

9    RECORD OF PROCEEDINGS.

10

11

12                        /s/
                   TONYA JACKSON, RPR-CRR
13

14

15

16

17

18

19

20

21

22

23

24

25

## $

**$15** [1] - 32:20

## '

**'504** [2] - 12:1, 12:14
**'alkaline** [1] - 12:8
**'downloading** [1] - 22:5
**'downloading'** [1] - 34:12, 35:19
**'one'** [2] - 87:21, 87:23
**'selecting** [1] - 86:21
**'streamed'** [1] - 22:2
**'streaming** [1] - 35:21

## /

**/s** [1] - 107:12

## 0

**02110** [1] - 1:25

## 1

**1** [18] - 1:9, 16:15, 16:18, 24:6, 24:10, 24:16, 24:23, 25:7, 26:15, 37:23, 40:4, 43:6, 51:12, 58:7, 75:8, 75:12
**1-minute-and-26-second** [1] - 26:13
**10** [1] - 89:11
**10036** [1] - 1:19
**101** [3] - 11:9, 31:17, 31:19
**103** [2] - 11:10, 31:1
**10:38** [1] - 65:19
**10:55** [1] - 65:19
**10th** [1] - 97:21
**11** [1] - 17:5
**112** [1] - 103:16
**1127** [1] - 1:16
**113** [1] - 2:2
**124** [1] - 1:9
**125** [2] - 1:24, 51:12
**12:02** [1] - 107:4
**12TH** [1] - 1:19
**13** [1] - 24:18
**131** [2] - 16:21, 17:6
**132** [1] - 16:22
**133** [2] - 16:23, 17:8
**14** [3] - 32:2, 32:5, 41:18
**14TH** [1] - 2:10
**15** [2] - 32:2, 41:9
**1501** [1] - 1:19
**16** [2] - 41:9, 71:3
**18** [1] - 51:5
**19** [5] - 3:6, 20:13, 21:22, 93:19, 93:20
**1997** [1] - 21:19

## 2

**2** [7] - 28:18, 28:19, 29:18, 29:19, 32:10, 43:7
**20005** [1] - 2:11
**2013** [1] - 97:21
**2014** [1] - 1:4, 61:9, 107:8
**21** [2] - 23:15, 93:20
**2195** [1] - 2:19
**22** [3] - 24:15, 34:11, 93:19
**220** [1] - 1:16
**22nd** [1] - 26:5
**23** [4] - 24:6, 24:11, 24:18, 24:22, 24:23, 25:7
**239** [1] - 2:23
**24** [3] - 1:4, 25:3, 93:19
**24th** [1] - 106:17
**25** [1] - 25:19
**26** [5] - 26:15, 26:24, 28:22, 28:23, 101:24
**27** [1] - 28:19
**2:13-13** [1] - 4:4
**2:13CV13** [1] - 1:3

## 3

**3** [5] - 67:20, 75:3, 75:6, 75:8, 75:12
**30** [1] - 30:23
**300** [1] - 2:23
**304** [4] - 51:10, 55:7, 58:1, 58:2
**31** [29] - 7:20, 7:21, 7:23, 37:21, 38:1, 40:21, 40:23, 44:4, 44:5, 49:14, 49:19, 49:23, 51:25, 52:10, 54:13, 57:4, 58:17, 59:19, 60:3, 72:19, 74:21, 74:25, 75:13, 78:1, 78:19, 83:16, 93:3, 95:24
**32** [1] - 7:25
**323** [1] - 2:13
**333** [1] - 2:5
**34** [1] - 7:25
**35** [1] - 34:6
**36** [1] - 36:23
**38** [2] - 37:21, 38:2
**39** [4] - 11:5, 83:12, 83:17, 85:9

## 4

**4** [4] - 11:4, 55:7, 58:2, 58:6
**400** [1] - 2:13
**410** [1] - 1:22
**42** [1] - 3:7
**44** [1] - 45:9
**45** [2] - 30:24, 44:3
**47TH** [1] - 2:5

## 5

**5** [1] - 30:24

**50** [6] - 83:12, 83:17, 84:3, 85:9, 85:13, 95:24
**51** [6] - 55:24, 83:20, 84:1, 84:3, 84:8, 85:14
**52** [1] - 74:14
**53** [2] - 3:8, 30:24
**55** [1] - 51:5
**58** [1] - 30:9
**5950** [1] - 1:21

## 6

**6** [4] - 11:19, 11:23, 17:5, 71:14
**6000** [1] - 2:16
**607** [1] - 2:10
**63** [2] - 32:5, 32:7
**65** [3] - 3:9, 72:15, 76:20
**68** [1] - 74:5

## 7

**7** [2] - 30:9, 93:19
**74** [1] - 83:5
**75** [1] - 86:4
**75202** [1] - 2:17
**75225** [1] - 1:22
**75606** [1] - 1:17
**75671** [1] - 2:3
**75711** [1] - 2:14
**77** [1] - 3:10
**77701** [1] - 2:23
**77706** [1] - 2:19

## 8

**8** [10] - 3:4, 3:5, 22:11, 24:6, 24:11, 24:23, 25:7, 37:24, 106:23, 107:7
**800** [1] - 2:10
**82** [1] - 93:12
**83** [1] - 93:13
**88** [1] - 34:11
**8th** [1] - 106:11

## 9

**9** [2] - 17:5, 66:12
**90071** [1] - 2:6
**901** [1] - 2:16
**909** [1] - 2:13
**97** [2] - 3:13, 30:15
**9:04** [1] - 1:6

## A

**a.m** [2] - 65:19
**A.M** [1] - 1:6

**ability** [1] - 25:21
**able** [3] - 29:22, 47:23, 106:16
**absolutely** [5] - 13:19, 16:6, 23:9, 91:4, 94:5
**abstract** [2] - 43:15, 60:11
**abstracted** [1] - 63:5
**abstraction** [4] - 62:23, 63:5, 63:23, 64:24
**academic** [1] - 58:11
**accepted** [3] - 103:12, 103:14, 103:16
**access** [3] - 60:13, 60:16, 99:16
**accessible** [9] - 47:12, 51:13, 52:25, 53:3, 55:16, 55:17, 56:10, 58:5, 95:12
**accompanied** [1] - 17:7
**accompany** [2] - 16:12, 17:10
**accordance** [2] - 28:25, 29:17
**accused** [1] - 86:18
**ACOSTA** [21] - 2:15, 5:8, 54:5, 56:1, 57:6, 61:21, 62:4, 62:21, 63:14, 64:2, 64:16, 64:20, 65:1, 90:17, 91:12, 92:9, 92:15, 92:18, 93:6, 95:21, 96:19
**Acosta** [7] - 5:9, 5:11, 51:5, 54:6, 65:2, 90:17, 95:17
**action** [3] - 67:21, 72:5, 98:23
**actual** [1] - 93:23
**Adam** [2] - 5:13, 33:20
**add** [9] - 8:19, 42:5, 68:22, 68:24, 70:15, 73:25, 82:12, 88:25, 94:17
**added** [4] - 8:15, 23:5, 68:25, 70:13
**adding** [5] - 19:4, 63:25, 64:18, 65:11, 74:1
**addition** [7] - 16:24, 18:24, 29:2, 46:20, 88:17, 95:3, 97:13
**additional** [5] - 22:20, 51:21, 73:12, 74:22, 96:10
**address** [31] - 6:22, 7:14, 8:24, 15:24, 19:13, 24:8, 30:19, 43:7, 45:20, 46:7, 46:17, 48:1, 48:6, 48:7, 52:4, 52:5, 53:16, 66:16, 75:17, 76:14, 76:18, 77:10, 77:23, 77:25, 88:24, 95:18, 97:15, 97:16, 97:18, 98:2, 103:5
**addressed** [6] - 8:22, 14:11, 20:9, 74:6, 79:2, 86:5
**addresses** [1] - 14:3
**addressing** [4] - 71:2, 73:6, 90:18, 92:7
**adjourned** [2] - 107:3, 107:4
**adjusters** [1] - 101:19
**administrative** [1] - 98:7
**admit** [3] - 49:19, 80:19, 102:23
**admitted** [2] - 42:8, 48:10
**adopt** [1] - 73:13
**adopted** [2] - 24:4, 91:6
**advance** [1] - 70:9
**advanced** [2] - 14:8, 37:23
**advertising** [2] - 16:4, 16:10
**advice** [1] - 100:19
**affect** [1] - 106:22
**afraid** [1] - 64:16

**agnostic** [1] - 73:4
**agree** [13] - 27:17, 35:22, 42:3, 42:14, 44:18, 50:1, 69:6, 70:12, 73:22, 78:7, 84:11, 84:13, 88:13
**agreed** [2] - 71:17, 86:20
**agreement** [2] - 10:1, 27:15
**agrees** [1] - 42:21
**ahead** [5] - 6:21, 36:12, 52:17, 89:2, 106:7
**AIDED** [1] - 2:25
**AINSWORTH** [11] - 2:12, 4:13, 4:19, 4:21, 102:9, 104:2, 104:13, 105:20, 106:2, 106:8, 107:1
**Ainsworth** [5] - 4:14, 5:1, 102:9, 104:16, 106:1
**airplane** [3] - 21:1, 21:10, 21:16
**AL** [1] - 1:7
**alert** [1] - 106:20
**alkaline** [2] - 12:6, 19:1
**ALL** [1] - 4:1
**allow** [6] - 7:10, 29:9, 32:25, 84:15, 87:7, 94:3
**allowable** [1] - 37:22
**allowance** [5] - 68:8, 68:11, 75:19, 75:22, 75:25
**allowed** [2] - 39:1, 105:17
**almost** [1] - 65:7
**alone** [3] - 13:24, 42:16, 56:19
**ALSO** [1] - 2:20
**alternatives** [1] - 55:19
**altogether** [2] - 99:1, 105:5
**Amazon** [1] - 46:14
**amendments** [2] - 41:11, 41:12
**AND** [4] - 2:7, 3:9, 3:11, 3:11
**ANGELES** [1] - 2:6
**announcements** [1] - 16:23
**answer** [9] - 34:6, 38:13, 43:5, 43:11, 50:8, 53:10, 64:13, 94:5, 102:19
**ANSWER** [3] - 34:14, 34:19, 34:24
**answered** [2] - 46:5, 99:9
**antecedent** [5] - 19:21, 83:11, 84:5, 84:6, 85:9, 85:19
**anticipation** [1] - 100:15
**anytime** [1] - 44:21
**anyway** [5] - 27:19, 40:7, 40:9, 53:9, 101:25
**apologize** [2] - 53:18, 65:23
**apparatus** [3] - 41:1, 66:19, 66:20
**appeal** [1] - 103:11
**appear** [7] - 10:6, 10:7, 27:24, 42:6, 54:12, 69:3, 79:9
**appearances** [1] - 4:5
**APPEARANCES** [1] - 1:14
**appeared** [2] - 19:15, 35:3
**Apple** [1] - 20:23
**applicable** [1] - 83:8
**application** [2] - 20:10, 20:16
**applies** [1] - 45:4
**apply** [3] - 37:24, 37:25, 69:17

**appreciate** [8] - 6:10, 18:4, 38:14, 70:22, 82:21, 88:11, 105:24, 106:21
**approach** [1] - 68:19
**approaches** [1] - 66:8
**appropriate** [2] - 19:25, 98:22
**APRIL** [1] - 1:4
**April** [1] - 26:5
**area** [1] - 9:18
**areas** [1] - 51:13
**argue** [9] - 30:19, 31:4, 38:25, 39:23, 45:4, 60:21, 61:4, 62:12, 70:18
**argued** [4] - 54:15, 56:4, 75:18, 90:25
**arguing** [10] - 8:18, 18:19, 49:23, 56:3, 56:7, 56:11, 56:12, 56:23, 89:18, 95:22
**argument** [33] - 5:22, 6:4, 14:8, 15:7, 15:16, 15:25, 24:3, 24:7, 25:9, 33:10, 33:14, 35:3, 35:22, 36:23, 36:24, 39:2, 39:22, 40:7, 40:20, 41:7, 41:17, 42:2, 48:4, 61:17, 65:7, 66:18, 67:4, 72:15, 79:8, 83:9, 86:25, 90:16
**arguments** [4] - 6:11, 40:3, 40:5, 42:1
**arrow** [1] - 58:3
**art** [31] - 23:23, 23:25, 33:20, 36:1, 37:16, 37:22, 38:20, 38:23, 40:13, 41:14, 42:7, 48:11, 53:11, 65:13, 67:8, 69:24, 69:25, 70:6, 70:7, 76:1, 76:7, 77:6, 99:4, 99:6, 99:12, 99:19, 100:1, 100:2, 102:23, 104:4, 104:11
**article** [3] - 21:19, 21:22, 36:19
**articulate** [1] - 43:1
**aspect** [2] - 88:13, 88:15
**aspects** [2] - 17:21, 88:12
**assembled** [10] - 67:2, 67:3, 67:18, 68:6, 68:16, 70:19, 71:5, 72:12, 74:2, 74:10
**assembling** [2] - 67:23, 72:6
**assembly** [2] - 68:5, 75:15
**asserted** [2] - 7:21, 25:13
**assigned** [1] - 72:21
**assigns** [1] - 72:18
**associated** [2] - 46:12, 46:16
**AstraZeneca** [10] - 11:22, 11:25, 12:1, 13:4, 13:12, 14:17, 15:5, 15:8, 15:18, 18:22
**attached** [1] - 22:11
**attempt** [2] - 44:13, 53:20
**attempted** [1] - 23:23
**attempting** [1] - 43:7
**attendance** [1] - 105:25
**ATTENDANCE** [1] - 2:20
**attention** [2] - 106:5, 106:25
**attorney** [5] - 100:5, 100:23, 101:13, 101:14, 101:21
**attorney-client** [3] - 101:13, 101:14, 101:21
**attribute** [1] - 83:24
**audience** [1] - 69:15
**AUDIO** [3] - 1:3, 1:15, 2:20
**audio** [34] - 8:14, 8:19, 8:21, 8:25, 9:24, 10:12, 10:25, 11:9, 11:14, 11:15,

12:16, 12:17, 12:24, 14:10, 16:8, 16:12, 16:13, 16:20, 16:24, 17:2, 17:6, 17:9, 18:1, 18:13, 18:19, 18:20, 19:4, 22:2, 22:6, 25:21, 25:22, 29:22, 69:7

**Audio** [18] - 4:3, 8:16, 14:9, 15:25, 22:10, 24:3, 26:8, 26:17, 30:25, 31:25, 33:7, 37:18, 37:19, 38:4, 38:10, 42:25, 46:11, 75:3

**Audio's** [2] - 14:3, 44:17

**AUSTIN** [1] - 2:2

**authenticity** [1] - 27:18

**automatically** [1] - 12:16

**automobile** [2] - 30:8, 30:10

**available** [11] - 29:5, 32:9, 32:10, 32:22, 66:4, 66:23, 72:24, 77:15, 77:16, 77:17, 99:13

**AVENUE** [1] - 2:5

**avoid** [1] - 105:16

**awhile** [1] - 32:21

## B

**Bally** [2] - 87:1, 89:15

**BARTOLOMEI** [1] - 1:21

**based** [3] - 5:25, 57:16, 60:21

**baseline** [1] - 46:23

**basic** [4] - 43:5, 46:18, 47:1, 61:7

**basis** [11] - 6:11, 13:24, 19:21, 35:25, 37:16, 83:11, 84:5, 84:6, 85:9, 85:20, 103:18

**BEAUMONT** [2] - 2:19, 2:23

**become** [2] - 66:23, 72:24

**BEFORE** [1] - 1:11

**begin** [3] - 8:4, 9:19, 106:17

**beginning** [3] - 15:3, 32:7, 85:13

**behalf** [6] - 4:14, 8:4, 42:11, 82:22, 97:16, 102:10

**belief** [1] - 6:1

**BERKSHIRE** [1] - 1:21

**best** [1] - 21:6

**better** [3] - 6:6, 80:25, 81:23

**between** [16] - 8:13, 9:20, 11:8, 17:9, 17:12, 18:21, 19:5, 21:20, 21:25, 36:20, 39:11, 44:16, 55:2, 62:9, 100:19, 105:19

**beyond** [1] - 51:20

**big** [1] - 102:14

**binder** [4] - 65:24, 65:25, 66:12, 71:13

**bit** [8] - 16:17, 43:18, 51:6, 54:7, 62:22, 75:25, 97:24

**board** [1] - 103:11

**body** [5] - 13:18, 13:20, 13:23, 13:25

**boilerplate** [1] - 38:5

**bolstered** [1] - 60:4

**book** [2] - 20:14, 67:22

**books** [1] - 48:12

**BOSTON** [1] - 1:25

**bother** [1] - 82:2

**bottom** [2] - 32:1, 95:25

boundaries [1] - 9:18

**box** [7] - 29:19, 29:20, 29:25, 40:16, 58:3, 58:6

**boxes** [2] - 56:20, 58:8

**BRAD** [1] - 2:20

**Brad** [1] - 4:8

**breadth** [1] - 65:15

**breaks** [3] - 20:23, 79:15, 80:6

**BRIAN** [1] - 2:9

**Brian** [4] - 4:21, 20:13, 28:21, 45:9

**brief** [18] - 10:14, 14:3, 16:1, 21:19, 29:8, 33:11, 33:12, 36:15, 41:9, 42:7, 62:24, 67:11, 73:21, 74:7, 74:11, 89:4, 93:16, 94:9

**briefing** [11] - 11:21, 39:13, 55:3, 65:8, 65:25, 71:12, 71:23, 75:1, 75:2, 75:3, 91:18

**briefly** [7] - 6:8, 14:16, 18:11, 41:6, 53:19, 76:17, 88:24

**briefs** [3] - 5:25, 7:19, 62:11

**bring** [5] - 56:19, 85:3, 85:16, 85:22, 106:5

**bringing** [4] - 85:2, 85:15, 85:17, 85:24

**broad** [12] - 12:18, 13:8, 13:9, 13:19, 14:21, 15:1, 15:14, 15:23, 37:6, 83:18

**broadcast** [1] - 26:5

**Broadcasting** [1] - 4:15

**broadcasting** [1] - 26:5

**broader** [7] - 12:13, 12:21, 15:9, 15:22, 53:21, 69:10, 73:9

**BROADWAY** [1] - 1:19

**broken** [1] - 81:24

**broken-out** [1] - 81:24

**brought** [2] - 102:11, 106:24

**BROWNE** [1] - 1:21

**browser** [2] - 53:5, 53:7

**buffer** [5] - 32:25, 33:4, 39:5, 41:17, 41:19

**buffers** [1] - 41:20

**build** [1] - 59:12

**built** [2] - 10:3, 14:23

**bullet** [2] - 28:23, 71:6

**bunch** [1] - 59:11

**burden** [1] - 14:24

**BURG** [1] - 2:2

**BURNS** [1] - 1:24

**buttresses** [1] - 36:25

**buy** [1] - 32:18

## C

**calendar** [1] - 47:13

**California** [1] - 98:4

**CALIFORNIA** [1] - 2:6

**camera** [1] - 90:20

**Canadian** [1] - 26:5

**cannot** [1] - 60:13

**car** [1] - 29:10

**Carolla** [1] - 5:14

**cartridge** [2] - 25:5, 25:6

**cartridges** [1] - 39:14

**case** [36] - 6:20, 11:22, 11:23, 12:6, 13:6, 15:8, 15:17, 15:18, 18:9, 18:21, 21:24, 22:11, 24:12, 25:20, 33:17, 37:9, 38:6, 50:16, 56:24, 79:23, 79:24, 86:24, 87:4, 89:5, 90:4, 98:10, 99:13, 100:2, 100:4, 100:21, 104:25, 105:9, 106:14, 106:22

**Case** [1] - 4:4

**cases** [9] - 11:22, 13:9, 14:13, 14:16, 14:18, 14:25, 19:5, 67:10, 106:23

**catalog** [1] - 29:20

**CBS** [7] - 2:7, 2:21, 4:14, 4:23, 102:12, 105:11, 106:15

**CEO** [1] - 4:9

**certain** [4] - 33:19, 66:20, 79:12, 102:7

**certainly** [6] - 15:18, 38:7, 89:7, 94:20, 105:5, 105:20

**Certainly** [2] - 87:20, 106:21

**CERTIFICATION** [1] - 107:6

**CERTIFY** [1] - 107:7

**cetera** [3] - 26:1, 58:7, 66:1

**chance** [1] - 89:2

**change** [2] - 64:1, 103:9

**characterize** [1] - 24:8

**Chaudhari** [2] - 4:9, 66:7

**CHAUDHARI** [1] - 1:20

**choose** [1] - 16:25

**chose** [1] - 75:9

**Circuit** [12] - 9:9, 12:6, 12:10, 13:24, 15:2, 15:16, 33:13, 67:10, 86:5, 86:19, 87:14, 87:20

**Circuit's** [1] - 68:20

**circumstance** [1] - 103:9

**circumstances** [1] - 75:9

**citation** [1] - 71:18

**cite** [9] - 11:21, 14:13, 18:16, 33:10, 39:1, 53:24, 68:9, 71:23, 77:1

**cited** [9] - 10:14, 31:25, 36:20, 42:23, 67:11, 71:3, 71:6, 71:12, 93:15

**cites** [2] - 29:7, 30:25, 33:7, 39:9

**citing** [4] - 18:15, 72:1, 72:10

**claim** [197] - 4:3, 6:15, 6:19, 7:20, 7:21, 7:23, 7:24, 8:9, 9:10, 9:11, 10:7, 12:4, 12:12, 12:18, 13:6, 13:7, 13:9, 13:19, 13:25, 14:21, 14:22, 14:25, 15:7, 15:9, 15:10, 15:11, 15:14, 15:15, 15:22, 15:23, 16:11, 17:3, 21:18, 22:21, 23:3, 23:15, 24:7, 24:9, 24:10, 24:11, 24:16, 24:18, 24:22, 25:15, 27:10, 34:13, 36:15, 37:21, 38:1, 40:4, 40:21, 40:23, 41:1, 41:9, 43:20, 44:4, 44:5, 44:10, 44:25, 45:5, 45:15, 45:19, 45:24, 48:25, 49:4, 49:14, 49:19, 49:23, 51:25, 52:10, 53:21, 54:13, 56:8, 57:4, 57:16, 58:17, 59:19, 60:3, 61:13, 63:8, 63:16, 63:17, 63:20, 64:22, 66:18, 66:19, 67:11, 67:19, 68:3, 68:14, 68:19, 68:21, 68:25, 69:2, 70:20, 71:7, 71:8, 71:13, 71:19,

71:20, 71:22, 71:24, 72:10, 72:16,
72:18, 72:19, 73:1, 73:7, 73:9, 73:13,
73:20, 73:21, 74:3, 74:21, 74:25, 75:3,
75:6, 75:8, 75:10, 75:12, 75:13, 76:15,
77:4, 78:1, 78:4, 78:10, 78:14, 78:18,
79:8, 79:11, 79:19, 80:1, 80:4, 80:13,
80:18, 80:21, 80:23, 81:11, 81:13,
81:23, 83:12, 83:16, 84:10, 84:15,
84:22, 85:6, 85:8, 85:21, 86:3, 86:13,
86:19, 87:1, 87:6, 87:15, 87:21, 89:10,
89:15, 89:22, 90:4, 90:7, 91:1, 91:8,
91:9, 91:19, 91:22, 91:25, 92:5, 92:10,
92:13, 92:21, 93:3, 93:7, 94:3, 94:11,
94:20, 95:23, 95:24, 96:21, 96:25,
97:10, 97:13, 101:9, 105:23

**CLAIM** [1] - 1:10
**claimed** [3] - 41:14, 75:11, 94:14
**claiming** [2] - 10:10, 47:20
**claims** [34] - 7:21, 7:23, 10:2, 13:11,
13:25, 17:1, 24:6, 24:12, 24:13, 24:23,
25:7, 25:13, 28:14, 30:17, 37:23, 37:25,
39:17, 43:24, 44:20, 47:24, 54:16,
56:13, 58:15, 61:12, 62:8, 63:4, 63:7,
69:17, 70:10, 80:20, 81:21, 86:14, 99:4
**Clanton** [2] - 23:21, 40:13
**Clanton's** [1] - 40:16
**clarified** [1] - 91:13
**clarify** [3] - 43:1, 62:21, 96:24
**clarifying** [1] - 64:8
**clear** [27] - 10:11, 10:12, 16:7, 17:11,
21:19, 22:18, 23:6, 25:20, 28:19, 29:8,
31:8, 41:13, 44:20, 45:25, 49:2, 50:17,
50:22, 55:22, 56:2, 56:8, 64:21, 67:15,
73:1, 78:19, 80:3, 80:10, 93:7
**clearly** [11] - 14:18, 16:15, 16:19,
18:14, 27:4, 43:18, 45:15, 74:18, 75:11,
83:6, 88:1
**click** [1] - 32:24
**client** [11] - 22:22, 40:25, 96:2, 96:4,
97:2, 97:3, 97:5, 97:8, 101:13, 101:14,
101:21
**clip** [5] - 22:2, 22:3, 22:6, 26:13, 74:16
**closely** [1] - 31:6
**closest** [1] - 76:1
**closet** [1] - 85:12
**co** [1] - 26:10
**co-owner** [1] - 26:10
**coining** [1] - 13:3
**collateral** [1] - 105:13
**collected** [2] - 67:23, 72:7
**color** [3] - 54:24, 57:20, 58:23
**column** [22] - 11:4, 17:5, 30:9, 30:24,
32:2, 32:5, 41:18, 51:5, 83:12, 83:17,
83:20, 84:1, 84:3, 84:8, 85:9, 85:13,
85:14, 93:19, 95:24
**columns** [1] - 74:14
**combination** [1] - 86:22
**command** [15] - 68:20, 87:2, 87:7,
87:8, 87:11, 87:13, 87:14, 87:22, 87:23,
87:24, 89:8, 89:9, 89:14, 89:16

**commands** [4] - 87:15, 87:17, 87:25,
89:12
**comment** [2] - 65:6, 65:16
**comments** [1] - 71:2
**common** [1] - 102:25
**commonly** [2] - 20:18, 20:19
**communicated** [1] - 99:3
**COMMUNICATION** [1] - 3:11
**communication** [39] - 29:4, 79:9,
79:12, 80:5, 80:14, 80:24, 81:10, 81:15,
81:19, 82:3, 82:5, 82:14, 83:7, 83:10,
83:13, 83:14, 83:19, 84:2, 84:23, 84:25,
85:10, 85:25, 88:16, 89:24, 90:9, 91:21,
91:23, 92:1, 92:5, 92:22, 93:8, 94:4,
95:14, 96:1, 96:20, 96:22, 101:8,
102:24, 103:1
**communications** [15] - 11:8, 32:8,
98:16, 99:8, 99:14, 99:22, 100:6,
102:22, 103:25, 104:3, 104:10, 104:18,
104:22, 104:23, 105:2
**company** [1] - 26:5
**Company** [1] - 4:16
**compare** [1] - 28:5
**compared** [1] - 13:15
**comparing** [1] - 92:13
**compel** [6] - 97:14, 97:18, 102:15,
102:19, 104:20, 105:8
**COMPEL** [1] - 3:13
**Compilation** [2] - 67:6, 77:4
**COMPILATION** [1] - 3:9
**compilation** [56] - 44:1, 44:2, 45:1,
57:17, 59:20, 60:1, 60:23, 63:18, 64:5,
65:21, 66:16, 66:24, 67:2, 67:3, 67:17,
67:21, 67:25, 68:3, 68:5, 68:13, 68:15,
69:18, 69:21, 70:8, 70:13, 70:18, 71:4,
71:10, 71:15, 72:2, 72:5, 72:25, 73:3,
73:5, 73:8, 73:10, 73:11, 73:22, 73:24,
74:1, 74:9, 74:24, 75:6, 75:14, 75:15,
76:4, 76:9, 76:23, 77:2, 77:7, 77:12,
77:14, 77:18, 83:21, 83:22, 83:25
**compilationfiles** [1] - 59:15
**compile** [1] - 77:20
**compiled** [6] - 67:17, 70:16, 70:19,
71:5, 72:12, 77:12
**compiling** [6] - 67:16, 72:8, 74:17,
76:25, 77:13, 77:15
**complaint** [1] - 98:13
**complete** [1] - 22:5
**completely** [4] - 27:20, 36:18, 73:4,
74:3
**comply** [1] - 27:25
**component** [1] - 37:12
**computer** [12] - 11:9, 22:4, 22:7,
22:15, 22:16, 46:13, 46:14, 48:20, 53:8,
75:16, 77:13, 77:19
**COMPUTER** [1] - 2:25
**COMPUTER-AIDED** [1] - 2:25
**COMPUTERIZED** [1] - 2:24
**conceivable** [2] - 81:18, 95:13
**concentrated** [1] - 18:24

**concentration** [1] - 19:24
**concept** [3] - 10:6, 17:25, 74:1
**concern** [2] - 47:5, 95:9
**concerned** [1] - 50:10
**concerning** [1] - 54:10
**concerns** [1] - 96:14
**conclude** [1] - 47:5
**concluded** [1] - 12:10
**conclusions** [1] - 5:25
**concurrently** [1] - 32:14
**conduct** [2] - 84:7, 84:23
**confer** [1] - 27:14
**conferred** [1] - 104:6
**conferring** [1] - 103:19
**confirmation** [1] - 22:9
**confirmed** [1] - 37:13
**confirms** [1] - 17:16
**confusion** [2] - 19:18, 49:6
**connect** [1] - 32:9
**connected** [2] - 83:5, 92:1
**consequences** [1] - 38:8
**consider** [2] - 28:11, 36:6
**considered** [1] - 36:10
**consist** [2] - 18:13, 18:16
**consistent** [6] - 30:13, 36:18, 44:5,
60:5, 68:19, 79:22
**consisting** [1] - 5:13
**constitute** [1] - 58:10
**constitutes** [1] - 52:5
**CONSTRUCTION** [1] - 1:10
**construction** [54] - 4:3, 7:12, 8:10,
8:16, 9:5, 10:1, 10:4, 21:18, 22:17,
22:18, 22:21, 23:1, 24:4, 27:11, 33:8,
34:13, 35:9, 36:15, 41:9, 42:3, 42:24,
43:9, 43:15, 44:8, 44:22, 45:7, 45:8,
45:10, 45:16, 47:8, 59:23, 60:4, 62:19,
64:21, 65:11, 67:20, 68:19, 71:7, 71:8,
71:14, 71:19, 71:20, 71:22, 71:24,
72:10, 73:13, 78:25, 81:15, 83:4, 84:10,
84:12, 84:21, 91:1, 91:7, 95:6, 95:18,
96:17, 97:14, 105:23
**constructions** [3] - 5:19, 5:21, 5:24
**construe** [1] - 43:4
**construed** [3] - 19:14, 54:17, 79:4
**construing** [1] - 92:17
**consumer** [1] - 22:3
**consumer's** [2] - 22:3, 22:7
**contain** [2] - 18:19, 67:15
**contained** [7] - 34:9, 65:8, 66:12,
83:24, 96:7, 96:8, 100:10
**containing** [2] - 51:9, 55:6
**contains** [1] - 68:13
**contemplate** [1] - 95:1
**contemplated** [2] - 63:7, 95:11
**contemplates** [3] - 80:5, 80:23, 81:17
**contend** [1] - 74:15
**content** [1] - 77:16
**contentions** [2] - 97:23, 99:7
**contents** [1] - 40:18

**context** [8] - 24:9, 33:24, 43:22, 53:11, 74:18, 77:19, 80:22, 91:4
**continue** [2] - 58:12, 60:6
**contrary** [2] - 6:3, 14:13
**contrast** [1] - 22:1
**contrasted** [1] - 22:4
**convenient** [1] - 25:18
**conventional** [1] - 31:1
**conversation** [1] - 14:5
**conveyed** [1] - 100:3
**copied** [1] - 48:19
**copies** [2] - 65:25, 66:2
**copy** [4] - 11:17, 22:5, 22:14, 66:5
**copying** [1] - 48:21
**CORNELIUS** [1] - 2:12
**CORPORATION** [2] - 2:7, 2:21
**Corporation** [1] - 4:15
**CORRECT** [1] - 107:8
**correct** [9] - 8:1, 12:25, 13:2, 83:4, 84:12, 84:22, 88:10, 88:11, 100:24
**Correct** [1] - 92:15
**corresponding** [3] - 58:21, 76:4, 76:10
**coterminous** [2] - 9:4, 9:15
**counsel** [12] - 4:5, 4:9, 4:17, 5:4, 5:18, 99:18, 99:23, 100:7, 100:16, 101:3, 106:15
**counsel's** [1] - 103:3
**couple** [1] - 57:15
**COURT** [129] - 1:1, 2:22, 4:1, 4:2, 4:12, 4:25, 5:6, 5:11, 5:16, 6:16, 6:20, 7:2, 7:8, 7:16, 7:19, 7:25, 8:2, 8:20, 11:20, 12:22, 13:1, 18:4, 18:6, 18:9, 19:7, 19:11, 20:4, 23:7, 25:17, 26:19, 27:2, 27:12, 28:7, 28:17, 35:11, 36:4, 36:12, 38:14, 38:17, 41:4, 41:24, 42:1, 42:9, 44:10, 45:3, 45:20, 47:4, 48:3, 48:24, 49:8, 49:14, 49:22, 50:3, 51:25, 52:12, 52:14, 52:17, 53:14, 54:4, 57:5, 61:16, 62:1, 62:14, 63:8, 63:25, 64:15, 64:18, 64:25, 65:2, 65:17, 65:20, 66:3, 66:6, 66:9, 66:14, 68:18, 69:21, 70:12, 70:21, 70:25, 76:16, 76:19, 77:9, 77:22, 78:24, 80:10, 81:3, 82:2, 82:12, 82:21, 84:13, 84:18, 84:20, 88:8, 88:21, 89:1, 90:15, 91:10, 92:6, 92:12, 92:16, 93:2, 94:8, 94:23, 95:5, 95:9, 95:17, 96:13, 97:12, 97:20, 97:24, 98:1, 98:21, 99:17, 99:22, 100:6, 100:12, 100:24, 101:12, 102:2, 103:22, 104:12, 104:15, 105:7, 105:22, 106:7, 106:21, 107:2, 107:6
**court** [47] - 5:23, 6:5, 8:24, 9:5, 9:20, 11:17, 11:19, 13:20, 16:17, 18:2, 20:14, 22:1, 25:15, 25:18, 26:2, 27:1, 28:2, 28:3, 37:5, 37:8, 38:9, 54:16, 55:8, 55:16, 55:23, 57:13, 61:14, 62:6, 66:2, 86:20, 89:9, 89:25, 90:21, 91:3, 91:6, 96:5, 98:24, 102:16, 103:4, 103:8, 103:13, 103:15, 103:21, 106:9, 106:12, 106:13, 106:19
**court's** [16] - 8:10, 8:15, 9:5, 9:22,

10:1, 10:3, 22:18, 22:21, 23:17, 43:14, 44:7, 46:13, 47:10, 47:13, 48:18, 106:5
**courtroom** [2] - 56:20, 56:21
**Cousins'** [1] - 98:3
**covering** [1] - 17:23
**covers** [1] - 73:9
**create** [1] - 74:24
**created** [4] - 73:5, 73:8, 73:11, 100:22
**creation** [1] - 75:5
**credibility** [2] - 99:11, 99:18
**critical** [2] - 68:8, 90:19
**CRR** [2] - 2:22, 107:12
**CRUTCHER** [1] - 2:4
**crying** [1] - 20:23
**cups** [1] - 64:12
**current** [2] - 29:2, 68:13
**cut** [1] - 6:4

**D**

**DALLAS** [2] - 1:22, 2:17
**Dallas** [1] - 85:1
**Dan** [1] - 4:23
**DAN** [1] - 2:21
**data** [29] - 16:21, 17:23, 18:17, 19:4, 19:16, 19:20, 20:17, 22:14, 25:2, 31:1, 31:10, 31:11, 31:20, 35:23, 39:4, 39:19, 41:8, 43:25, 44:25, 54:3, 59:21, 60:24, 64:3, 68:10, 69:7, 81:14, 83:24, 92:4
**database** [4] - 17:6, 17:8, 17:9, 17:10
**databases** [1] - 16:22
**DATE** [1] - 107:7
**date** [4] - 46:20, 105:17, 106:10, 106:13
**dates** [1] - 106:14
**Davis** [3] - 4:19, 70:23, 76:16
**DAVIS** [7] - 2:8, 4:20, 4:23, 66:5, 70:23, 71:1, 77:10
**DC** [1] - 2:11
**deal** [1] - 58:18
**decides** [1] - 91:3
**declarants** [2] - 100:1, 100:3
**declaration** [3] - 33:20, 33:22, 36:14
**declarations** [1] - 99:25
**defendant** [1] - 68:23
**Defendant** [2] - 5:2, 5:9
**defendants** [26] - 6:18, 8:4, 8:5, 18:6, 38:21, 42:3, 42:12, 54:6, 55:2, 56:3, 62:10, 62:12, 66:4, 70:23, 79:25, 82:22, 89:2, 90:18, 97:22, 99:2, 102:10, 102:17, 103:23, 105:4, 105:18
**Defendants** [2] - 4:14, 102:12
**defendants'** [7] - 42:8, 43:3, 59:23, 60:4, 65:25, 91:7, 93:15
**defense** [2] - 7:11, 102:5
**defer** [1] - 6:15
**define** [6] - 11:13, 16:3, 23:3, 43:18, 46:2, 51:23, 56:15, 65:10, 85:19
**defined** [5] - 9:18, 15:2, 31:4, 60:7,

61:10
**defines** [7] - 10:2, 14:20, 15:23, 16:14, 39:19, 59:4, 85:11
**defining** [5] - 11:12, 51:7, 54:8, 83:14, 85:10
**definitely** [1] - 100:7
**definition** [20] - 21:21, 22:12, 22:13, 31:14, 31:22, 32:21, 44:14, 46:8, 58:13, 59:7, 61:8, 61:20, 67:21, 71:4, 71:8, 71:15, 72:1, 72:2, 72:3, 72:9
**degree** [3] - 53:8, 70:1, 94:10
**delivered** [1] - 22:6
**deny** [1] - 105:7
**dependent** [3] - 7:23, 15:11, 16:11
**deposed** [2] - 33:21, 34:3
**deposition** [6] - 34:10, 35:16, 42:8, 48:10, 66:1, 66:11
**describe** [5] - 11:3, 63:11, 83:13, 94:24, 104:19
**described** [10] - 16:18, 17:20, 26:10, 28:4, 30:13, 51:17, 67:10, 68:16, 83:17, 84:3
**describes** [3] - 69:8, 76:24, 86:15
**describing** [2] - 10:9, 26:15
**description** [8] - 11:5, 51:21, 73:23, 83:18, 97:10, 102:22, 103:3, 103:25
**designed** [1] - 38:5
**desirable** [1] - 29:1
**despite** [1] - 94:13
**detailed** [1] - 11:5
**determine** [3] - 34:22, 67:13, 98:18
**determined** [1] - 64:6
**determining** [2] - 45:15, 45:18
**deviating** [2] - 45:15, 45:18
**device** [24] - 11:10, 19:17, 21:10, 21:15, 22:22, 29:9, 40:7, 40:25, 41:3, 68:10, 86:18, 87:4, 87:9, 87:18, 87:23, 89:8, 89:10, 96:3, 96:4, 97:2, 97:3, 97:5, 97:8
**devices** [9] - 87:3, 87:12, 87:13, 87:16, 87:22, 87:24, 89:13, 89:17, 90:2
**dictate** [1] - 41:2
**dictionary** [2] - 22:12, 22:13
**dictionary's** [1] - 72:2
**difference** [5] - 18:21, 19:5, 21:25, 24:2, 36:20
**different** [28] - 9:11, 9:16, 9:17, 12:3, 17:13, 18:16, 20:12, 30:15, 35:12, 37:11, 37:13, 37:19, 39:1, 44:12, 45:25, 74:20, 78:22, 79:15, 80:7, 81:19, 82:18, 88:5, 90:7, 94:14, 94:15, 95:1, 95:7, 95:14
**differentiation** [5] - 15:8, 15:16, 24:7, 24:10, 39:17
**differing** [1] - 79:1
**Digital** [1] - 5:9
**digital** [7] - 24:15, 24:17, 24:20, 25:8, 35:24, 39:14, 39:15
**DIGITAL** [1] - 2:15
**direct** [5] - 25:14, 55:16, 81:9, 104:22,

105:10
   direction [3] - 31:10, 31:14, 31:22
   directly [7] - 28:15, 63:3, 79:18, 81:10, 99:5, 104:18, 104:24
   directory [3] - 50:18, 50:19, 68:1
   disagree [5] - 8:12, 12:7, 70:17, 84:17, 88:15
   disagreement [2] - 44:20, 46:9
   disc [1] - 25:6
   disclaimed [1] - 35:5
   disclaimer [4] - 35:3, 35:19, 36:23, 37:10
   disclose [1] - 76:3
   disclosed [1] - 26:20
   discloses [1] - 76:1
   discoverable [2] - 101:2, 101:4
   discovery [5] - 98:10, 98:17, 102:15, 102:16, 105:17
   discrete [2] - 87:16, 89:13
   discussed [1] - 96:5
   discussing [1] - 36:20
   discussion [6] - 6:15, 21:23, 42:13, 72:17, 102:13, 104:10
   discussions [1] - 103:4
   disfavored [1] - 33:13
   disposes [1] - 105:22
   dispute [27] - 8:7, 8:13, 9:19, 12:19, 16:5, 18:18, 19:15, 43:19, 43:21, 44:15, 46:1, 51:16, 52:4, 54:8, 54:9, 54:10, 54:20, 54:25, 58:24, 62:9, 88:12, 89:6, 90:24, 91:2, 91:4, 91:13
   disputed [1] - 79:13
   disputes [4] - 9:2, 54:14, 56:3, 88:19
   disregarded [1] - 38:6
   distinct [1] - 20:16
   distinction [6] - 17:11, 21:20, 39:11, 39:16, 54:11, 100:18
   distinguish [5] - 22:25, 23:24, 39:13, 69:1, 102:3
   distinguished [8] - 23:19, 23:24, 35:21, 35:23, 37:15, 40:9, 40:11, 40:12
   distinguishes [1] - 17:9
   distinguishing [3] - 40:1, 40:2, 41:14
   distinguishment [1] - 33:19
   distributing [1] - 76:2
   distribution [1] - 10:18
   District [1] - 98:4
   district [4] - 9:13, 9:15, 9:17, 86:20
   DISTRICT [2] - 1:1, 1:1
   DIVISION [1] - 1:2
   Docket [1] - 103:15
   DOCKET [1] - 1:3
   docket [2] - 4:4, 106:23
   doctrine [1] - 100:25
   document [14] - 45:11, 45:13, 48:15, 48:19, 50:12, 50:15, 50:18, 50:19, 53:6, 59:16, 69:15, 90:20, 100:14, 102:4
   documents [7] - 53:4, 53:5, 101:1, 101:18, 102:8, 105:11, 105:18

domain [2] - 59:10, 59:14
   done [8] - 11:23, 13:14, 31:16, 34:24, 69:6, 80:2, 96:10, 96:11
   Donny [1] - 5:14
   DOWLEN [1] - 2:19
   down [10] - 29:20, 29:25, 31:18, 47:19, 83:19, 85:13, 85:21, 91:22, 97:6, 100:21
   download [27] - 20:21, 22:13, 22:18, 29:1, 29:9, 29:21, 30:16, 31:22, 32:4, 32:11, 32:15, 32:19, 32:21, 52:3, 68:1, 93:24, 94:6, 94:18, 94:21, 94:24, 95:3, 95:6, 95:14, 95:19, 96:15, 96:17
   downloaded [10] - 21:4, 21:20, 30:1, 30:11, 32:15, 32:23, 33:1, 39:6, 39:7, 40:24
   DOWNLOADING [1] - 3:6
   downloading [71] - 19:10, 19:20, 19:24, 20:9, 22:1, 22:25, 23:1, 23:6, 23:14, 23:20, 24:1, 25:9, 29:12, 29:19, 30:21, 31:2, 31:5, 31:16, 32:13, 33:3, 33:5, 33:15, 33:17, 34:5, 35:4, 35:17, 36:2, 36:21, 37:1, 37:4, 37:6, 37:11, 37:15, 38:10, 38:22, 39:19, 39:23, 40:2, 40:6, 40:8, 40:9, 40:10, 41:15, 41:19, 41:21, 41:22, 52:10, 67:16, 68:12, 90:22, 90:25, 91:2, 91:3, 91:8, 91:17, 92:4, 93:4, 93:5, 93:9, 93:11, 93:16, 93:17, 93:23, 94:4, 96:11, 96:23, 97:9
   Downloading [1] - 20:11
   Dr [11] - 33:20, 33:21, 33:22, 34:3, 34:6, 35:13, 35:15, 36:14, 36:17, 66:1, 69:20
   drafting [1] - 80:20
   draw [1] - 39:11
   drawn [3] - 18:14, 35:2, 100:18
   draws [1] - 17:11
   drill [1] - 47:19
   Dru [1] - 5:13
   DRU [1] - 2:18
   due [1] - 36:15
   DUNN [1] - 2:4
   during [5] - 23:16, 23:19, 35:5, 38:8, 106:14
   dynamically [1] - 10:19

# E

easily [3] - 25:25, 100:2, 101:14
   EAST [1] - 2:2
   EASTERN [1] - 1:1
   easy [1] - 87:11
   ed.texas.uscourts.com [1] - 47:16
   editing [1] - 29:21
   EFF [8] - 98:16, 101:9, 101:10, 102:18, 103:4, 103:23, 104:10, 104:24
   effect [3] - 36:8, 99:19, 105:13
   either [3] - 7:13, 91:17, 98:22
   electronic [1] - 10:17

element [1] - 73:25
   elements [2] - 73:22, 74:20
   elicit [2] - 35:2, 35:17
   eliminate [2] - 23:11, 25:11
   elsewhere [3] - 58:9, 69:3, 81:5
   embodiment [9] - 11:4, 11:7, 14:5, 16:19, 52:21, 53:20, 53:21, 62:19, 74:19
   embodiments [2] - 58:25, 74:19
   EMPLOYING [1] - 3:10
   employing [7] - 78:14, 79:14, 82:4, 84:22, 90:8, 91:22, 95:25
   emulated [1] - 80:21
   enable [1] - 25:25
   encompass [1] - 30:21
   encompassed [2] - 74:20, 74:25
   end [10] - 22:16, 48:14, 50:15, 65:4, 78:1, 80:15, 81:22, 84:3, 85:13, 98:10
   enlighten [1] - 13:8
   Entertainment [1] - 4:4
   ENTERTAINMENT [1] - 1:6
   entire [4] - 26:8, 57:4, 57:7, 75:22
   entirely [2] - 58:15, 59:17
   entities [1] - 103:24
   episode [6] - 8:12, 10:4, 11:2, 57:10, 58:20, 83:23
   Episodes [1] - 10:1
   EPISODES [1] - 3:5
   episodes [23] - 7:13, 8:9, 8:21, 8:23, 9:3, 9:25, 11:16, 12:20, 14:6, 14:10, 17:24, 18:17, 20:8, 66:22, 66:23, 72:24, 76:4, 76:5, 76:9, 76:10, 77:15, 77:21
   equally [2] - 15:1
   equipped [1] - 21:2
   equivalent [1] - 29:1
   ERNST [1] - 2:9
   erroneous [1] - 100:18
   ESE [1] - 2:13
   especially [1] - 67:22
   essentially [5] - 19:12, 58:14, 62:7, 63:1, 63:2
   estoppel [2] - 102:18, 105:13
   et [3] - 26:1, 58:7, 66:1
   ET [1] - 1:7
   event [2] - 29:3, 87:3, 105:12
   eventually [1] - 86:11
   everyday [1] - 9:12
   evidence [7] - 27:7, 27:10, 37:8, 37:10, 46:10, 70:7, 99:12
   exact [2] - 37:24, 79:9
   exactly [10] - 13:4, 13:5, 26:10, 26:16, 28:19, 38:11, 50:21, 63:14, 63:24, 91:12
   examiner [7] - 23:22, 37:21, 68:9, 75:24, 76:1, 76:6, 76:8
   example [32] - 15:9, 21:1, 21:5, 25:3, 30:7, 32:19, 46:19, 47:8, 47:10, 47:15, 48:18, 51:11, 51:14, 52:21, 55:12, 55:14, 56:22, 56:24, 58:20, 59:6, 59:19,

60:11, 61:7, 62:25, 63:15, 69:6, 74:21, 80:20, 93:14, 96:9, 98:13
  **examples** [9] - 25:4, 29:6, 30:6, 55:20, 58:3, 58:4, 58:9, 58:16, 61:6
**except** [1] - 99:23
**excerpt** [2] - 35:12, 48:11
**exchange** [3] - 101:16, 101:18
**exclusive** [2] - 46:8, 46:22
**excuse** [2] - 92:9, 97:1
**Excuse** [1] - 57:6
**Exhibit** [2] - 22:11, 22:12
**exist** [1] - 60:13
**expand** [1] - 43:10
**expanding** [1] - 36:6
**expect** [2] - 69:16, 101:16
**expert** [6] - 33:16, 36:16, 36:17, 40:22, 42:8, 48:10
**experts** [1] - 101:18
**explain** [4] - 35:11, 43:10, 46:24, 54:22
**explained** [3] - 22:1, 33:22, 33:23
**explaining** [1] - 75:25
**explanation** [2] - 36:9, 36:25
**explicit** [2] - 23:4, 44:18
**explicitly** [1] - 39:18
**expressed** [2] - 36:7, 36:8
**expressing** [1] - 76:6
**extent** [2] - 76:6, 100:10
**extreme** [2] - 56:22, 62:25
**extrinsic** [2] - 27:7, 46:10

## F

**fabricated** [1] - 59:17
**face** [1] - 41:13
**facilitate** [1] - 30:10
**facilities** [3] - 59:1, 59:9
**facility** [36] - 51:10, 53:23, 54:1, 55:7, 55:10, 55:11, 55:13, 55:14, 55:19, 55:20, 56:6, 56:17, 56:18, 56:21, 57:3, 57:24, 58:1, 58:10, 59:5, 60:2, 60:9, 60:10, 61:19, 61:22, 61:25, 62:17, 64:1, 64:3, 64:5, 64:10, 64:11, 64:19, 64:23, 65:10, 65:15, 70:4
  **fact** [14] - 14:6, 17:16, 18:17, 40:3, 53:4, 60:19, 74:18, 75:4, 78:10, 80:1, 93:2, 94:14, 98:9, 105:1
**facts** [2] - 99:24, 100:2
**factual** [1] - 100:21
**failure** [1] - 29:4
**fair** [1] - 34:23
**fairly** [1] - 58:12
**fall** [1] - 103:25
**familiar** [3] - 32:18, 38:7, 42:22
**family** [1] - 26:9
**far** [2] - 71:24, 104:21
**fear** [1] - 45:3
**features** [1] - 13:23
**February** [1] - 104:6
**Fed** [1] - 87:14

**FEDERAL** [1] - 2:22
**Federal** [12] - 9:9, 12:6, 12:10, 13:24, 15:1, 15:16, 33:13, 67:10, 68:20, 86:5, 86:19, 87:20
  **few** [4] - 23:18, 31:18, 84:25, 93:6
**field** [5] - 51:8, 52:21, 55:5
**Field** [1] - 10:16
**FIGG** [1] - 2:9
**Figure** [12] - 16:15, 16:18, 28:18, 28:19, 29:18, 29:19, 51:12, 55:7, 58:2, 58:6, 58:7
  **figures** [1] - 97:11
**file** [142] - 7:13, 8:5, 8:8, 8:22, 9:4, 14:6, 19:20, 20:3, 27:15, 36:18, 44:9, 44:19, 44:22, 44:23, 44:24, 44:25, 45:1, 45:2, 45:14, 45:25, 46:3, 46:12, 46:15, 46:16, 46:18, 46:20, 46:21, 47:3, 47:17, 47:23, 48:1, 48:2, 48:8, 48:9, 48:16, 48:17, 48:21, 48:22, 49:3, 49:5, 49:7, 49:11, 49:12, 49:16, 49:18, 49:21, 49:25, 50:6, 50:11, 50:14, 50:15, 50:24, 51:3, 51:9, 51:10, 51:16, 51:17, 51:24, 52:3, 52:9, 52:11, 52:23, 53:2, 53:6, 53:13, 55:6, 56:7, 56:9, 57:24, 57:25, 59:20, 59:25, 60:23, 61:5, 63:18, 63:23, 64:5, 65:21, 66:16, 66:24, 67:2, 67:3, 67:6, 67:17, 68:5, 68:13, 68:15, 69:18, 70:8, 70:18, 71:4, 71:5, 71:10, 72:25, 73:3, 73:5, 73:8, 73:10, 73:11, 73:22, 73:24, 74:1, 74:2, 74:9, 74:17, 74:24, 75:6, 75:14, 75:16, 76:4, 76:23, 77:1, 77:2, 77:4, 77:8, 77:12, 77:14, 77:16, 83:21, 83:22, 91:16, 92:4, 92:20, 93:1, 93:11, 94:2, 94:6, 94:7, 95:4, 96:23, 96:25
  **FILE** [2] - 3:4, 3:9
  **filed** [9] - 20:10, 20:16, 36:3, 98:3, 98:13, 98:14, 102:15, 103:9, 103:15
  **filename** [1] - 48:14
  **files** [41] - 16:3, 16:4, 16:9, 16:22, 17:24, 18:18, 19:24, 30:11, 31:20, 43:25, 44:1, 44:2, 46:1, 46:11, 47:12, 49:1, 57:17, 57:22, 58:19, 58:21, 60:1, 62:6, 67:16, 69:7, 72:21, 72:23, 76:5, 76:9, 77:18, 81:14, 81:20, 83:25, 93:17, 93:18, 95:12, 95:15
  **filing** [1] - 98:20
  **final** [3] - 68:7, 98:7, 98:11
  **Finally** [1] - 75:17
  **fine** [2] - 23:11, 25:17
  **finished** [1] - 21:8
  **finite** [1] - 98:17
  **FIRM** [2] - 1:15, 2:18
  **first** [29] - 6:12, 6:22, 11:19, 19:19, 20:2, 26:6, 26:7, 30:23, 39:12, 43:12, 45:22, 54:19, 56:2, 57:8, 58:16, 65:9, 68:21, 71:16, 75:22, 83:3, 84:9, 86:15, 87:6, 87:10, 88:13, 96:5, 97:23, 98:9, 102:8
  **First** [4] - 14:17, 54:7, 90:24, 93:7

**flag** [1] - 106:5
**FLOOR** [2] - 1:19, 2:5
**focus** [3] - 5:22, 6:4, 68:21
**focused** [2] - 72:17, 104:9
**folder** [2] - 59:15, 60:1
**following** [1] - 61:16, 62:15
**follows** [2] - 24:17, 31:7
**FOR** [5] - 1:15, 2:1, 2:7, 2:15, 2:18
**FOREGOING** [1] - 107:8
**form** [2] - 10:24, 12:15
**forth** [5] - 6:25, 7:2, 7:11, 42:7, 62:20
**forward** [2] - 38:6, 73:16
**FOX** [6] - 2:7, 4:15, 4:16, 98:13, 98:18, 102:13
**FOX's** [1] - 106:15
**frankly** [3] - 14:8, 98:4, 101:5
**Friday** [1] - 103:10
**FROM** [2] - 3:12, 107:8
**front** [2] - 8:15, 8:19
**FTP** [8] - 51:12, 51:14, 55:14, 56:6, 56:9, 58:5, 58:7, 58:8
**full** [1] - 29:1
**function** [4] - 90:9, 90:10, 90:12
**functionalities** [3] - 84:7, 84:8, 85:18
**functions** [18] - 66:21, 78:6, 78:9, 78:12, 78:16, 78:18, 79:5, 79:13, 80:6, 80:17, 80:25, 81:22, 81:24, 82:10, 82:18, 84:16, 90:8, 94:14
**furtherance** [1] - 100:15

## G

**Gabbe** [2] - 23:22, 40:15
**Gabbe's** [1] - 40:18
**Game** [1] - 86:6
**gaming** [11] - 87:3, 87:4, 87:9, 87:12, 87:13, 87:16, 87:18, 89:10, 89:13, 89:17, 90:2
  **Gaming** [2] - 86:6, 87:1
**Ganz** [1] - 5:14
**general** [6] - 4:9, 6:8, 7:16, 28:8, 49:18, 103:6
**generally** [6] - 11:9, 28:10, 54:21, 61:4, 63:22, 64:10
**generate** [1] - 86:16
**generator** [1] - 86:9
**generic** [3] - 44:24, 62:24, 70:13
**geographic** [1] - 9:18
**GIBSON** [1] - 2:4
**given** [5] - 30:6, 35:7, 65:14, 92:3, 101:3
**glosses** [1] - 38:25
**GRAND** [1] - 2:5
**grant** [2] - 28:2, 105:1
**greatest** [1] - 64:24
**GROUP** [1] - 1:18
**Group** [1] - 4:16
**guess** [12] - 18:11, 39:10, 62:14, 65:6, 65:15, 69:1, 80:18, 81:3, 86:11, 96:14,

98:2, 102:2

## H

**hand** [1] - 20:20
**handed** [1] - 66:12
**happy** [4] - 6:15, 7:6, 38:12, 76:13
**hard** [1] - 74:8
**head** [1] - 82:24
**hear** [5] - 28:8, 29:12, 38:15, 50:4, 102:8
**heard** [7] - 18:7, 42:25, 52:15, 52:18, 54:10, 91:17, 91:22
**HEARING** [1] - 1:10
**hearing** [3] - 4:3, 11:18, 34:13
**hearings** [1] - 28:10
**hearsay** [1] - 27:8
**HEARTFIELD** [1] - 2:18
**heavy** [1] - 69:12
**held** [3] - 67:10, 89:9, 90:1
**help** [6] - 6:5, 42:19, 43:8, 43:17, 43:18, 62:15
**helps** [2] - 33:4, 65:13
**Hence** [1] - 87:23
**HEREBY** [1] - 107:7
**high** [2] - 31:1, 32:20
**highest** [1] - 27:8
**highlighted** [1] - 83:5
**history** [15] - 23:16, 23:17, 33:18, 33:24, 35:6, 35:20, 36:18, 36:22, 36:25, 37:4, 37:14, 39:21, 39:25, 40:22, 41:11
**hit** [1] - 82:24
**hold** [2] - 27:21, 38:9
**holidays** [1] - 106:16
**hollow** [1] - 13:23
**honestly** [1] - 82:17
**Honor** [105] - 4:7, 4:11, 4:13, 4:18, 4:20, 4:24, 5:2, 5:5, 5:8, 5:12, 5:15, 6:13, 6:18, 7:1, 7:7, 7:22, 8:3, 8:7, 12:25, 13:3, 13:15, 14:18, 16:20, 18:8, 18:12, 19:10, 20:6, 23:3, 23:10, 24:10, 24:22, 26:4, 26:18, 26:22, 27:23, 28:13, 31:25, 33:18, 34:7, 35:15, 36:11, 36:20, 38:3, 38:7, 38:12, 38:16, 41:6, 41:10, 41:25, 42:11, 46:1, 50:2, 50:7, 51:19, 52:13, 52:16, 53:17, 54:5, 61:21, 62:4, 64:11, 65:22, 66:5, 66:13, 70:24, 71:1, 71:11, 71:16, 72:3, 72:15, 72:17, 73:6, 74:6, 74:11, 75:8, 76:13, 76:17, 77:10, 77:24, 79:22, 81:12, 82:23, 82:24, 86:2, 88:11, 89:3, 90:17, 92:10, 92:19, 93:7, 95:21, 96:19, 96:25, 97:17, 101:8, 102:1, 102:9, 102:14, 104:2, 104:17, 105:21, 106:2, 106:6, 107:1
**Honor's** [7] - 27:25, 50:8, 51:1, 83:3, 84:10, 84:21, 88:13
**HONORABLE** [1] - 1:11
**hope** [1] - 6:5
**host** [5] - 11:8, 29:4, 30:11, 31:19,

50:18
**hosted** [1] - 50:21
**hosting** [1] - 60:1
**hosts** [1] - 59:9
**hotel** [1] - 32:10
**house** [1] - 20:19
**housekeeping** [1] - 106:4
**HOWSTUFFWORKS** [1] - 2:1
**Howstuffworks.com** [1] - 5:3
**html** [2] - 48:17, 59:25
**http://ziff.com** [1] - 50:16
**huge** [1] - 58:18

## I

**IBM** [1] - 46:15
**idea** [4] - 26:12, 54:24, 55:18, 74:9
**identical** [1] - 28:6
**identifiable** [2] - 57:18, 58:9
**identified** [9] - 57:11, 59:22, 61:1, 63:12, 63:19, 63:21, 64:4, 92:4, 105:11
**identifies** [1] - 25:2
**identify** [5] - 44:21, 50:12, 52:1, 52:3, 63:21
**IGT** [4] - 86:25, 88:1, 88:24, 89:5
**IGT/Bally** [2] - 89:21, 90:4
**IGTv/Bally** [1] - 79:23
**illustrate** [1] - 20:20
**illustrated** [1] - 11:10
**illustrative** [3] - 11:6, 14:5, 16:19
**image** [1] - 18:13
**images** [2] - 16:10, 17:19
**immediate** [1] - 93:24
**immediately** [2] - 29:15, 31:7
**imply** [1] - 19:22
**import** [3] - 14:12, 90:22, 90:25
**important** [7] - 25:1, 28:14, 30:5, 50:22, 54:9, 56:17, 58:12
**Importantly** [1] - 12:3
**importantly** [1] - 71:25
**importing** [1] - 91:7
**impression** [1] - 98:5
**impressions** [6] - 99:18, 99:23, 100:11, 100:12, 100:20, 101:3
**improve** [3] - 46:5, 50:23, 52:7
**IN** [1] - 2:20
**Inc** [1] - 5:9
**include** [11] - 22:19, 23:2, 23:6, 44:13, 46:17, 55:14, 55:15, 69:7, 75:14, 96:15, 99:17
**included** [5] - 22:21, 71:21, 74:12, 75:12, 83:23
**includes** [1] - 31:1
**including** [3] - 23:21, 31:20, 52:24
**inclusion** [2] - 29:13, 74:21
**incorporating** [1] - 49:10
**incorrect** [2] - 8:10, 33:14
**independent** [5] - 7:24, 15:10, 24:6, 24:11, 91:1

**INDEX** [1] - 3:1
**indicate** [2] - 19:2, 61:13
**indicated** [4] - 11:9, 51:10, 55:7, 58:1
**indicates** [4] - 53:1, 53:12, 77:14, 94:20
**indicating** [1] - 58:8
**indication** [4] - 51:2, 54:16, 91:14, 94:5
**indicator** [1] - 46:23
**indicia** [1] - 50:24
**indulgence** [1] - 23:18
**infer** [1] - 67:1
**informally** [1] - 91:18
**information** [20] - 10:17, 24:14, 24:25, 25:4, 31:2, 31:17, 31:23, 32:15, 39:6, 40:25, 47:2, 67:23, 68:14, 72:6, 72:22, 74:23, 95:3, 101:1, 101:10
**informed** [1] - 103:13
**infringe** [1] - 90:4
**infringement** [1] - 45:18
**initial** [2] - 5:25, 98:4
**inject** [1] - 44:22
**insofar** [1] - 8:11
**instance** [5] - 47:20, 48:1, 56:18, 60:10, 104:4
**instances** [2] - 37:13, 44:4
**Instead** [2] - 19:1, 102:21
**instead** [4] - 57:22, 57:23, 64:13, 103:2
**instituted** [1] - 103:12
**instructions** [1] - 28:1
**insurance** [1] - 101:19
**intended** [4] - 11:13, 22:24, 28:9, 45:14
**intention** [2] - 49:23, 51:20
**interactively** [1] - 10:19
**interchangeable** [1] - 61:23
**interest** [5] - 98:15, 98:20, 102:17, 102:25, 105:5
**interface** [45] - 78:4, 78:8, 78:22, 78:23, 79:6, 79:9, 79:16, 79:17, 79:20, 80:1, 80:3, 80:5, 80:24, 81:10, 81:16, 81:19, 81:21, 82:9, 82:11, 82:14, 82:19, 82:20, 83:7, 84:3, 84:11, 84:14, 84:23, 84:25, 85:25, 88:16, 89:21, 89:24, 90:11, 90:13, 92:5, 94:4, 94:12, 94:21, 95:7, 95:14, 95:19, 96:16, 96:18, 96:20, 96:22
**INTERFACES** [1] - 3:11
**interfaces** [24] - 78:5, 78:11, 78:17, 78:21, 79:5, 79:12, 79:18, 80:14, 81:23, 82:3, 82:5, 83:10, 83:13, 83:15, 83:19, 84:15, 85:11, 90:9, 91:21, 91:23, 92:1, 92:22, 93:8, 96:1
**International** [1] - 86:6
**Internet** [14] - 11:8, 21:2, 21:11, 32:8, 32:10, 32:13, 42:23, 51:14, 52:10, 52:25, 53:3, 55:17, 56:10, 56:23, 58:6, 59:2, 59:13, 60:8, 60:13, 60:17, 61:9, 81:18, 92:1, 95:12

**interpret** [2] - 56:20, 80:22
**interpretation** [4] - 54:21, 55:21, 58:4, 82:9
**interrelated** [1] - 57:14
**interrogatories** [1] - 105:3
**interrogatory** [7] - 99:9, 102:20, 104:1, 104:5, 104:20, 105:12
**interrupt** [1] - 97:24
**interview** [4] - 26:6, 26:12, 26:14, 27:9
**intricacies** [1] - 42:23
**introduce** [2] - 27:10, 35:15
**introduced** [2] - 38:19, 70:6
**introducing** [1] - 70:5
**invalidity** [3] - 45:18, 97:23, 99:7
**invention** [39] - 10:5, 10:11, 10:24, 12:2, 12:11, 12:15, 13:11, 13:21, 13:22, 14:2, 14:15, 14:20, 15:2, 15:13, 15:21, 16:3, 16:14, 17:22, 25:20, 26:11, 26:17, 28:4, 28:6, 28:10, 28:25, 29:8, 29:17, 30:5, 30:14, 30:20, 37:15, 41:15, 61:12, 63:7, 68:8, 69:8, 97:10
**Invention** [8] - 10:16, 10:24, 14:4, 14:11, 14:14, 15:13, 16:2, 17:16
**inventor** [5] - 10:10, 26:6, 26:7, 28:9, 28:13
**inventors** [1] - 12:1
**involve** [2] - 24:1
**involved** [7] - 23:25, 26:8, 37:16, 75:5, 98:19, 100:1, 103:2
**involves** [1] - 41:15
**involving** [1] - 6:9
**iPod** [4] - 20:21, 20:22, 20:23, 21:3
**IPR** [13] - 98:11, 98:14, 98:16, 98:19, 98:23, 99:1, 99:2, 99:7, 99:25, 103:12, 105:1, 105:5, 105:12
**irrelevant** [1] - 53:9
**IS** [1] - 107:8
**issue** [35] - 9:2, 10:3, 10:5, 10:12, 10:22, 13:4, 13:5, 13:12, 13:16, 15:24, 36:16, 47:1, 48:24, 49:24, 50:10, 55:20, 63:12, 84:7, 86:4, 86:7, 86:17, 86:23, 87:5, 87:7, 87:17, 90:25, 94:1, 98:12, 98:21, 98:24, 99:19, 103:7, 105:14, 105:23, 106:6
**issued** [5] - 87:8, 87:16, 87:25, 89:10, 89:13
**issues** [7] - 5:23, 27:16, 83:23, 86:8, 88:20, 97:14, 104:9
**issuing** [3] - 87:1, 89:14, 89:16
**it'd** [1] - 70:9
**items** [1] - 48:25
**itself** [11] - 41:21, 44:11, 45:5, 45:7, 51:25, 56:18, 60:10, 63:8, 73:21, 79:8, 79:11
**iTunes** [1] - 32:19

## J

**jacket** [5] - 85:2, 85:3, 85:5, 85:22, 90:6
**jackets** [5] - 85:12, 85:14, 85:23, 85:24, 90:5
**jackpot** [2] - 86:10, 86:12
**JACKSON** [3] - 2:15, 2:22, 107:12
**Jason** [4] - 5:4, 8:3, 42:11, 82:22
**JASON** [1] - 2:4
**JENNIFER** [1] - 2:12
**Jennifer** [2] - 4:14, 102:9
**JEREMY** [1] - 1:18
**Jeremy** [1] - 4:10
**John** [1] - 4:7
**JOHN** [1] - 1:15
**joint** [8] - 67:19, 71:7, 71:8, 71:13, 71:20, 71:22, 72:10, 101:9
**Jonas** [3] - 21:19, 21:22, 36:19
**journals** [1] - 80:20
**Judge** [1] - 98:3
**JUDGE** [1] - 1:11
**JUDSON** [1] - 1:16
**jump** [2] - 6:19, 93:12
**jury** [7] - 46:24, 47:5, 54:15, 56:16, 62:15, 106:10
**justified** [1] - 95:20

## K

**kind** [14] - 10:21, 12:5, 42:20, 43:17, 45:23, 46:11, 46:16, 47:13, 49:20, 50:24, 65:8, 73:18, 74:16
**kinds** [1] - 102:7
**knowing** [1] - 27:18
**known** [10] - 20:12, 20:15, 20:18, 20:19, 21:6, 21:21, 29:12, 48:9, 48:13, 70:9
**knows** [2] - 23:4, 69:25

## L

**LANE** [1] - 1:21
**language** [90] - 12:4, 12:12, 12:15, 12:18, 13:7, 13:15, 13:19, 14:12, 14:15, 14:21, 14:22, 14:25, 15:23, 22:20, 22:22, 23:5, 23:15, 24:5, 24:15, 25:12, 25:15, 30:24, 30:25, 31:6, 38:5, 41:18, 43:20, 44:10, 45:4, 45:15, 45:19, 45:24, 48:8, 48:18, 52:7, 53:21, 55:21, 56:8, 56:14, 57:16, 57:19, 61:13, 63:8, 63:16, 63:20, 64:22, 68:21, 68:25, 69:3, 72:16, 72:18, 73:1, 73:7, 74:4, 74:9, 76:22, 78:3, 78:14, 78:18, 79:8, 79:11, 79:14, 80:4, 81:7, 81:22, 84:24, 85:7, 85:8, 86:3, 87:1, 87:7, 87:14, 90:7, 90:19, 90:23, 91:1, 91:9, 91:19, 92:6, 92:7, 92:9, 92:10, 92:12, 92:16, 92:22, 94:3, 95:23, 95:24, 96:25, 97:10
**Larry** [1] - 5:3
**LARRY** [1] - 2:1

**last** [9] - 26:23, 77:25, 83:15, 90:18, 92:24, 93:4, 95:22, 97:7, 106:19
**late** [2] - 27:4, 103:10
**LAW** [3] - 1:15, 1:18, 2:18
**lawyers** [1] - 101:17
**layperson** [1] - 42:17
**laypersons** [1] - 42:22
**lead** [3] - 4:16, 5:4, 106:15
**learned** [3] - 26:2, 103:10, 103:14
**least** [10] - 8:12, 20:18, 20:22, 26:9, 43:5, 46:17, 51:17, 81:18, 85:5, 95:13
**leave** [6] - 44:24, 53:18, 85:16, 85:24, 88:4, 88:5
**leaves** [2] - 85:2, 88:15
**left** [2] - 22:3, 74:17
**legal** [5] - 100:11, 100:19, 100:20, 102:25
**legislator** [3] - 9:13, 9:14, 9:17
**lengthy** [1] - 73:23
**less** [2] - 28:13, 69:21
**level** [6] - 47:21, 60:8, 62:23, 63:5, 63:22, 64:24
**LEVINSON** [1] - 1:24
**library** [2] - 10:20, 31:20
**license** [1] - 58:14
**Liddle** [1] - 4:8
**LIDDLE** [1] - 2:20
**lie** [1] - 78:9
**Lieberman** [6] - 4:17, 20:7, 27:12, 34:8, 35:1, 38:17, 38:25, 39:9
**LIEBERMAN** [15] - 4:18, 6:18, 18:8, 20:6, 23:9, 25:18, 26:21, 27:23, 28:12, 28:18, 36:11, 36:13, 38:16, 41:6, 41:25
**LIEBERMANN** [1] - 2:8
**light** [2] - 81:5, 105:1
**likewise** [1] - 18:13
**limit** [5] - 13:10, 15:4, 36:7, 87:15, 89:12
**limitation** [20] - 11:15, 12:23, 13:4, 14:25, 40:23, 58:15, 73:12, 74:15, 75:7, 75:20, 78:20, 79:24, 89:14, 93:3, 93:5, 93:7, 94:13, 95:22, 96:8, 97:7
**limitations** [7] - 9:10, 13:25, 14:23, 44:25, 54:13, 68:22, 86:13
**limited** [8] - 12:8, 14:1, 14:10, 15:14, 15:21, 18:1, 25:7, 48:25
**limiting** [1] - 87:21
**limits** [1] - 12:12
**line** [11] - 11:5, 30:9, 31:9, 32:5, 32:7, 34:11, 51:5, 61:11, 83:12, 83:17, 85:9
**lines** [5] - 17:5, 30:24, 31:18, 93:19
**link** [2] - 29:4, 60:17
**list** [5] - 12:3, 67:22, 72:6, 77:15, 77:20
**listed** [4] - 12:9, 44:3, 78:12, 81:25
**listen** [3] - 21:3, 29:23, 29:24
**listing** [1] - 66:21
**literally** [1] - 28:6
**litigation** [4] - 98:20, 100:15, 101:18, 103:23

**live** [1] - 21:7
**LLC** [1] - 1:3
**LLP** [1] - 2:4
**Lo** [8] - 5:4, 8:3, 20:8, 42:11, 44:10, 50:4, 52:14, 82:22
**LO** [22] - 2:4, 8:3, 9:1, 11:21, 12:25, 13:2, 18:5, 42:11, 44:15, 45:6, 45:22, 47:7, 48:5, 50:7, 52:2, 52:13, 55:25, 82:22, 84:17, 84:19, 84:21, 88:10
**load** [1] - 25:21
**lobby** [1] - 32:10
**local** [8] - 19:17, 25:24, 40:6, 41:2, 48:20, 68:10
**locally** [2] - 32:11, 93:25
**locate** [15] - 42:19, 43:7, 43:8, 43:14, 43:17, 43:22, 45:24, 46:6, 46:18, 46:22, 47:2, 50:14, 51:23, 52:9, 54:3
**located** [7] - 43:25, 50:20, 50:25, 51:12, 97:3, 97:4, 97:8
**LOCATION** [1] - 3:8
**location** [61] - 42:4, 47:15, 50:12, 51:9, 51:13, 51:15, 51:17, 51:18, 52:22, 52:25, 53:3, 53:16, 54:12, 54:17, 54:25, 55:5, 55:16, 56:4, 56:5, 56:10, 56:13, 56:16, 56:19, 57:5, 57:6, 57:9, 57:11, 57:15, 57:23, 57:25, 58:14, 58:17, 59:3, 59:7, 59:21, 60:2, 60:7, 61:3, 61:19, 61:20, 61:22, 61:24, 61:25, 62:5, 62:7, 62:16, 62:17, 62:23, 63:1, 63:2, 63:9, 63:10, 63:11, 64:8, 64:24, 65:12, 67:8, 69:14, 69:22, 69:25, 95:11
**locations** [7] - 25:1, 57:7, 57:8, 57:12, 57:13, 58:5, 58:24
**locator** [6] - 42:15, 42:18, 43:2, 43:16, 52:5, 52:8
**Logan** [4] - 26:6, 26:7, 26:15, 28:4
**logical** [2] - 80:18, 81:7
**LONGVIEW** [1] - 1:17
**look** [26] - 9:23, 10:8, 23:13, 24:10, 28:4, 28:18, 29:18, 30:9, 31:6, 34:10, 38:24, 40:21, 46:7, 67:12, 67:14, 67:19, 70:2, 71:12, 71:25, 72:15, 72:16, 75:24, 76:20, 89:4, 95:23
**looked** [4] - 13:21, 35:7, 47:10, 70:10
**Looking** [1] - 18:12
**looking** [13] - 12:19, 12:20, 22:8, 54:14, 55:2, 58:2, 60:17, 67:9, 69:1, 78:2, 79:10, 80:21, 106:13
**LOOP** [1] - 2:13
**LOS** [1] - 2:6
**Lotzi** [1] - 5:9
**LOTZI** [2] - 2:15

## M

**machine** [2] - 86:15, 89:15
**machines** [2] - 86:7, 86:8
**MAGISTRATE** [1] - 1:11
**MAIN** [1] - 2:16

**main** [2] - 19:5, 72:14
**maintained** [1] - 105:19
**maintaining** [1] - 31:19
**major** [2] - 26:9, 26:10
**MANBECK** [1] - 2:9
**Markman** [1] - 28:10
**markup** [1] - 48:18
**MARSHALL** [3] - 1:2, 1:7, 2:3
**mass** [1] - 25:24
**MASSACHUSETTS** [1] - 1:25
**Massachusetts** [3] - 98:14, 98:20, 98:23
**material** [1] - 29:15
**materials** [2] - 29:9, 35:8
**Matt** [3] - 5:8, 54:5, 90:17
**matter** [3] - 76:21, 100:21, 106:4
**matters** [2] - 6:9, 61:8
**MATTHEW** [1] - 2:15
**MAY** [1] - 107:7
**mean** [35] - 9:8, 9:14, 9:21, 13:9, 18:14, 19:19, 23:11, 28:14, 29:14, 31:5, 39:7, 39:10, 39:15, 48:7, 49:3, 49:9, 53:10, 54:2, 63:10, 67:14, 69:19, 70:17, 78:15, 79:4, 84:5, 90:10, 90:12, 91:19, 93:4, 94:18, 94:25, 99:24, 100:13, 102:5
**meaning** [50] - 12:21, 14:7, 15:11, 20:10, 20:11, 34:5, 34:12, 34:17, 35:4, 35:16, 35:19, 36:2, 36:25, 37:1, 37:3, 37:6, 37:7, 38:10, 38:22, 42:5, 42:6, 42:22, 50:23, 54:1, 54:18, 58:13, 60:3, 60:7, 60:22, 61:4, 63:4, 65:13, 66:25, 67:7, 67:12, 68:3, 69:10, 69:13, 69:17, 69:19, 69:22, 70:14, 72:8, 77:6, 77:19, 77:20, 78:3, 81:7, 86:20, 88:4
**meanings** [2] - 9:11, 34:22
**means** [16] - 22:9, 33:18, 43:10, 61:22, 64:9, 70:1, 70:9, 77:20, 80:2, 85:23, 90:11, 91:3, 91:15, 96:6, 101:3
**meant** [12] - 22:9, 23:14, 29:13, 30:21, 33:23, 39:23, 40:6, 40:8, 47:25, 67:9, 89:19, 94:16
**mechanism** [1] - 68:2
**MEDIA** [2] - 2:7, 3:4
**media** [37] - 7:13, 8:5, 8:8, 8:22, 9:4, 14:6, 18:18, 21:5, 21:20, 21:21, 25:5, 30:12, 40:16, 44:1, 44:2, 45:1, 57:16, 58:19, 58:21, 69:7, 72:21, 72:23, 76:5, 81:14, 91:16, 92:20, 93:1, 93:11, 93:17, 93:18, 94:2, 94:6, 94:7, 95:11, 96:23, 96:25
**Media** [1] - 4:15
**meet** [1] - 27:14
**meeting** [1] - 103:19
**memory** [17] - 21:9, 22:15, 24:15, 24:17, 24:20, 25:8, 25:11, 32:25, 33:25, 35:5, 35:24, 37:12, 39:5, 39:14, 39:15, 40:14, 41:23
**mental** [5] - 99:17, 99:23, 100:10, 100:20, 101:3

**Mental** [1] - 100:12
**mention** [3] - 33:9, 75:2, 106:12
**mentioned** [4] - 14:18, 62:2, 62:25, 63:10
**Merton** [1] - 4:10
**MERTON** [1] - 1:23
**met** [1] - 104:6
**method** [1] - 76:2
**MICHAEL** [2] - 2:1
**Michael** [1] - 5:3
**might** [16] - 26:17, 47:5, 54:15, 58:11, 58:17, 60:10, 69:3, 69:10, 76:17, 81:20, 87:25, 91:19, 94:25, 95:2, 99:12, 105:4
**mind** [4] - 6:12, 66:7, 82:6, 87:10
**minimal** [1] - 47:1
**minimum** [1] - 51:23
**minor** [1] - 106:4
**minute** [4] - 26:15, 26:24, 65:18, 106:19
**misciting** [1] - 89:25
**Misraje** [1] - 5:14
**missing** [1] - 74:3
**mistake** [1] - 48:15
**modern** [1] - 56:23
**modest** [1] - 43:3
**modification** [3] - 8:18, 44:7, 64:9
**modified** [1] - 87:19
**modifies** [2] - 87:13, 87:24
**modifying** [1] - 64:7
**modum** [1] - 31:1
**moment** [2] - 45:21, 72:16
**moments** [1] - 23:18
**Monday** [1] - 103:15
**Montgomery** [2] - 5:13, 5:16
**MONTGOMERY** [2] - 2:18, 5:12
**month** [1] - 98:10
**months** [1] - 106:8
**moot** [1] - 105:6
**MORE** [2] - 3:9, 3:10
**morning** [14] - 4:7, 4:13, 4:18, 4:20, 4:22, 4:24, 4:25, 5:6, 5:8, 5:12, 5:18, 8:3, 20:6, 54:5
**most** [4] - 7:4, 16:15, 61:7, 81:7
**MOTION** [1] - 3:13
**motion** [16] - 27:15, 28:2, 97:14, 97:17, 98:3, 98:5, 102:11, 102:15, 102:23, 103:18, 104:8, 104:14, 105:6, 105:8, 105:14, 105:23
**mouthful** [1] - 83:25
**move** [8] - 25:16, 25:25, 28:15, 38:5, 55:22, 59:6, 65:5, 104:20
**moved** [2] - 104:8, 106:10
**movie** [12] - 21:6, 21:7, 21:12, 21:13, 21:14, 21:16, 21:17, 32:18, 32:19, 32:20, 32:21
**Moving** [1] - 57:19
**moving** [1] - 102:19
**MR** [118] - 4:7, 4:18, 4:22, 4:24, 5:2, 5:8, 5:12, 6:13, 6:18, 6:24, 7:6, 7:9,

7:18, 7:22, 8:1, 8:3, 9:1, 11:21, 12:25, 13:2, 18:5, 18:8, 18:11, 19:9, 19:12, 20:6, 23:9, 25:18, 26:21, 27:3, 27:23, 28:12, 28:18, 34:7, 35:14, 36:11, 36:13, 38:16, 38:18, 41:6, 41:25, 42:2, 42:11, 44:15, 45:6, 45:22, 47:7, 48:5, 48:6, 49:2, 49:9, 49:17, 50:1, 50:7, 52:2, 52:13, 52:15, 52:18, 53:17, 54:5, 55:25, 56:1, 57:6, 61:21, 62:4, 62:21, 63:14, 64:2, 64:16, 64:20, 65:1, 65:6, 65:22, 66:7, 66:10, 66:15, 69:5, 69:23, 70:17, 76:17, 76:20, 77:24, 79:7, 80:12, 81:8, 82:8, 82:16, 82:22, 84:17, 84:19, 84:21, 88:10, 88:23, 89:3, 90:17, 91:12, 92:9, 92:15, 92:18, 93:6, 94:9, 94:25, 95:8, 95:10, 95:21, 96:19, 97:17, 97:21, 97:25, 98:9, 98:25, 99:21, 99:24, 100:9, 100:17, 101:7, 102:1, 104:17

**MS** [16] - 4:13, 4:19, 4:20, 4:21, 4:23, 66:5, 70:23, 71:1, 77:10, 102:9, 104:2, 104:13, 105:20, 106:2, 106:8, 107:1

**multiple** [10] - 9:9, 13:18, 83:14, 85:10, 85:12, 85:14, 85:20, 86:5, 87:17, 88:3

**multiple-piece** [1] - 13:18

**multitude** [1] - 29:6

**must** [16] - 9:4, 9:8, 55:17, 56:6, 57:16, 57:17, 64:5, 64:6, 64:23, 78:4, 83:7, 84:4, 84:11, 89:10, 96:20

## N

**nail** [1] - 82:24

**name** [18] - 46:12, 46:16, 48:9, 48:17, 48:23, 49:11, 49:13, 50:5, 50:11, 50:15, 51:3, 51:18, 53:2, 53:13

**named** [2] - 26:6, 26:7

**narrative** [2] - 102:22, 103:3

**narrow** [4] - 15:15, 17:23, 19:15, 20:11

**narrower** [1] - 15:22

**narrowly** [1] - 17:2

**nature** [2] - 68:11, 68:14

**navigate** [1] - 47:22

**NBC** [3] - 102:12, 105:11, 106:14

**NBCUniversal** [1] - 4:15

**NBCUNIVERSAL** [1] - 2:7

**necessarily** [6] - 9:8, 44:18, 48:14, 70:3, 90:13, 100:23

**necessary** [2] - 51:23, 59:9

**need** [16] - 6:14, 8:17, 9:21, 47:17, 52:3, 52:9, 54:16, 58:23, 59:2, 59:7, 64:9, 86:8, 91:10, 98:8, 102:4

**needed** [2] - 32:11, 93:25

**needs** [11] - 8:14, 8:21, 32:11, 47:2, 56:4, 56:5, 61:24, 62:7, 67:2, 67:3, 73:24

**negative** [6] - 12:23, 13:3, 23:4, 23:8, 23:12, 25:11

**neglected** [1] - 65:22

**Netflix** [2] - 21:6, 21:7

**network** [1] - 87:2

**Networks** [2] - 4:16, 21:23

**never** [8] - 14:3, 14:10, 35:6, 35:7, 35:24, 35:25, 56:4, 86:12

**NEW** [2] - 1:19

**New** [1] - 85:1

**new** [2] - 66:22, 72:23

**next** [13] - 13:14, 29:20, 29:24, 31:9, 32:5, 50:16, 57:2, 65:21, 66:16, 73:14, 77:22, 84:25, 93:21

**night** [1] - 26:23

**nitpicky** [1] - 19:14

**NO** [1] - 1:3

**nonasserted** [2] - 24:5, 24:11

**none** [1] - 65:7

**nonetheless** [1] - 29:5

**nontechnical** [1] - 27:9

**nontemporary** [10] - 22:23, 22:24, 23:5, 23:7, 25:10, 29:13, 30:22, 33:6, 37:12, 41:22

**normal** [1] - 68:3

**normally** [2] - 15:15, 19:21

**Northern** [1] - 98:4

**note** [10] - 5:17, 7:19, 20:2, 22:8, 27:23, 36:13, 53:19, 66:10, 81:8, 106:24

**noted** [1] - 38:19

**notes** [1] - 100:22

**nothing** [19] - 19:1, 25:12, 39:20, 41:21, 53:1, 53:12, 53:19, 72:9, 94:5, 94:20, 100:5

**Nothing** [1] - 89:13

**notice** [3] - 55:4, 103:15, 106:9

**notion** [2] - 49:10, 78:8

**novel** [2] - 76:7, 76:11

**novelty** [1] - 76:11

**nowhere** [2] - 18:22, 40:9

**number** [6] - 25:1, 86:9, 86:22, 87:15, 87:25, 89:12

**numbers** [3] - 86:14, 86:16, 86:22

**numbers'** [1] - 86:21

**numerous** [1] - 47:11

**NW** [1] - 2:10

## O

**Object** [1] - 34:7

**object** [2] - 27:3, 35:9

**Objection** [1] - 34:7

**objection** [3] - 27:13, 27:22, 36:5

**objects** [1] - 76:3

**observation** [4] - 78:2, 78:25, 88:12, 88:13

**observe** [1] - 78:3

**obtained** [1] - 101:2

**obvious** [1] - 82:13

**Obviously** [1] - 43:15

**obviously** [6] - 35:21, 56:21, 68:8, 77:3, 78:7, 104:24

**occasions** [2] - 9:9, 86:5

**occur** [3] - 33:4, 94:21, 95:19

**occurred** [1] - 35:20

**occurs** [4] - 11:4, 24:20, 57:3, 57:7

**October** [1] - 97:21

**OF** [5] - 1:1, 1:9, 1:10, 3:10, 107:9

**offer** [1] - 35:8, 66:2

**offered** [2] - 27:21, 35:10

**offering** [1] - 34:11

**offers** [1] - 35:24

**office** [2] - 37:20, 41:12

**OFFICIAL** [1] - 2:22

**ON** [1] - 107:7

**once** [4] - 60:25, 63:22, 64:7, 97:6

**Once** [1] - 58:4

**ONE** [3] - 3:9, 3:10

**one** [162] - 7:16, 9:1, 9:7, 9:16, 13:16, 13:18, 13:23, 15:24, 17:10, 19:6, 19:9, 19:13, 20:20, 27:6, 28:21, 30:7, 36:1, 38:23, 39:10, 42:7, 43:11, 44:7, 45:11, 47:2, 47:8, 48:11, 52:9, 52:19, 53:10, 57:8, 58:19, 58:21, 59:20, 60:24, 61:6, 64:2, 65:13, 66:21, 67:8, 69:23, 69:25, 70:7, 71:2, 71:16, 72:19, 72:21, 73:16, 75:17, 76:18, 77:6, 78:5, 78:11, 78:14, 78:15, 78:17, 78:20, 78:21, 79:4, 79:11, 79:14, 79:16, 79:17, 79:21, 79:24, 80:1, 80:2, 80:5, 80:8, 80:9, 80:14, 80:15, 80:17, 80:24, 81:1, 81:2, 81:21, 81:23, 81:25, 82:3, 82:6, 82:9, 82:13, 82:15, 82:18, 82:20, 82:25, 83:7, 83:11, 83:16, 85:4, 85:5, 85:15, 85:16, 85:17, 85:18, 85:22, 86:7, 86:13, 86:14, 86:17, 86:18, 86:19, 86:21, 87:2, 87:7, 87:9, 87:10, 87:11, 87:13, 87:19, 87:22, 87:23, 88:2, 88:3, 88:5, 88:6, 88:9, 88:14, 88:17, 89:7, 89:8, 89:14, 89:16, 89:19, 89:20, 89:24, 90:2, 90:6, 90:8, 90:11, 91:20, 91:22, 91:23, 91:25, 92:3, 93:14, 94:16, 95:25, 96:5, 96:6, 96:8, 98:5, 103:7, 103:8, 105:3, 106:4

**One** [3] - 9:2, 25:5, 70:5

**one's** [1] - 22:15

**one-piece** [2] - 13:18, 13:23

**ones** [2] - 88:3, 88:5

**OPEN** [1] - 4:1

**open** [6] - 23:1, 85:3, 85:16, 85:24, 88:4, 88:15

**opening** [1] - 74:11

**opinion** [7] - 34:17, 35:7, 35:8, 35:24, 35:25, 36:19, 76:7

**opinions** [4] - 34:12, 36:6, 36:8, 36:10

**opposed** [1] - 21:4

**opposite** [1] - 75:8

**opposition** [1] - 74:7

**optical** [2] - 25:6, 39:14

**option** [1] - 32:22

**options** [2] - 88:4, 88:5

**OR** [2] - 3:9, 3:10

**order** [15] - 6:25, 7:3, 7:5, 7:7, 27:8,

29:23, 34:21, 35:8, 47:2, 47:13, 50:12,
74:23, 84:6, 106:9, 106:23
  **ordinary** [36] - 12:7, 35:4, 35:16, 36:1,
36:2, 37:3, 37:7, 42:4, 42:6, 50:23,
53:10, 54:1, 54:18, 58:13, 60:6, 60:22,
61:3, 63:3, 65:12, 66:25, 67:7, 67:12,
69:9, 69:13, 69:16, 69:19, 69:22, 69:25,
70:5, 70:7, 72:8, 77:6, 77:18, 77:20,
78:3, 101:17
  **organization** [1] - 102:18
  **origin** [1] - 27:18
  **original** [1] - 26:12
  **Otherwise** [2] - 6:10, 29:16, 76:14
  **otherwise** [2] - 81:20, 101:2
  **ought** [3] - 43:5, 46:4, 46:25
  **outcome** [2] - 5:21, 105:13
  **outside** [1] - 51:22
  **outstanding** [1] - 92:19
  **overall** [1] - 6:9
  **overcoming** [1] - 69:9
  **override** [2] - 15:19, 17:15
  **overrides** [2] - 14:20, 15:7
  **overrule** [1] - 36:4
  **overwhelmingly** [1] - 97:9
  **own** [1] - 28:4
  **owner** [1] - 26:10
  **Oxford** [1] - 72:2

### P

  **p.m** [1] - 107:4
  **page** [11] - 11:19, 28:21, 32:5, 34:6,
34:11, 47:9, 50:9, 59:10, 59:12, 71:14,
89:11
  **PAGE** [1] - 3:2
  **PAGES** [1] - 1:9
  **pages** [4] - 29:6, 41:9, 47:11, 47:23
  **papers** [1] - 44:17
  **PAPOOL** [1] - 1:20
  **Papool** [1] - 4:9
  **paragraph** [3] - 32:7, 75:23, 75:24
  **paren** [1] - 23:2
  **parentheses** [3] - 45:11, 51:11, 55:9
  **PARKER** [1] - 2:12
  **part** [35] - 8:13, 10:11, 13:11, 16:2,
17:15, 18:14, 25:10, 30:5, 43:19, 52:20,
53:23, 53:24, 54:23, 60:3, 62:10, 63:6,
66:18, 66:19, 74:16, 76:24, 77:3, 77:12,
78:1, 78:7, 78:16, 79:19, 80:23, 83:3,
83:4, 83:15, 83:20, 84:9, 89:22, 97:6,
98:5
  **participate** [1] - 106:16
  **particular** [26] - 10:20, 14:23, 43:9,
44:23, 46:2, 46:6, 47:3, 47:17, 47:23,
50:14, 52:9, 52:11, 55:3, 56:5, 59:18,
60:3, 60:8, 61:8, 61:10, 63:15, 64:12,
64:14, 74:22, 87:24, 100:13, 103:5
  **particularly** [6] - 10:18, 32:20, 64:21,
88:2, 92:23, 95:15

**PARTIES** [1] - 4:1
  **parties** [12] - 5:23, 6:3, 8:14, 9:20,
26:25, 44:16, 52:6, 69:6, 79:1, 101:17,
102:17, 104:3
  **PARTNERSHIP** [1] - 2:18
  **partnership** [1] - 5:13
  **parts** [7] - 15:25, 18:15, 30:18, 39:1,
79:15, 94:12, 94:15
  **party** [11] - 6:7, 38:20, 98:15, 98:19,
99:3, 100:15, 101:8, 102:24, 104:18,
104:22, 105:4
  **passages** [3] - 74:12, 74:13, 74:14
  **patent** [38] - 10:9, 11:11, 12:1, 12:14,
14:12, 14:15, 15:3, 16:25, 17:25, 20:10,
20:15, 21:24, 23:19, 25:2, 25:4, 28:14,
30:7, 30:24, 34:18, 34:21, 36:3, 37:20,
38:8, 39:2, 41:12, 43:24, 46:10, 53:11,
57:4, 57:7, 57:14, 58:9, 67:9, 68:16,
69:14, 70:10, 70:14, 103:11
  **patent-in-suit** [2] - 34:18, 34:21
  **patentee** [12] - 10:2, 11:6, 11:7, 23:14,
23:18, 37:14, 39:8, 39:18, 57:23, 75:9,
88:2, 88:3
  **patents** [1] - 27:5
  **path** [12] - 46:12, 46:16, 48:9, 48:22,
49:11, 49:13, 50:5, 50:11, 51:3, 51:18,
53:2, 53:13
  **pathway** [1] - 32:8
  **pay** [2] - 32:19, 87:23
  **PAYNE** [1] - 1:11
  **pending** [3] - 97:15, 99:2, 103:13
  **people** [5] - 20:21, 21:6, 32:22, 86:11,
101:20
  **percentage** [1] - 86:11
  **perfect** [1] - 40:25
  **perform** [23] - 78:4, 78:5, 78:8, 78:15,
78:21, 78:22, 78:23, 79:5, 79:6, 79:17,
79:20, 81:1, 81:2, 81:24, 82:10, 84:11,
84:15, 86:1, 88:17, 90:9, 90:13
  **performed** [2] - 82:18, 82:19
  **performing** [11] - 68:4, 78:11, 78:18,
79:12, 80:6, 80:16, 80:25, 81:21, 82:14,
84:14
  **performs** [4] - 66:20, 82:1, 88:6, 90:12
  **perhaps** [2] - 16:11, 103:23
  **permanent** [8] - 23:10, 25:11, 29:14,
30:22, 33:5, 33:25, 39:4, 41:22
  **permanently** [3] - 20:22, 20:25, 21:4
  **person** [6] - 9:17, 29:24, 32:9, 60:16,
70:9, 104:6
  **PERSONAL** [3] - 1:3, 1:15, 2:20
  **Personal** [20] - 4:3, 8:16, 14:3, 14:8,
15:25, 22:10, 24:3, 26:8, 26:17, 30:25,
31:25, 33:7, 37:18, 38:4, 38:9, 42:25,
44:16, 46:11, 75:3
  **persons** [1] - 103:24
  **perspective** [2] - 9:23, 43:3
  **Phillips** [2] - 5:3, 15:20
  **PHILLIPS** [2] - 2:1, 2:2
  **phrase** [20] - 9:3, 9:7, 9:13, 14:9,

19:19, 19:23, 20:2, 20:3, 24:17, 24:19,
33:14, 57:23, 66:17, 78:7, 78:16, 80:22,
82:25, 83:1, 87:19, 91:15
  **phrased** [1] - 24:9
  **phrases** [2] - 19:10, 77:25
  **PHRASES** [1] - 3:6
  **physical** [2] - 56:5, 59:1
  **physically** [1] - 59:11
  **picture** [1] - 102:14
  **piece** [3] - 13:18, 13:23
  **Pitcock** [27] - 4:10, 6:22, 7:17, 18:10,
19:8, 20:5, 27:2, 35:11, 41:5, 42:10,
53:15, 65:3, 65:21, 68:18, 71:2, 73:7,
75:1, 75:18, 75:23, 77:11, 77:22, 83:9,
85:8, 86:25, 94:8, 96:9, 104:16
  **PITCOCK** [59] - 1:18, 1:18, 6:13, 6:24,
7:6, 7:9, 7:18, 7:22, 8:1, 18:11, 19:9,
19:12, 27:3, 34:7, 35:14, 38:18, 42:2,
48:6, 49:2, 49:9, 49:17, 50:1, 52:15,
52:18, 53:17, 65:6, 65:22, 66:7, 66:10,
66:15, 69:5, 69:23, 70:17, 76:17, 76:20,
77:24, 79:7, 80:12, 81:8, 82:8, 82:16,
88:23, 89:3, 94:9, 94:25, 95:8, 95:10,
97:17, 97:21, 97:25, 98:9, 98:25, 99:21,
99:24, 100:9, 100:17, 101:7, 102:1,
104:17
  **place** [14] - 29:10, 33:7, 39:4, 44:11,
44:13, 50:20, 51:4, 54:2, 57:20, 57:21,
61:17, 62:1, 62:2, 62:5
  **places** [5] - 30:15, 39:8, 41:7, 49:15,
57:4
  **plain** [13] - 36:25, 37:1, 37:7, 42:4,
54:18, 58:13, 60:6, 60:21, 61:3, 63:3,
66:25, 78:2, 86:20
  **plaintiff** [18] - 4:8, 6:12, 26:23, 27:1,
27:13, 30:17, 33:21, 34:3, 36:14, 37:2,
38:15, 55:2, 62:12, 68:22, 71:21, 97:16,
102:5, 102:14
  **plaintiff's** [5] - 54:20, 71:3, 71:13,
71:18, 73:13
  **plaintiffs** [7] - 62:9, 73:18, 73:24, 74:7,
91:13, 91:18, 103:19
  **plane** [2] - 90:5, 90:6
  **planning** [1] - 34:11
  **play** [11] - 11:14, 25:22, 26:2, 26:14,
26:18, 27:19, 29:11, 29:25, 30:1, 32:4,
32:16
  **playback** [1] - 29:25
  **played** [1] - 30:12
  **player** [8] - 10:25, 11:9, 12:16, 25:22,
30:25, 31:10, 32:9, 93:18
  **players** [1] - 11:13
  **playing** [9] - 10:19, 27:13, 32:14, 33:3,
33:5, 33:15, 41:19, 41:20
  **plays** [1] - 12:16
  **plug** [1] - 64:21
  **plural** [1] - 94:12
  **plurality** [1] - 31:19
  **podium** [1] - 42:14
  **poignant** [1] - 96:7

**point** [38] - 8:14, 19:14, 20:20, 28:12, 28:23, 33:2, 39:10, 49:6, 52:19, 54:19, 55:3, 57:14, 59:2, 64:9, 64:23, 68:7, 71:6, 71:16, 72:17, 73:17, 73:20, 75:21, 76:23, 79:2, 80:18, 81:4, 84:1, 85:11, 86:23, 91:5, 96:12, 97:19, 99:1, 102:10, 103:20, 105:8, 106:20
**pointed** [2] - 62:6, 73:6
**pointing** [8] - 57:21, 58:3, 58:22, 62:5, 64:22, 71:21, 91:19, 97:4
**points** [7] - 55:11, 57:25, 59:8, 59:25, 62:13, 75:3, 85:8
**Poof** [1] - 21:9
**Porter** [9] - 33:20, 33:21, 33:22, 34:3, 35:13, 66:1, 66:11, 69:20
**Porter's** [5] - 34:6, 34:9, 35:15, 36:14, 36:17
**portion** [11] - 11:5, 31:21, 31:24, 32:1, 33:10, 37:3, 38:24, 54:21, 55:1, 55:3, 62:12
**portions** [2] - 17:14, 77:2
**position** [6] - 8:6, 44:17, 69:11, 71:9, 79:3, 88:22
**positions** [2] - 6:3, 6:6
**possibilities** [1] - 56:25
**possibility** [7] - 85:3, 85:16, 85:20, 85:25, 88:16, 89:23, 105:16
**possible** [3] - 17:18, 102:18, 105:24
**potential** [2] - 79:18, 104:4
**practice** [1] - 28:8
**precise** [1] - 17:22
**precisely** [5] - 13:11, 15:12, 17:2, 44:15, 50:10
**preclusion** [1] - 98:12
**predetermine** [1] - 5:21
**predetermined** [9] - 12:17, 57:11, 59:22, 61:1, 63:19, 64:4, 64:6, 64:7, 87:3
**preference** [2] - 7:1, 90:21
**preferred** [6] - 11:4, 52:21, 53:20, 53:21, 58:25, 62:19
**preliminarily** [1] - 50:7
**preliminary** [3] - 5:19, 5:24, 78:25
**premature** [2] - 98:8, 105:9
**prepared** [5] - 6:19, 11:18, 65:24, 100:14, 103:17
**preparing** [1] - 103:17
**preselected** [6] - 87:2, 87:12, 87:20, 87:22, 89:16, 90:2
**present** [7] - 6:11, 7:4, 10:24, 12:2, 12:11, 12:15, 40:20
**PRESENT** [1] - 4:1
**presentation** [4] - 4:11, 5:22, 6:8
**presented** [2] - 6:25, 13:12
**presenting** [1] - 5:4
**preserve** [1] - 105:11
**presumably** [2] - 52:24, 53:25
**presumed** [1] - 9:11
**presumption** [4] - 14:22, 69:12, 69:16
**pretend** [1] - 59:14, 60:11

**pretty** [6] - 28:7, 43:3, 49:2, 65:24, 73:23, 87:11
**prevent** [1] - 47:20
**previous** [2] - 35:12, 89:22
**previously** [1] - 90:25
**primarily** [1] - 56:12
**primary** [2] - 14:7, 79:7
**privilege** [7] - 99:3, 101:9, 101:11, 101:13, 101:21, 101:22, 101:23
**privileged** [4] - 99:10, 99:15, 103:1, 105:2
**problem** [4] - 7:12, 39:17, 43:14, 102:19
**problematic** [1] - 23:23
**problems** [2] - 8:6, 99:13
**procedural** [2] - 103:7, 103:20
**procedurally** [1] - 102:11
**proceed** [5] - 4:11, 5:5, 5:10, 5:15, 32:14
**proceeding** [2] - 98:7, 103:18
**Proceedings** [1] - 107:4
**PROCEEDINGS** [2] - 2:24, 107:9
**process** [5] - 22:5, 26:9, 29:18, 67:21, 72:5
**processing** [1] - 68:1
**processor** [22] - 66:20, 67:4, 67:16, 67:18, 68:4, 68:6, 68:16, 70:19, 71:5, 72:11, 72:12, 72:13, 72:19, 72:20, 73:2, 73:10, 74:2, 74:10, 75:5, 75:10, 75:13, 76:12
**PROCESSORS...FOR...FROM** [1] - 3:9
**produced** [3] - 22:10, 22:14, 104:17
**PRODUCED** [1] - 2:25
**producing** [2] - 67:22, 72:6
**product** [13] - 100:5, 100:7, 100:9, 100:13, 100:14, 100:23, 100:25, 101:11, 101:14, 101:22, 101:24, 102:24, 104:23
**production** [1] - 103:2
**productive** [1] - 7:4
**products** [1] - 86:7
**Program** [1] - 55:5
**program** [19] - 8:12, 10:3, 10:20, 10:25, 11:1, 12:16, 12:17, 18:12, 18:16, 25:25, 26:1, 31:2, 31:13, 31:17, 31:20, 51:9, 53:22, 55:6, 93:23
**programming** [25] - 10:5, 10:8, 10:9, 10:10, 10:12, 10:13, 11:12, 11:13, 11:14, 16:8, 16:12, 16:13, 16:14, 16:24, 17:1, 17:7, 17:9, 17:18, 17:25, 18:1, 22:15, 29:2, 29:4, 29:20
**programs** [10] - 10:20, 10:21, 16:21, 17:2, 25:22, 25:23, 29:3, 29:11, 29:22, 74:22
**proofed** [1] - 26:25
**proper** [3] - 27:19, 67:12, 82:9
**proposal** [2] - 8:6, 43:4
**propose** [1] - 75:7
**proposed** [13] - 8:15, 22:20, 24:4,

33:8, 44:7, 44:8, 45:7, 45:10, 45:16, 71:18, 83:3, 84:21
**proposing** [1] - 68:24
**prosecution** [17] - 23:16, 23:17, 23:19, 33:18, 33:24, 35:6, 35:20, 36:22, 36:24, 37:4, 37:14, 38:6, 38:9, 39:21, 39:25, 40:21, 41:10
**protect** [2] - 99:5, 100:25
**protected** [1] - 100:4
**protection** [2] - 101:4, 101:24
**protects** [1] - 101:1
**provide** [4] - 11:8, 26:22, 36:16, 58:23
**provided** [6] - 5:18, 11:17, 20:14, 21:18, 38:2, 48:12
**provides** [2] - 57:19, 58:14
**providing** [1] - 25:21
**PTO** [1] - 103:11
**published** [1] - 27:24
**pure** [1] - 12:5
**purport** [2] - 44:22, 46:2
**purported** [1] - 29:8
**purpose** [3] - 5:20, 32:25, 82:6
**purposes** [2] - 30:14, 102:18
**pursuit** [1] - 101:17
**put** [13] - 6:1, 11:24, 33:20, 35:3, 45:12, 62:3, 73:7, 73:9, 78:9, 78:25, 91:10, 100:21, 106:22
**puts** [1] - 105:13
**putting** [2] - 62:20, 77:16

**Q**

**QUESTION** [2] - 34:16, 34:20
**questions** [8] - 18:3, 25:15, 38:12, 43:6, 43:11, 61:15, 76:13, 87:5
**quickly** [2] - 15:24, 77:11
**quite** [2] - 73:1, 75:7
**quote** [5] - 22:14, 22:16, 22:22, 37:22, 74:11
**quoted** [1] - 75:23
**quotes** [1] - 28:24
**quoting** [1] - 92:8

**R**

**radio** [1] - 27:9
**random** [1] - 86:9
**rather** [4] - 5:22, 6:4, 55:19, 68:11
**rationale** [1] - 45:18
**re** [1] - 105:14
**re-urge** [1] - 105:14
**read** [16] - 34:8, 53:20, 58:20, 66:10, 69:2, 70:11, 72:4, 75:21, 78:19, 80:25, 81:23, 88:9, 94:12, 94:13, 98:1, 98:2
**Reading** [2] - 40:16, 40:18
**reading** [24] - 17:7, 22:22, 28:25, 30:9, 31:18, 32:7, 38:5, 50:13, 51:11, 55:12, 55:13, 58:18, 61:11, 70:10, 72:5, 73:12,

73:19, 74:15, 75:6, 75:20, 86:3, 89:11, 90:8, 98:5

**reads** [3] - 22:14, 56:14, 56:15

**ready** [4] - 4:11, 5:5, 5:10, 5:14

**real** [5] - 77:11, 98:15, 98:19, 102:17, 105:4

**Real** [1] - 21:23

**realize** [1] - 40:23

**really** [23] - 10:6, 10:7, 10:15, 12:22, 37:6, 42:25, 47:16, 54:22, 54:23, 54:25, 57:21, 58:16, 62:14, 73:18, 74:8, 76:21, 76:22, 80:7, 87:5, 88:8, 88:18, 89:25, 98:25

**realm** [1] - 51:22

**reason** [19] - 22:19, 22:25, 39:1, 40:3, 40:5, 45:16, 59:16, 59:17, 61:10, 62:22, 76:22, 76:25, 78:24, 83:1, 84:19, 94:15, 99:5, 99:15, 104:19

**reasons** [7] - 37:23, 37:24, 68:11, 75:19, 75:22, 75:25, 93:6

**rebuttal** [1] - 39:2

**RECEIVE** [1] - 3:11

**receive** [7] - 59:11, 87:24, 93:8, 95:16, 96:3, 96:7, 96:20

**received** [2] - 97:3, 106:9

**receives** [1] - 31:11

**receiving** [13] - 31:2, 31:5, 31:8, 31:16, 39:19, 90:19, 91:15, 91:24, 92:2, 92:24, 96:2, 97:7

**recess** [2] - 65:4, 65:18

**Recess** [1] - 65:19

**reconcile** [1] - 80:13

**RECORD** [1] - 107:9

**record** [13] - 4:2, 4:6, 5:17, 6:1, 19:18, 20:1, 27:16, 28:3, 34:9, 50:5, 51:2, 98:1, 105:10

**record's** [1] - 55:5

**refer** [4] - 11:18, 41:10, 44:19, 77:7

**reference** [12] - 23:21, 23:22, 25:24, 32:3, 33:22, 49:20, 50:8, 51:15, 66:13, 68:2, 75:4, 75:18

**referenced** [2] - 79:19, 86:25

**references** [5] - 19:4, 23:21, 23:25, 37:16, 40:14

**referred** [2] - 30:18, 41:7

**referring** [4] - 27:5, 49:15, 77:4, 97:2

**refers** [6] - 12:2, 12:11, 39:6, 49:7, 49:18, 61:18

**regard** [1] - 104:11

**regarding** [3] - 41:7, 99:4, 102:22

**Regardless** [1] - 91:2

**regardless** [2] - 63:5, 73:11

**Reisman** [1] - 76:3

**relate** [2] - 75:15, 98:24

**related** [1] - 54:9

**relates** [1] - 10:17

**relating** [5] - 72:22, 83:21, 83:23

**relatively** [1] - 67:4

**relevance** [1] - 105:9

**relevant** [11] - 12:4, 27:4, 33:10, 33:11,

35:8, 56:25, 62:10, 72:20, 99:5, 99:15, 104:25

**religious** [1] - 106:16

**remote** [2] - 31:3, 31:17

**remotely** [3] - 97:3, 97:4, 97:8

**removable** [1] - 25:5

**render** [2] - 24:4, 25:12, 105:6

**rendered** [1] - 53:7

**repeated** [1] - 25:24

**repeatedly** [1] - 23:18

**replace** [1] - 44:8

**replaceable** [1] - 30:12

**replete** [1] - 19:3

**reply** [3] - 33:12, 73:20, 89:4

**report** [9] - 34:9, 35:6, 35:18, 35:25, 36:1, 36:7, 36:9, 67:23

**REPORTED** [1] - 2:24

**REPORTER** [2] - 2:22, 2:22

**REPORTER'S** [2] - 1:10, 107:6

**represent** [5] - 5:24, 9:16, 105:18

**representative** [1] - 100:16

**represented** [2] - 18:18, 66:23

**representing** [4] - 9:7, 9:13, 76:4, 76:9

**REQUEST** [1] - 3:11

**request** [32] - 25:23, 30:5, 59:12, 69:2, 91:16, 92:7, 92:11, 92:14, 92:17, 92:18, 92:19, 92:20, 92:25, 93:1, 93:11, 93:24, 94:2, 94:7, 94:22, 95:2, 96:2, 96:4, 96:21, 96:22, 97:1, 97:2, 97:4, 97:7, 97:9, 103:2, 103:13

**requesting** [2] - 22:22, 96:4

**requests** [5] - 92:2, 92:3, 93:8, 93:18, 95:16

**require** [5] - 35:4, 50:5, 62:19, 95:18, 96:17

**required** [3] - 29:12, 46:18, 73:22

**requirement** [1] - 74:23

**requirements** [1] - 51:23

**requires** [10] - 8:24, 25:10, 40:24, 41:16, 41:22, 63:17, 66:19, 75:13, 81:11, 89:14

**requiring** [1] - 74:20

**resource** [18] - 42:15, 42:20, 43:2, 43:6, 43:9, 43:13, 43:16, 43:17, 43:21, 43:24, 44:8, 44:12, 45:10, 45:23, 46:7, 46:25, 49:24, 52:8

**resources** [1] - 43:23

**respect** [15] - 8:5, 8:9, 24:22, 37:23, 37:25, 40:21, 41:10, 41:17, 43:12, 71:3, 74:5, 84:9, 87:18, 95:15

**respectfully** [3] - 78:13, 88:14, 91:6

**respective** [1] - 62:13

**respond** [9] - 18:10, 65:3, 89:2, 92:20, 93:8, 96:3, 96:7, 96:20, 96:22

**RESPOND** [1] - 3:11

**responding** [2] - 65:9, 90:19, 91:15, 91:16, 91:24, 92:3, 92:25, 93:3, 93:10, 94:1, 97:8, 105:3

**response** [21] - 31:11, 31:12, 38:4, 38:15, 38:18, 93:5, 93:15, 93:17, 94:7,

94:17, 94:19, 94:23, 95:3, 96:10, 96:12, 96:15, 102:6, 103:10, 103:12, 104:20

**responses** [3] - 41:12, 41:13, 90:23

**responsive** [1] - 87:3

**rest** [2] - 65:5, 76:14

**resulting** [1] - 95:6

**results** [2] - 94:18, 105:12

**Retractable** [7] - 11:22, 13:5, 13:13, 13:16, 14:17, 15:6, 15:17

**review** [1] - 5:25

**reviewed** [1] - 34:20

**rewrite** [1] - 89:15

**REYES** [1] - 1:21

**rid** [1] - 63:20

**ROAD** [2] - 1:16, 2:19

**ROBERTSON** [1] - 2:12

**Rosenbloom** [1] - 4:21

**ROSENBLOOM** [2] - 2:9, 4:22

**ROTHWELL** [1] - 2:9

**ROY** [1] - 1:11

**RPR** [2] - 2:22, 107:12

**RPR-CRR** [2] - 2:22, 107:12

**Rule** [1] - 101:24

**ruling** [5] - 88:19, 98:3, 98:6, 98:7, 105:24

## S

**SAID** [1] - 3:10

**SAID.** [1] - 3:12

**salt** [6] - 12:5, 12:6, 15:10, 15:11, 15:12, 19:1

**salt'** [1] - 12:8

**salts** [2] - 12:3, 12:11

**Sandy** [1] - 5:14

**saw** [4] - 7:19, 17:6, 56:8, 56:14

**schedule** [1] - 12:17

**schedules** [1] - 29:3

**scope** [4] - 9:16, 28:9, 101:20, 104:13

**screen** [1] - 62:3

**second** [18] - 19:23, 20:3, 28:23, 29:19, 46:4, 54:22, 55:8, 57:10, 59:19, 66:12, 75:24, 78:7, 87:8, 88:15, 91:5, 93:2, 98:25, 106:11

**seconds** [2] - 26:16, 26:24

**secretary** [1] - 26:23

**see** [1] - 16:17, 16:19, 47:10, 57:13, 57:19, 57:22, 58:2, 58:6, 59:24, 65:20, 67:9

**seeing** [1] - 62:18

**seeking** [7] - 35:2, 68:22, 88:19, 102:15, 102:16, 102:21, 104:25

**seem** [4] - 49:9, 58:11, 58:17, 65:12

**Segment** [1] - 55:5

**segment** [8] - 26:1, 32:12, 51:9, 55:6, 74:12, 75:22, 93:25

**segments** [5] - 12:17, 18:13, 18:14, 53:22, 93:23

**select** [2] - 77:17, 86:17

**selected** [1] - 86:18
**selecting** [4] - 10:19, 86:14, 86:19, 86:21
**selection** [1] - 106:10
**selections** [1] - 31:13
**send** [3] - 16:25, 59:12, 90:2
**sense** [8] - 40:8, 41:1, 41:3, 66:15, 77:13, 77:25, 78:21, 83:15
**sent** [3] - 48:22, 53:7, 93:24
**sentence** [4] - 31:7, 50:17, 58:4, 74:16
**separate** [3] - 16:20, 33:2, 91:4
**September** [5] - 106:11, 106:14, 106:17, 106:23
**series** [2] - 8:13, 66:23
**seriously** [1] - 68:20
**serve** [1] - 59:10
**served** [2] - 97:22
**server** [25] - 31:3, 31:11, 31:17, 31:19, 31:23, 40:17, 41:1, 48:20, 51:12, 51:14, 52:23, 52:24, 55:15, 56:6, 56:7, 56:9, 58:5, 58:8, 67:15, 93:22, 93:24
**servers** [18] - 57:10, 58:5, 59:9, 59:11, 59:21, 60:1, 60:15, 60:20, 60:24, 60:25, 63:18, 63:19, 63:20, 63:22, 63:23, 64:3, 81:14
**service** [3] - 21:2, 21:11, 32:13
**session** [1] - 29:3
**session's** [1] - 29:2
**sessions** [1] - 29:25
**set** [7] - 5:18, 40:16, 42:7, 45:5, 59:8, 83:11, 97:23
**sets** [2] - 29:18, 73:21
**seven** [3] - 37:13, 37:19, 39:24
**several** [5] - 23:21, 27:5, 61:6, 104:7, 106:8
**share** [1] - 102:25
**shared** [1] - 101:10
**Sharon** [2] - 4:19, 70:23
**SHARON** [1] - 2:8
**sheds** [1] - 81:5
**sheet** [1] - 7:1
**shelf** [2] - 64:14, 64:19
**short** [2] - 42:15, 65:4
**show** [6] - 14:24, 26:14, 55:8, 56:25, 75:8, 105:3
**showed** [1] - 103:16
**showing** [3] - 37:22, 101:5, 101:15
**shown** [1] - 46:11
**shows** [1] - 26:16
**side** [7] - 7:14, 11:24, 41:1, 88:1, 93:18, 93:22
**sides** [2] - 42:14, 42:23
**SIEBMAN** [1] - 2:2
**similar** [3] - 12:15, 65:24, 98:5
**similarly** [1] - 12:18
**simple** [1] - 7:10
**simply** [12] - 6:4, 9:6, 11:24, 31:9, 36:9, 41:10, 47:14, 50:20, 60:12, 64:8, 74:3, 79:4

**single** [8] - 40:10, 78:20, 79:6, 84:14, 86:21, 88:6, 89:9, 89:10
**six** [6] - 12:3, 12:8, 12:11, 15:12, 18:24, 104:7
**size** [1] - 46:20
**skill** [11] - 36:1, 38:23, 42:7, 53:10, 65:13, 67:8, 69:23, 69:25, 70:6, 70:7, 77:6
**skipped** [1] - 55:18
**slide** [12] - 13:14, 16:16, 18:12, 24:21, 35:12, 50:9, 54:20, 57:2, 63:16, 71:6, 73:15, 93:21
**Slide** [23] - 11:23, 20:13, 21:22, 23:15, 24:15, 24:18, 25:3, 25:19, 28:19, 28:22, 28:23, 30:23, 36:23, 37:21, 38:2, 44:3, 71:3, 72:15, 74:5, 76:20, 83:5, 86:4, 93:12
**slides** [4] - 11:17, 11:19, 34:6, 55:22
**slot** [2] - 86:7, 86:8
**small** [3] - 74:12, 86:11, 86:16
**smaller** [1] - 15:23
**SMITH** [4] - 1:15, 2:1, 2:2, 5:2
**Smith** [2] - 5:3, 5:7
**snippet** [1] - 76:21
**solely** [2] - 35:2, 104:9
**solid** [1] - 12:5
**sometimes** [1] - 69:12
**Sometimes** [1] - 48:13
**somewhere** [5] - 47:22, 60:14, 60:16, 63:24, 64:10
**songs** [6] - 20:21, 20:22, 20:24, 21:3, 29:23
**soon** [1] - 105:24
**Sorry** [2] - 83:25, 93:13
**sorry** [8] - 17:3, 28:21, 31:12, 52:16, 81:11, 99:21, 102:1, 106:2
**sort** [6] - 19:13, 24:6, 27:7, 33:16, 101:16, 102:4
**sorts** [1] - 95:2
**sought** [3] - 43:1, 43:13, 43:25
**sources** [2] - 67:24, 72:7
**SOUTH** [1] - 2:5
**speaking** [1] - 9:12
**spec** [2] - 18:15, 77:2
**special** [1] - 101:4
**Specific** [1] - 30:6
**specific** [21] - 20:10, 20:11, 47:3, 47:18, 47:25, 48:1, 48:2, 50:6, 50:12, 51:15, 52:3, 54:11, 59:1, 59:15, 70:14, 74:19, 81:24, 83:1, 83:20, 84:2, 102:3
**specifically** [27] - 24:13, 34:10, 37:14, 39:7, 48:7, 48:12, 54:17, 57:24, 58:18, 68:9, 72:18, 73:21, 75:12, 78:10, 78:17, 79:11, 80:4, 80:14, 80:23, 81:13, 81:17, 83:12, 85:17, 89:9, 89:22, 90:1, 90:7
**specification** [100] - 11:24, 11:25, 12:9, 12:20, 13:8, 13:10, 13:15, 14:1, 14:19, 15:7, 15:19, 15:20, 16:1, 16:7, 17:4, 17:8, 17:15, 17:21, 18:23, 19:2, 19:3, 25:2, 25:4, 25:16, 25:19, 26:16,

28:5, 28:15, 28:16, 28:19, 28:24, 29:7, 29:21, 30:4, 30:7, 30:16, 30:18, 30:20, 31:4, 31:7, 31:18, 31:21, 31:24, 32:1, 32:6, 33:8, 33:11, 34:21, 36:19, 38:24, 39:2, 39:3, 39:9, 41:8, 41:18, 44:6, 46:10, 51:4, 51:8, 52:20, 53:23, 54:22, 54:23, 55:1, 56:14, 56:15, 57:20, 59:3, 60:5, 61:12, 61:18, 62:2, 62:11, 62:13, 63:6, 67:13, 67:14, 67:25, 68:2, 68:17, 69:4, 69:8, 70:2, 70:5, 70:11, 73:14, 74:6, 74:8, 74:14, 76:24, 77:3, 77:8, 79:10, 81:5, 81:11, 86:15, 93:9, 93:16, 93:22, 94:3
**specifics** [1] - 76:8
**specified** [4] - 57:9, 58:19, 63:12, 64:6
**specifies** [8] - 44:12, 48:21, 50:17, 51:8, 55:5, 61:24, 92:23, 92:24
**specify** [5] - 49:4, 49:12, 52:22, 62:16, 82:15
**specifying** [7] - 48:8, 48:16, 51:15, 53:6, 57:12, 58:21, 68:4
**speed** [1] - 31:1
**spend** [1] - 54:7
**squarely** [2] - 86:4, 86:23
**stage** [1] - 105:9
**standardized** [1] - 42:18
**standing** [1] - 47:12
**stands** [2] - 42:21, 43:15
**start** [7] - 6:21, 14:21, 15:19, 32:6, 42:13, 68:20, 71:1
**started** [1] - 14:5
**starting** [2] - 11:5, 85:11
**starts** [1] - 85:9
**state** [5] - 4:5, 12:6, 14:19, 36:5, 105:10
**statement** [11] - 12:2, 27:9, 50:13, 67:20, 71:7, 71:9, 71:14, 71:21, 71:22, 72:11, 96:24
**statements** [5] - 10:15, 13:24, 38:2, 38:8, 65:14
**states** [1] - 83:6
**STATES** [2] - 1:1, 1:11
**stay** [4] - 23:15, 103:18, 104:25, 105:6
**stays** [1] - 61:11
**steamed** [1] - 29:15
**STENOTYPE** [1] - 2:24
**step** [1] - 9:2
**steps** [2] - 75:11, 75:15
**Steve** [2] - 4:17, 20:7
**STEVEN** [1] - 2:8
**still** [6] - 48:17, 48:21, 58:22, 90:4, 103:13
**stood** [1] - 106:3
**stop** [3] - 18:2, 61:14, 105:5
**storage** [108] - 22:23, 22:24, 23:5, 23:10, 24:5, 24:24, 25:7, 25:10, 25:12, 25:24, 29:14, 30:22, 33:6, 37:12, 39:5, 40:1, 40:4, 40:5, 40:20, 40:24, 41:16, 41:22, 42:4, 51:10, 51:13, 53:16, 53:22, 54:1, 54:12, 54:17, 54:24, 55:7, 55:9,

55:11, 55:13, 55:14, 55:19, 55:20, 56:4, 56:5, 56:17, 56:18, 56:21, 57:3, 57:5, 57:9, 57:10, 57:11, 57:12, 57:13, 57:15, 57:23, 57:24, 57:25, 58:10, 58:13, 58:16, 58:24, 59:4, 59:7, 59:21, 60:2, 60:7, 60:9, 60:10, 60:24, 61:3, 61:18, 61:19, 61:20, 61:22, 61:24, 61:25, 62:7, 62:16, 62:17, 62:23, 63:1, 63:2, 63:9, 63:10, 63:11, 63:18, 63:20, 63:25, 64:3, 64:4, 64:8, 64:10, 64:11, 64:19, 64:23, 64:24, 65:12, 67:7, 69:14, 69:22, 69:24, 72:22, 81:14, 95:11

**STORAGE** [1] - 3:8

**Storage** [1] - 57:6

**store** [12] - 20:24, 40:6, 40:8, 40:15, 40:17, 46:13, 52:23, 53:25, 57:16, 69:24, 73:2, 75:14

**stored** [25] - 16:22, 19:16, 21:4, 22:6, 24:14, 24:25, 25:3, 25:5, 29:16, 30:11, 30:13, 40:12, 40:19, 41:8, 46:15, 57:9, 57:22, 60:14, 60:15, 60:20, 60:23, 60:25, 68:10, 81:17

**storing** [18] - 24:2, 24:12, 24:16, 24:19, 31:19, 35:5, 35:23, 39:4, 39:20, 39:24, 40:14, 40:15, 59:20, 60:22, 66:24, 72:21, 72:24, 73:10

**straightforward** [1] - 67:5

**Streambox** [1] - 21:24

**streamed** [9] - 21:5, 21:7, 21:12, 21:14, 21:20, 30:2, 30:3, 33:25, 40:19

**Streaming** [1] - 22:4

**streaming** [22] - 20:12, 21:25, 22:19, 22:25, 23:2, 23:6, 23:20, 23:25, 29:14, 29:16, 33:19, 33:23, 34:5, 35:23, 36:21, 37:11, 37:17, 37:22, 38:22, 40:1, 40:2, 41:14

**streams** [1] - 40:16

**STREET** [4] - 1:24, 2:2, 2:10, 2:16

**strong** [1] - 101:5

**Subject** [1] - 42:2

**subject** [1] - 104:5

**submission** [2] - 22:11, 22:12

**submissions** [1] - 37:19

**submit** [2] - 26:25, 27:1

**subparagraph** [1] - 92:17

**subpart** [2] - 83:21, 83:22

**subpoenaed** [1] - 38:21

**subscriber** [1] - 25:21

**subset** [2] - 15:23, 86:16

**substance** [1] - 72:14

**substantively** [1] - 33:14

**substitute** [1] - 16:13

**successfully** [1] - 23:24

**suggest** [3] - 68:12, 78:13, 79:16

**suggested** [2] - 8:7, 75:19

**suggesting** [3] - 76:8, 79:16, 96:13

**suggests** [3] - 75:4, 78:4, 84:10

**suit** [2] - 34:18, 34:21

**SUITE** [6] - 1:16, 1:22, 2:10, 2:13, 2:16, 2:23

**Summary** [7] - 10:23, 14:4, 14:11, 14:14, 15:13, 16:2, 17:16

**summary** [1] - 13:21

**SUMMER** [1] - 1:24

**superfluous** [2] - 24:5, 25:12

**supplement** [1] - 27:16

**supplementation** [1] - 28:3

**supply** [1] - 74:23

**support** [7] - 33:8, 37:8, 39:22, 71:19, 74:15, 79:3, 99:12

**supported** [4] - 71:9, 75:20, 86:2, 97:9

**supports** [2] - 74:9, 75:6

**supposed** [5] - 42:19, 43:8, 43:16, 47:25, 99:25

**surprise** [1] - 106:19

**suspect** [1] - 45:17

**sustain** [2] - 27:13, 27:22

**synonymously** [1] - 11:1

**syringe** [4] - 13:17, 13:18, 13:22, 13:23

**system** [4] - 10:18, 30:10, 46:14, 75:10

**systems** [1] - 10:18

# T

**tab** [1] - 71:12

**Tab** [2] - 66:12, 67:20

**table** [2] - 4:8, 40:18

**talks** [25] - 16:3, 19:19, 19:23, 29:21, 30:9, 31:9, 31:18, 31:21, 39:4, 49:19, 53:22, 57:21, 62:5, 67:25, 74:17, 78:10, 78:14, 78:17, 81:13, 89:7, 91:20, 91:25, 93:3, 93:10, 93:16

**tamperproof** [1] - 13:22

**tasks** [3] - 72:19, 72:20, 83:20

**teach** [3] - 15:6, 40:14, 40:15

**teaches** [3] - 15:20, 30:4, 39:3

**technical** [2] - 69:14, 69:15

**technically** [3] - 19:19, 20:2, 101:23

**Technologies** [7] - 11:23, 13:6, 13:13, 13:16, 14:17, 15:6, 15:17

**technology** [4] - 6:9, 6:14, 20:18, 20:20

**Technology** [1] - 86:6

**teenager** [1] - 20:19

**teenagers** [1] - 32:18

**temporary** [2] - 29:4, 39:5

**ten** [1] - 65:18

**ten-minute** [1] - 65:18

**tentative** [1] - 22:21

**term** [51] - 6:11, 6:23, 6:25, 7:3, 8:9, 8:20, 8:23, 9:4, 10:7, 18:7, 20:8, 20:9, 22:9, 29:12, 34:12, 35:9, 38:23, 39:7, 39:23, 40:11, 42:15, 42:24, 43:2, 43:5, 43:10, 44:6, 44:11, 49:17, 54:2, 57:3, 57:5, 61:10, 62:18, 65:4, 65:11, 65:15, 65:21, 66:17, 67:6, 67:7, 69:10, 69:17, 69:18, 70:4, 77:5, 77:22, 79:9, 82:13, 84:12, 90:18

**term-by-term** [1] - 6:11

**terminology** [1] - 52:6

**terms** [32] - 6:15, 6:17, 6:19, 7:4, 7:15, 7:20, 9:3, 9:6, 9:10, 9:21, 13:7, 13:9, 21:22, 23:3, 34:17, 34:22, 35:13, 42:6, 48:25, 50:10, 50:25, 51:1, 52:7, 61:23, 66:16, 67:11, 67:14, 69:13, 73:19, 76:15, 80:21, 103:6

**testified** [1] - 38:21

**testimony** [10] - 28:13, 33:16, 34:8, 35:1, 35:16, 36:6, 36:8, 36:16, 36:17, 38:19

**TEXAS** [7] - 1:1, 1:7, 1:17, 1:22, 2:3, 2:14, 2:17, 2:19, 2:23

**text** [11] - 16:4, 16:9, 16:23, 17:7, 17:8, 17:10, 17:19, 18:13, 48:19, 53:4, 53:6

**THAT** [1] - 107:7

**THE** [131] - 1:11, 1:18, 2:18, 2:18, 4:2, 4:12, 4:25, 5:6, 5:11, 5:16, 6:16, 6:20, 7:2, 7:8, 7:16, 7:19, 7:25, 8:2, 8:20, 11:20, 12:22, 13:1, 18:4, 18:6, 18:9, 19:7, 19:11, 20:4, 23:7, 25:17, 26:19, 27:2, 27:12, 28:7, 28:17, 35:11, 36:4, 36:12, 38:14, 38:17, 41:4, 41:24, 42:1, 42:9, 44:10, 45:3, 45:20, 47:4, 48:3, 48:24, 49:8, 49:14, 49:22, 50:3, 51:25, 52:12, 52:14, 52:17, 53:14, 54:4, 57:5, 61:16, 62:1, 62:14, 63:8, 63:25, 64:15, 64:18, 64:25, 65:2, 65:17, 65:20, 66:3, 66:6, 66:9, 66:14, 68:18, 69:21, 70:12, 70:21, 70:25, 76:16, 76:19, 77:9, 77:22, 78:24, 80:10, 81:3, 82:2, 82:12, 82:21, 84:13, 84:18, 84:20, 88:8, 88:21, 89:1, 90:15, 91:10, 92:6, 92:12, 92:16, 93:2, 94:8, 94:23, 95:5, 95:9, 95:17, 96:13, 97:12, 97:20, 97:24, 98:1, 98:21, 99:17, 99:22, 100:6, 100:12, 100:24, 101:12, 102:2, 103:22, 104:12, 104:15, 105:7, 105:22, 106:7, 106:21, 107:2, 107:8

**themselves** [1] - 13:7

**theoretically** [1] - 95:1

**theory** [1] - 100:20

**thereafter** [1] - 96:3

**THEREAFTER** [1] - 3:11

**therefore** [2] - 83:14, 102:25

**they've** [5] - 53:1, 70:6, 101:7, 103:3, 104:17

**third** [11] - 19:9, 38:20, 57:12, 58:16, 58:20, 71:6, 99:3, 101:8, 104:3, 104:18, 104:22

**third-party** [3] - 38:20, 104:18, 104:22

**THIS** [1] - 107:7

**Thompson** [1] - 4:10

**THOMPSON** [1] - 1:23

**three** [22] - 7:23, 24:11, 37:19, 37:20, 38:1, 41:11, 41:12, 42:16, 57:4, 57:7, 57:8, 78:9, 79:6, 79:15, 80:7, 82:1, 85:2, 85:6, 88:18, 90:14

**THROUGH** [1] - 1:9

**throughout** [5] - 10:14, 11:11, 17:3,

17:4, 26:8
  **throwaway** [1] - 35:15
  **TIME** [2] - 3:9
  **TO** [4] - 3:9, 3:11, 3:11, 3:13
  **today** [2] - 5:4, 39:12
  **today's** [1] - 11:18
  **together** [4] - 19:14, 54:13, 54:14, 78:1
  **TOGI** [1] - 1:6
  **Togi** [1] - 4:3
  **tomorrow** [1] - 27:1
  **TONYA** [2] - 2:22, 107:12
  **took** [1] - 99:1
  **top** [9] - 32:2, 47:21, 63:16, 89:11, 91:20, 91:25, 92:10, 92:12, 92:21
  **toward** [1] - 83:3
  **trace** [1] - 22:3
  **TRANSCRIPT** [3] - 1:10, 2:25, 107:8
  **transcript** [4] - 26:22, 26:24, 27:6, 66:11
  **TRANSCRIPTION** [1] - 2:25
  **transcripts** [1] - 17:8
  **transfer** [1] - 22:14
  **transferred** [3] - 19:16, 39:8, 48:19
  **transferring** [1] - 20:17
  **translatable** [1] - 63:3
  **transmission** [2] - 31:12, 31:13
  **transmitted** [1] - 34:1
  **transmitting** [2] - 31:3, 31:9
  **trial** [3] - 103:11, 106:13, 106:17
  **tries** [3] - 38:25, 39:11, 39:13
  **trip** [1] - 85:23
  **trips** [4] - 85:2, 85:4, 85:6, 85:15
  **trouble** [2] - 62:15, 62:17
  **true** [3] - 24:22, 31:15, 53:4
  **trust** [1] - 26:9
  **try** [11] - 27:10, 34:21, 43:5, 43:10, 43:11, 46:2, 46:5, 67:13, 68:18, 68:21, 94:9
  **trying** [26] - 6:3, 11:12, 19:15, 20:24, 21:11, 34:8, 35:14, 41:2, 45:12, 45:23, 46:8, 46:21, 47:19, 50:14, 51:22, 52:7, 73:18, 73:25, 76:23, 79:25, 80:22, 81:6, 90:24, 94:11, 102:2, 104:21
  **Tuesday** [3] - 26:4, 27:24, 27:25
  **turn** [6] - 6:12, 7:13, 71:14, 73:14, 74:5, 74:7
  **Turning** [1] - 36:22
  **turning** [2] - 25:19, 72:14
  **tutorial** [1] - 6:14
  **two** [23] - 9:6, 9:20, 14:16, 17:12, 20:16, 21:21, 22:2, 25:3, 30:18, 33:2, 43:5, 46:17, 66:16, 71:15, 72:18, 72:20, 74:13, 76:15, 77:25, 87:5, 88:18, 88:20, 90:23
  **Two** [1] - 98:12
  **TYLER** [1] - 2:14
  **Tyler** [1] - 85:1
  **type** [11] - 10:2, 10:8, 11:12, 11:13, 14:15, 26:23, 44:23, 46:3, 46:25, 84:6,

100:13
  **types** [16] - 12:3, 12:8, 12:11, 15:12, 16:3, 16:21, 16:22, 17:17, 17:23, 18:17, 43:23, 43:24, 45:25, 47:1, 47:2, 74:22
  **typology** [1] - 9:17

**U**

  **unavailable** [2] - 32:11, 93:25
  **undefined** [1] - 70:4
  **under** [5] - 48:25, 61:3, 95:6, 101:9, 101:24
  **underneath** [1] - 78:2
  **understood** [1] - 44:16
  **undisputed** [1] - 10:15
  **Unfortunately** [1] - 79:8
  **unique** [2] - 57:9, 58:19
  **unit** [1] - 25:25
  **UNITED** [2] - 1:1, 1:11
  **universal** [5] - 42:15, 42:18, 43:2, 43:16, 52:8
  **unless** [2] - 18:2, 101:7
  **unlike** [1] - 89:21
  **Unlike** [1] - 20:8
  **unrebutted** [1] - 36:17
  **up** [25] - 6:17, 10:16, 16:16, 18:12, 26:12, 26:24, 27:16, 37:3, 47:7, 50:9, 51:4, 53:18, 54:20, 59:10, 59:17, 62:3, 63:16, 66:12, 83:11, 84:5, 85:20, 86:9, 98:22, 105:14, 106:3
  **update** [3] - 76:12, 103:8, 103:20
  **updated** [13] - 59:20, 59:25, 60:22, 63:17, 66:24, 67:2, 72:24, 73:2, 73:4, 73:10, 75:14, 83:22, 83:24
  **updatedversion.htm** [1] - 59:16, 60:14
  **updates** [2] - 29:20, 76:2
  **updating** [3] - 68:12, 75:11, 76:2
  **uploading** [1] - 31:13
  **uploading)** [1] - 31:3
  **urge** [1] - 105:14
  **URL** [72] - 3:7, 26:23, 42:3, 42:15, 42:21, 43:5, 43:10, 43:15, 43:20, 43:22, 44:4, 44:6, 44:11, 44:14, 44:19, 44:21, 45:4, 46:6, 46:24, 47:9, 47:25, 48:7, 48:9, 48:13, 48:16, 48:21, 49:3, 49:6, 49:10, 49:12, 49:15, 49:20, 50:6, 50:23, 51:4, 51:8, 51:22, 52:1, 52:6, 52:19, 53:2, 53:10, 54:10, 54:12, 54:24, 55:5, 55:11, 57:10, 57:11, 57:18, 57:25, 58:20, 59:8, 59:18, 59:22, 60:11, 60:18, 61:1, 61:2, 63:12, 63:19, 63:21, 64:4, 64:7, 64:9, 64:22, 67:7, 69:13, 92:4, 95:2
  **URLs** [12] - 47:6, 50:13, 57:12, 57:13, 57:21, 58:20, 58:22, 59:2, 62:5, 76:5, 76:10, 83:23
  **usage** [2] - 12:7, 44:6
  **useful** [1] - 100:4
  **user** [8] - 16:25, 25:25, 29:9, 29:10,

30:6, 31:23, 32:3, 74:23
  **uses** [2] - 24:24, 28:23
  **USING** [1] - 2:24
  **uspto.gov** [1] - 61:5
  **uspto.gov/compilationfiles/ updatedversion** [1] - 59:24
  **uspto.gov/compilationfiles/ updatedversion.htm** [1] - 60:12
  **utilizes** [1] - 11:7

**V**

  **vacuum** [2] - 12:19, 13:8
  **vague** [5] - 15:1, 42:21, 47:21, 52:7, 84:24
  **vendors** [1] - 101:19
  **Verizon** [1] - 15:17
  **version** [12] - 59:20, 59:25, 60:22, 63:17, 66:24, 67:3, 68:13, 72:24, 73:2, 73:4, 83:22, 83:24
  **versus** [5] - 4:3, 21:24, 34:5, 86:6, 86:25
  **VIA** [1] - 2:25
  **video** [2] - 22:2, 22:6
  **view** [5] - 8:16, 8:17, 9:6, 17:17, 37:10
  **voided** [1] - 98:19
  **VOLUME** [1] - 1:9
  **VS** [1] - 1:5

**W**

  **waive** [2] - 101:12, 101:21
  **waived** [3] - 101:8, 101:11, 101:14
  **WALKER** [1] - 2:15
  **Wan** [1] - 4:23
  **WAN** [2] - 2:21, 4:24
  **wants** [2] - 6:8, 97:16
  **Ward** [2] - 4:8, 4:12
  **WARD** [3] - 1:15, 1:15, 4:7
  **warehouse** [2] - 64:12, 64:13
  **WASHINGTON** [1] - 2:11
  **watch** [7] - 21:8, 21:12, 21:16, 21:17, 32:23, 32:24, 32:25
  **watched** [2] - 21:13, 34:2
  **watching** [1] - 21:8
  **ways** [4] - 20:17, 61:8, 73:19, 94:11
  **web** [8] - 47:9, 52:23, 52:24, 55:15, 58:5, 58:8, 59:10, 59:12
  **website** [11] - 45:11, 45:12, 46:15, 47:10, 47:14, 47:15, 47:16, 48:16, 48:18, 52:24, 53:5
  **week** [2] - 26:4, 106:11
  **weeks** [4] - 36:15, 85:1, 104:7
  **welcome** [2] - 6:9, 7:5
  **whatsoever** [1] - 102:7
  **whole** [2] - 72:4, 80:21
  **willing** [1] - 6:2
  **WILLOW** [1] - 2:23

**WILSON** [1] - 2:12
**win** [1] - 86:11
**winners** [1] - 90:3
**wins** [1] - 86:10
**wish** [2] - 25:11, 77:23
**wished** [3] - 29:11, 29:23, 29:24
**wishes** [2] - 32:3, 32:12
**withhold** [1] - 104:21
**withholding** [2] - 102:6, 102:7
**witness** [2] - 35:2, 38:20
**witnesses** [4] - 99:11, 104:4, 104:19, 104:22
**WMS** [2] - 86:6, 88:1
**wondering** [1] - 8:23
**word** [27] - 8:14, 8:19, 9:14, 9:25, 11:1, 11:16, 12:20, 17:24, 23:13, 24:12, 24:16, 24:19, 24:24, 30:16, 31:8, 31:9, 33:17, 37:1, 37:3, 44:8, 57:22, 57:24, 72:2, 89:19
**words** [12] - 8:11, 17:18, 28:24, 33:2, 42:16, 43:13, 50:18, 52:9, 55:18, 62:23, 87:12
**works** [2] - 56:23, 61:9
**workstation** [1] - 40:19
**world** [1] - 46:15
**written** [2] - 68:1, 69:15
**www.uspto.gov** [2] - 59:8, 60:2

## Y

**yesterday** [2] - 26:3, 26:21
**York** [1] - 85:1
**YORK** [2] - 1:19

## Z

**zoom** [1] - 16:16

Tonya B. Jackson, RPR-CRR
409.654.2833