# EXHIBIT A

Claim Construction Hearing

1

```
 1              UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF TEXAS
 2                  MARSHALL DIVISION

 3
    PERSONAL AUDIO, LLC      |  DOCKET NO. 2:13CV13
 4                           |
                             |  APRIL 24, 2014
 5  VS.                      |
                             |
 6                           |  9:04 A.M.
    TOGI ENTERTAINMENT,      |
 7  ET AL                    |  MARSHALL, TEXAS

 8  ----------------------------------------------------

 9       VOLUME 1 OF 1, PAGES 1 THROUGH 125

10  REPORTER'S TRANSCRIPT OF CLAIM CONSTRUCTION HEARING

11          BEFORE THE HONORABLE ROY PAYNE
             UNITED STATES MAGISTRATE JUDGE
12
    ----------------------------------------------------
13

14  APPEARANCES:

15  FOR PERSONAL AUDIO:    T. JOHN WARD
                           WARD & SMITH LAW FIRM
16                         1127 JUDSON ROAD
                           SUITE 220
17                         LONGVIEW, TEXAS 75606

18                         JEREMY S. PITCOCK
                           THE PITCOCK LAW GROUP
19                         1501 BROADWAY, 12TH FLOOR
                           NEW YORK, NEW YORK 10036
20
                           PAPOOL S. CHAUDHARI
21                         REYES BARTOLOMEI BROWNE
                           5950 BERKSHIRE LANE
22                         SUITE 410
                           DALLAS, TEXAS 75225
23
                           MERTON THOMPSON
24                         BURNS & LEVINSON
                           125 SUMMER STREET
25                         BOSTON, MASSACHUSETTS 02110
```

```
                                                                    2
 1  FOR HOWSTUFFWORKS:     MICHAEL SMITH
                           LARRY PHILLIPS
 2                         SIEBMAN BURG PHILLIPS & SMITH
                           113 EAST AUSTIN STREET
 3                         MARSHALL, TEXAS 75671

 4                         JASON LO
                           GIBSON DUNN CRUTCHER, LLP
 5                         333 SOUTH GRAND AVENUE
                           47TH FLOOR
 6                         LOS ANGELES, CALIFORNIA 90071

 7  FOR CBS CORPORATION, NBCUNIVERSAL MEDIA, AND FOX:

 8                         STEVEN LIEBERMANN
                           SHARON L. DAVIS
 9                         BRIAN ROSENBLOOM
                           ROTHWELL FIGG ERNST & MANBECK
10                         607 14TH STREET NW
                           SUITE 800
11                         WASHINGTON, DC 20005

12                         JENNIFER PARKER AINSWORTH
                           WILSON ROBERTSON & CORNELIUS
13                         909 ESE LOOP 323
                           SUITE 400
14                         TYLER, TEXAS 75711

15  FOR LOTZI DIGITAL:     MATTHEW C. ACOSTA
                           JACKSON WALKER
16                         901 MAIN STREET
                           SUITE 6000
17                         DALLAS, TEXAS 75202

18  FOR THE PARTNERSHIP:   M. DRU MONTGOMERY
                           THE HEARTFIELD LAW FIRM
19                         2195 DOWLEN ROAD
                           BEAUMONT, TEXAS 77706
20
    ALSO IN ATTENDANCE:    BRAD LIDDLE, PERSONAL AUDIO
21                         DAN WAN, CBS CORPORATION

22  COURT REPORTER:        TONYA B. JACKSON, RPR-CRR
                           FEDERAL OFFICIAL REPORTER
23                         300 WILLOW, SUITE 239
                           BEAUMONT, TEXAS  77701
24
         PROCEEDINGS REPORTED USING COMPUTERIZED STENOTYPE;
25       TRANSCRIPT PRODUCED VIA COMPUTER-AIDED TRANSCRIPTION.
```

3

| | INDEX | PAGE |
|---|---|---|
| | "MEDIA FILE" | 8 |
| | "EPISODES" | 8 |
| | "DOWNLOADING" PHRASES | 19 |
| | "URL" | 42 |
| | "STORAGE LOCATION" | 53 |
| | "COMPILATION FILE" AND "ONE OR MORE PROCESSORS...FOR...FROM TIME TO TIME" | 65 |
| | "EMPLOYING ONE OF SAID ONE OR MORE COMMUNICATION INTERFACES TO" AND "(C) THEREAFTER RECEIVE AND RESPOND TO A REQUEST FROM SAID..." | 77 |
| | MOTION TO COMPEL | 97 |

1  written to the download directory by a processing
2  mechanism and that with reference to the specification as
3  well as the normal meaning of "compilation," the claim is
4  specifying that it is the processor that is performing
5  the assembly of this file, that it's a compilation file
6  because it is being assembled by the processor.
7         And the final point is -- you know, this was
8  obviously critical to the allowance of the invention.
9  The examiner specifically doesn't, you know, cite to
10 where the data is stored at the local device or anything
11 of that nature in his reasons for allowance but, rather,
12 that it doesn't suggest updating and downloading a
13 current version of a compilation file and it contains all
14 the information that's in the claim, but the very nature
15 of a compilation file is it is a file that is being
16 assembled by the processor, as described in the patent
17 specification.
18         THE COURT:  Now, Mr. Pitcock, we -- I try and
19 take a consistent approach to claim construction, and I
20 take seriously the Federal Circuit's command to start
21 first and focus on the claim language.  I try to do that
22 whether it's the plaintiff seeking to add limitations to
23 it or the defendant, and I -- it seems to me here that
24 what you're proposing is for us to add something that the
25 language didn't but could have added to the claim.  And

1  I'm -- I am I guess looking for some way to distinguish
2  this from every other request to read into the claim
3  language whatever might appear elsewhere in the
4  specification.
5        MR. PITCOCK: Well, I think the way in which
6  it's done -- so, for example, all of the parties agree
7  that media files have to include audio data because of
8  the way the specification describes the invention. And,
9  you know, that would be even overcoming the ordinary
10 meaning of that term which might be broader.
11       If you take that position -- so, there's a
12 presumption, sometimes called a "heavy presumption," that
13 terms that have an ordinary meaning, like "URL" or
14 "storage location" -- because a patent is a technical
15 document written for a technical audience, you would
16 expect there to be a presumption that the ordinary
17 meaning of the term would apply in the claims. But when
18 you come to a term like "compilation file" which has no
19 ordinary meaning -- I mean, it -- you know, when I asked
20 Dr. Porter --
21       THE COURT: How does "compilation" have less
22 of an ordinary meaning than "storage location"?
23       MR. PITCOCK: Well, if I say to one of skill
24 in the art, "I am going to store this at a storage
25 location," one of ordinary skill in the art knows what

1  that means.  They know what it means to some degree
2  before you look at the specification.  And they wouldn't
3  necessarily think it had to be in whatever you're calling
4  a "facility," which is some undefined term that they're
5  introducing from the specification.  One of ordinary
6  skill in the art wouldn't have -- and they've introduced
7  no evidence that one of ordinary skill in the art would
8  think, oh, well, a compilation file would -- you know,
9  it'd be known in advance what that means to a person just
10 reading the patent who looked at the claims and didn't
11 read the specification.
12         THE COURT:  I would agree that I think that
13 "compilation" is generic, and we've I think added in
14 the -- what we think is the patent specific meaning of
15 it, but what you're asking us to add in is the way in
16 which it's compiled.
17         MR. PITCOCK:  I mean, I would disagree.  I
18 would argue that it is a compilation file because it is
19 compiled, because it is assembled by the processor which
20 is what's called for in the claim.
21         THE COURT:  Okay.  Well, I do -- I understand
22 what you're asking.  So, I appreciate that.
23         MS. DAVIS:  Sharon Davis for the defendants,
24 your Honor.
25         THE COURT:  All right.

1           Now, in their briefing -- although Mr. Pitcock
2  didn't mention it, in their briefing -- in their
3  briefing, Personal Audio points to the claim 3 and
4  suggests that the fact that there is reference to the
5  processor being involved in the creation of the
6  compilation file in claim 3 supports reading in the
7  limitation they propose.  It's actually quite the
8  opposite, your Honor.  What claim 3 and claim 1 show is
9  that there were circumstances where the patentee chose to
10 claim a system that had the processor doing some of the
11 steps of updating, and they very clearly claimed that in
12 claim 1 and claim 3.  It was specifically not included in
13 claim 31 which again only requires that the processor
14 store the updated compilation file and doesn't include
15 any steps that relate to the assembly or compilation of
16 the computer file.
17          Finally, I just want to address one of the
18 things that Mr. Pitcock argued because he made reference
19 again to the reasons for allowance and suggested that
20 that somehow supported reading in this limitation; and I
21 just wanted to point out that if you actually read the
22 entire segment of the reasons for allowance -- the first
23 paragraph is what Mr. Pitcock quoted from; but if you
24 look at the second paragraph where the examiner was
25 explaining a little bit about the reasons for allowance,

1  the examiner says that the closest prior art discloses a
2  method for updating, for distributing updates, and then
3  says Reisman does not disclose the objects being a
4  compilation file representing episodes with corresponding
5  URLs of media files of said episodes.  So, what that's
6  saying, to the extent the examiner was expressing any
7  opinion here on what was novel over the prior art, the
8  examiner was suggesting that it was the specifics of
9  having compilation files representing episodes with
10 corresponding URLs of those episodes that was the
11 novelty.  It doesn't say anything about it being novel to
12 update using the processor.
13         If your Honor has any questions, I'd be happy
14 to address them.  Otherwise, I'll rest on that.  And
15 that's for both of those two claim terms.
16         THE COURT:  All right.  Thank you, Ms. Davis.
17         MR. PITCOCK:  Your Honor, if I might briefly
18 just address one thing.
19         THE COURT:  All right.
20         MR. PITCOCK:  If you look at their Slide 65 --
21 it really doesn't matter; it's just a snippet of this
22 language.  You know, there's really no reason to call it
23 a "compilation file" if you're not trying to point back
24 to the part of the specification which describes, you
25 know, the compiling.  There's no reason -- you could just

1  is that one has to perform a, one has to perform b, one
2  has to perform c but they don't have to be the same one.
3              THE COURT:  And I guess what I'm after is
4  whether you have anything you can point to in the
5  specification or elsewhere that sheds light on this or
6  whether you're just trying to do the same thing I'm doing
7  of giving the most logical meaning to this language.
8              MR. PITCOCK:  So, the thing that I would note
9  is yes, although it's not direct.  As I said before,
10 "communication interface" isn't directly used in the
11 specification; but the claim also requires -- I'm sorry,
12 your Honor.
13             So, the claim specifically talks about having
14 media files and data storage servers; and the question
15 is, depending on your construction of "communication
16 interface" -- whether or not you believe, you know, it
17 specifically contemplates having those stored anywhere on
18 the Internet, it's at least conceivable that you would be
19 using a different communication interface to get those
20 files than you might be otherwise.  And, so, that's why
21 it claims more than one interface for performing the
22 functions and that's why that language at the end of the
23 claim is better read as saying one of the interfaces has
24 to perform the specific broken-out functions that are
25 listed there, but it doesn't have to be the same one that