**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| PERSONAL AUDIO, LLC | § § § | |
| v. | § § | Case No. 2:13-CV-13-JRG-RSP<br>Lead Case |
| TOGI ENTERTAINMENT, INC. | § § | |

## ORDER

Before the Court is Plaintiff's to Motion to Strike Portions of Plaintiffs Technical Expert Report that Rely Upon an Assum[ed] Claim Construction Contrary to this Courts Claim Construction Ruling (Dkt. No. 187, the "Motion").

## APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an

expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## ANALYSIS

Defendants request that the Court strike portions of Personal Audio's infringement expert report, written by Dr. Kevin Almeroth. Defendants primarily rely on their contention that Dr. Almeroth's report conflicts with this Court's claim construction ruling.

Independent claim 31 of the patent-in-suit reads:

31. Apparatus for disseminating a series of episodes represented by media files via the Internet as said episodes become available, said apparatus comprising:
one or more data storage servers,
one or more communication interfaces connected to the Internet for receiving requests received from remotely located client devices, and for responding to each given one of said requests by downloading a data file identified by a URL specified by said given one of said requests to the requesting client device,
one or more processors coupled to said one or more data storage servers and to said one or more communications interfaces for:
storing one or more media files representing each episode as said one or more media files become available, each of said one or more media files being stored at a storage location specified by a unique episode URL;
from time to time, as new episodes represented in said series of episodes become available, storing an updated version of a compilation file in one of said one or more data storage servers at a storage location identified by a predetermined URL, said updated version of said compilation file containing attribute data describing currently available episodes in said series of episodes, said attribute data for each given one of said currently available episodes including displayable text describing said given one of said currently available episodes and one or more episode URLs specifying the storage locations of one or more corresponding media files representing said given one of said episodes; and
**employing one of said one or more communication interfaces to:**
**(a) receive a request from a requesting client device for the updated version of said compilation file located at said predetermined URL;**
**(b) download said updated version of said compilation file to said requesting client device; and**
**(c) thereafter receive and respond to a request from said requesting client device for one or more media files identified by one or more corresponding episode URLs included in the attribute data contained in said updated version of said compilation files.**

(Emphasis added.) The dispute before the Court at the *Markman* stage was the meaning of the phrase "employing one of said one or more communication interfaces to. . ." (Dkt. 182 at 29-33.) Specifically, Personal Audio "sought a construction that means one interface performs (a), one interface performs (b) and one interface performs (c), but the "one" interface does not have to be the same interface for each function." (*Id*. at 30.) Defendants, in contrast, argued that Personal Audio's proposal rendered the "one of said" portion of the phrase superfluous, and that the claim actually "requires 'one' of the interfaces to be used for the subsequent steps of (a) receive a request, (b) download said updated version, and (c) thereafter receive and respond to a request from said requesting client." (*Id*.) In making this argument, Defendants did not just argue that the same interface must perform all three steps, but also argued for a negative limitation, requiring that only one interface performed all three steps. (*Id*.)

The Court rejected both parties' proposals, and found that while the claim did "require[] one interface for performing functions (a), (b), and (c)," it did not "exclude other interfaces from also performing these functions." (*Id*. at 32-33.)

Defendants take issue with Dr. Almeroth's position that Defendants' systems have one "logical interface" to perform all three functions required by the claims. Defendants contend that this position is "contrary to this Court's" claim construction rulings. (Mot. at 7.) The Court disagrees. The ruling made at the claim construction stage was that one communications interface must exist to perform all three steps required by the claims. Thus, Dr. Almeroth may not take a position that a different communications interface may perform each step, and he has not done so in this case. Instead, he has argued that the systems in question possess a single logical communications interface to perform each step required by the claims.

The initial claim construction dispute was distinct from the factual question posed here: whether Personal Audio can prove that CBS, NBC, and FOX's systems do – in fact – possess one communications interface for performing all three steps required by the limitation in question. This distinction is perhaps best highlighted by looking to Defendants' own expert reports, which performed an almost identical analysis to that performed by Dr. Almeroth here, and thus suffer from the very same flaws Defendants allege are present in Dr. Almeroth's report:

> Q: And then, your – you say, in paragraph 150, that the meaning of communication interface, **to a person having ordinary skill in the art, at the time of the alleged invention and in the context of the alleged invention**, is quote, a hardware device for interfacing with a physical link and, then in parenthesis, or air link so as to enable communications with other devices connected to the link; is that correct?
> A: **That's what it says, yes.**

(*See* Dkt. 206 at 5.) The Court declines to strike both parties' technical experts simply because they take a technically and legally defensible position on a factual dispute by contending that Defendants' systems either do (or do not) have one communications interface to perform all three steps required by the limitation in question. This is precisely the role in which infringement and non-infringement experts are routinely used.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Strike Portions of Plaintiffs Technical Expert Report (Dkt. No. 187) is **DENIED**.

**SIGNED this 4th day of September, 2014.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE